IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., et al.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Joint Administration Pending |
| | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
AUTHORIZING THE DEBTORS, NUNC PRO TUNC
TO THE PETITION DATE, TO (A) RETAIN ALVAREZ & MARSAL
NORTH AMERICA, LLC TO PROVIDE THE DEBTORS A
CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL,
AND (B) APPOINT BRIAN E. CEJKA AS CHIEF RESTRUCTURING OFFICER**

The above captioned debtors (collectively, the "Debtors" or the "Company"), file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors, *nunc pro tunc* to the Petition Date (defined herein), to (a) retain Alvarez & Marsal North America, LLC (together with its wholly owned subsidiaries, affiliates (all of which are wholly-owned by Alvarez & Marsal North America, LLC's parent company and employees), agents, independent contractors and employees, "A&M") to provide the Debtors a Chief Restructuring Officer and certain additional personnel, and (b) appoint Brian E. Cejka as Chief Restructuring Officer ("CRO"). In support of this Motion, the Debtors have filed the Declaration in Support of Brian E. Cejka in Support of Chapter 11 Petitions and First Day Pleadings (the "Cejka Declaration"), and also hereby submit the Declaration of Brian E. Cejka, a managing director of A&M in this matter, (the "A&M Declaration"), attached hereto as Exhibit B. In further support of this Motion, the Debtors respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc. (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: 15303 Dallas Parkway, Suite 800, Addison, Texas 75001.

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

## II.
## BACKGROUND

3. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy casts, is set forth in detail in the Cejka Declaration, filed concurrently herewith and fully incorporated by reference.[2]

4. The Debtors have continued in possession of their respective properties and have continued to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee or examiner has been appointed in these chapter 11 cases, and no committees have yet been appointed or designated.

6. Beginning in October 2010 and continuing through the Petition Date, several professionals of A&M, including Mr. Cejka, have devoted substantial amounts of time and effort

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Cejka Declaration.

working with members of the Debtors' senior management to, among other things, assist in the development of near-term projections, assist in short-term cash management activities and coordinate the Debtors' efforts to prepare for a chapter 11 filing.

7.      The Debtors chose A&M to provide Mr. Cejka as CRO because of A&M's extensive experience providing restructuring services in reorganization proceedings and its excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. Moreover, the Debtors chose A&M and Mr. Cejka because of the in-depth knowledge and familiarity that A&M had garnered regarding the Debtors and their business operations in the period leading up to the Petition Date in their role as restructuring consultants, and the belief that by continuing the existing relationship with A&M, rather than retaining a new advisory firm, the Debtors could minimize disruptions to their restructuring efforts that might otherwise arise from the appointment of a new CRO.

8.      Accordingly, effective on November 28, 2010, the Debtors and A&M entered into a second employment letter (the "Second A&M Engagement Letter"), a copy of which is attached hereto as Exhibit C. Pursuant to this letter, the parties have agreed that Mr. Cejka, a managing director within A&M, will serve as the Debtors' CRO. Further, A&M has agreed to provide other A&M employees ("Additional Personnel," and collectively with Mr. Cejka, "A&M Professionals") as necessary to support Mr. Cejka and the Debtors' existing management team in their restructuring efforts during these chapter 11 cases.

### III.
### Relief Requested

9.      Pursuant to this Motion, the Debtors seek authority, pursuant to sections 105(a) and 363 of the Bankruptcy Code, to, *nunc pro tunc* to the Petition Date, (a) retain A&M to provide the Debtors a CRO and certain additional personnel, and (b) appoint Mr. Cejka, a

managing director at A&M, as the Debtors' CRO on the terms set forth in the Second A&M Engagement Letter.

## IV.
## A&M's Qualifications

10.     In consideration of the size and complexity of their business, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates. The A&M Professionals are well-qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to chapter 11 proceedings.

11.     The A&M Professionals specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services and financial and operational restructuring. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts and business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages.

12.     Indeed, A&M has significant qualifications and experience in these matters. Since its inception in 1983, A&M has been a global provider of turnaround advisory and interim or restructuring management services to companies in crisis or those in need of performance improvement in specific financial and operational areas. A&M has provided interim management services in a number of large and mid-size bankruptcy restructurings. See, e.g., In re Crescent Resources, LLC, No. 09-11507 (CAG) (Bankr. W.D.T.X. July 28, 2009); In re Visteon Corp., No. 09-11786 (CSS) (Bankr. D. Del. June 19, 2009); In re Aleris International,

1906051.1

Inc., No. 09-10478 (BLS) (Bankr. D. Del. Feb. 12, 2009); In re DJK Residential LLC, No. 08-10375 (JMP) (Bankr. S.D.N.Y. Feb. 26, 2008); In re Movie Gallery, Inc., No. 07-33849 (DOT) (Bankr. E.D. Va. Oct. 18, 2007); In re Interstate Bakeries Corp., No. 04-45814 (JWV) (Bankr. W.D. Mo. Oct. 25, 2004); In re Crescent Jewelers Corp., No. 04-44416 (EDJ) (Bankr. N.D. Cal. Aug. 24, 2004).[3]

13. Mr. Cejka is a managing director of A&M who has worked as a turnaround consultant and financial advisor for approximately fifteen years. Mr. Cejka has substantial knowledge and experience serving either in senior management positions or as a restructuring advisor in large companies and in assisting troubled companies with stabilizing their financial condition, analyzing their operations and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances. Specifically, Mr. Cejka has served in senior management positions and as a restructuring advisor for a number of companies that were chapter 11 debtors, including Kimball Hill Homes, Champion Enterprises, National Energy & Gas Transmission, U.S. Office Products and Adventure Parks Group.

14. A&M has become thoroughly familiar with the Debtors' operations. Through the services that A&M has provided to the Debtors to date, A&M is highly qualified to serve the Debtors in these cases.

## V.
## Services to be Provided

15. Under the Second A&M Engagement Letter, A&M staff have assumed certain positions within the Debtors' businesses. Specifically, Mr. Cejka will serve as the Chief Restructuring Officer of the Debtors, reporting to the Chief Executive Officer and the Board of Directors (the "Board"), and directing the Debtors' reorganization with an objective of

---

[3] Because of the voluminous nature of the orders cited herein, such orders are not attached to the motion. Copies of these orders are available upon request of the Debtors' counsel.

completing a restructuring of the Debtors. Mr. Cejka will be responsible for assisting the Debtors' senior management team in their post-petition restructuring efforts, including negotiating with parties in interest and coordinating the "working group" of professionals who are or will be assisting the Debtors in the restructuring process or who are working for the Debtors' stakeholders.

16. As members of the Debtors' senior management, Mr. Cejka, with the assistance of the Additional Personnel, will provide the senior management services that A&M and the Debtors deem appropriate and feasible in order to assist the Debtors during these chapter 11 cases. The Debtors believe that Mr. Cejka and the Additional Personnel will not duplicate the services that are being provided to the Debtors in these cases by any other professionals.

17. The duties of Mr. Cejka and the Additional Personnel will include, but are not limited to the following:

(a) A financial review of the Company, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows;

(b) Assist in the identification of cost reduction and operations improvement opportunities;

(c) Assist the CEO in developing for the Board's review possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines;

(d) The CRO shall serve as the principal contact with the Company's creditors with respect to the Company's financial and operational matters;

(e) Assist the Company in the preparation of financial related disclosures required by the bankruptcy court having jurisdiction over the Company's chapter 11 case or cases (the "Bankruptcy Court"), including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(f) Assist the Company and their counsel in the preparation of motions, pleadings and other activities necessary to implement a chapter 11 filing, if required;

(g) Assist the Company with information and analyses required pursuant to the Company's Debtor-In-Possession financing including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

(h) Advisory assistance in connection with the development and implementation of key employee incentives and other critical employee benefit programs;

(i) Assist with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the assumption or rejection of each;

(j) Assist the Company in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(k) Attend meetings and assist in discussions with potential investors, banks and other secured lenders, the Creditors' Committee appointed in these chapter 11 cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(l) Analyze creditor claims by type, entity and individual claim, including assistance with development of a database to track such claims;

(m) Assist in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

(n) Provide testimony with respect to financial and restructuring matters;

(o) Assist the Company and their counsel in preparing plans, disclosure statements and other pleadings;

(p) The CRO and any Additional Personnel shall perform such other services as requested or directed by the Board and CEO and agreed to by such officer.

## VI.
## Terms of Compensation

18.     Pursuant to the terms of the Second A&M Engagement Letter, the Debtors have agreed to compensate A&M $675 per hour in consideration for Mr. Cejka serving as the CRO. The Debtors and A&M have also agreed that the Debtors will compensate A&M semimonthly for the hourly services rendered by the Additional Personnel, to the extent necessary to assist Mr. Cejka in his role as CRO. As of the date hereof, the Debtors have agreed to compensate A&M for the services of the Additional Personnel at the following hourly rates:

| | |
|---|---|
| Managing Directors | $650 - $850 |
| Directors | $450 - $650 |
| Analyst / Associates | $250 - $450 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

19.     In addition to compensation for professional services rendered by A&M Professionals, A&M will seek reimbursement for reasonable and necessary expenses incurred in connection with these chapter 11 cases, including, without limitations for lodging, duplications, computer research and messenger and telephone charges. The Debtors shall also reimburse A&M for the reasonable fees and expenses of its outside counsel incurred in connection with the preparation, negotiation and approval of the Second A&M Engagement Letter. All fees and expenses due to A&M will be billed on a semimonthly basis, or more frequently as agreed to between A&M and the Debtors, as further set forth in the Second A&M Engagement Letter.

20.     If the Court approves the relief requested herein, A&M will be retained to provide the Debtors with the Additional Personnel and Mr. Cejka will be designated as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code. Because A&M is not being employed as a professional under section 327 of the Code, A&M will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. Instead, A&M will file with the

Court, and provide notice to the U.S. Trustee and all official committees, reports of compensation earned and expenses incurred on at least a quarterly basis. Such compensation and expenses shall be subject to Court review in the event that an objection is filed.

21.    Prior to the Petition Date, A&M received payments totaling approximately $675,100 in the aggregate for services performed for the Debtors and their affiliates. A&M has applied these funds to amounts due for services rendered and expenses incurred prior to the Petition Date. A precise disclosure of the amounts or credits held, if any, as of the Petition Date will be provided in A&M's first report filed regarding compensation earned and expenses incurred. The unapplied residual retainer, which is estimated to total approximately $100,000, will not be segregated by A&M in a separate account, and will be held until the end of these chapter 11 cases and applied to A&M's finally approved fees in these proceedings, unless an alternate arrangement is agreed to by the Debtors.

22.    Given the numerous issues which the A&M Professionals may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtors submit that the fee arrangements set forth in the Second A&M Engagement Letter are reasonable and reflect a proper exercise of the Debtors' business judgment.

### VII.
### Indemnification & Insurance

23.    Under the terms of the Second A&M Engagement Letter, the Debtors have agreed to indemnify (a) the CRO and the Additional Personnel on the most favorable terms provided to the Debtors' other officers and directors and (b) A&M and certain related parties pursuant to the Indemnification Agreement attached to the Second A&M Engagement Letter. The Debtors have

agreed further that the CRO and the Additional Personnel will be covered as officers under the Debtors' existing director and officer liability insurance policies.

## VIII.
## Disinterestedness

24. Even though A&M is not being retained as a professional under section 327(a) of the Bankruptcy Code, A&M performed a conflicts check in connection with its initial engagement under the first engagement letter entered into between the Debtors and A&M (the "First A&M Engagement Letter") and has performed a subsequent update in conjunction with the execution of the Second A&M Engagement Letter. A&M has informed the Debtors that, except as may be set forth in the A&M Declaration attached hereto, A&M (a) has no connection with the Debtors, their creditors or other parties in interest in these chapter 11 cases, (b) does not hold any interest adverse to the Debtors' estates and (c) believes it is "disinterested" as defined by section 101(14) of the Bankruptcy Code.

25. If any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration. A&M has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with these chapter 11 cases.

## IX.
## Basis for Relief

26. The Debtors seek to employ and retain A&M and appoint Mr. Cejka as CRO pursuant to section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363. In reviewing a debtor's decision to use estate property pursuant to section 363 of the Bankruptcy Code, courts within the Third Circuit routinely have held that if such use represents the

1906051.1

reasonable business judgment of the part of the debtors, such use should be approved. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In re Schipper), 933 F.3d 513, 515 (7th Cir. 1991)); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)).

27. Bankruptcy courts have analyzed the propriety of a debtor-in-possession's employment of a corporate officer under section 363 of the Bankruptcy Code on numerous occasions and have determined that it is an appropriate exercise of business judgment to employ a corporate officer in such manner. See, e.g., In re Calpine Corp., Case No. 05-60200 (BRL) [Docket No. 3412] (Bankr. S.D.N.Y. Jan. 17, 2007); In re Mirant Corp., Case No. 03-46590 (DML) [Docket No. 999] (Bankr. N.D. Tex. Sept. 29, 2003); In re Fleming Cos., Inc., Case No. 03-10945 (MFW) [Docket No. 1698] (Bankr. D. Del. June 25, 2003); In re LJM2 Co-Inv., L.P., Case No. 02-38335 (SAF) [Docket No. 96] (Bankr. N.D. Tex. Dec. 13, 2002); In re Kmart Corp., No. 02-02474 (SPS) [Docket No. 3459] (Bankr. N.D. Ill. May 22, 2002); In re Exide Techs, Inc., Case No. 02-11125 (JCA) [Docket No. 214] (Bankr. D. Del. May 10, 2002); In re Sharper Image Corp., No. 08-10322 (KG) (Bankr. D. Del. Apr. 23, 2008); and In re: Universal Building Products, Inc., No. 10-12453 (MFW) (Bankr. D. Del. Aug. 4, 2010).

28. Here, the decision to employ A&M and retain Mr. Cejka as CRO should be authorized because it is based on the sound exercise of the business judgment of the Debtors' senior management. First, Mr. Cejka is well qualified to serve as CRO. He has extensive experience either in senior management roles or as a restructuring advisor for several large companies, and is a seasoned turnaround and restructuring expert. In addition, A&M has extensive experience in providing restructuring consulting services in reorganization proceedings

1906051.1

and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States. The assistance of these experts cannot be questioned.

29. Second, Mr. Cejka and the A&M team, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance in the Debtors' efforts in the development of near-term projections, assisting in short-term cash management activities and coordinating the Debtors' efforts to prepare for a possible chapter 11 filing. The Debtors believe that A&M, in conjunction with Mr. Cejka in his capacity as CRO, will be able to continue to provide services that benefit the Debtors' estates and creditors. Moreover, the preexisting relationship that A&M and Mr. Cejka have with the Debtors ensures that the appointment of a CRO at this juncture will not disrupt the administration of the Chapter 11 Cases.

30. Third, through negotiations, the Debtors have been able to secure the services of A&M and Mr. Cejka during these chapter 11 cases on economic terms that are fair and reasonable and beneficial to the estates. Moreover, the compensation arrangement provided for in the Second A&M Engagement Letter is consistent with and typical of arrangements entered into by A&M and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors.

31. In view of the foregoing, the Debtors believe that the retention of A&M and Mr. Cejka as CRO is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases. The Debtors believe that A&M is well-qualified and able to represent the Debtors in a cost effective, efficient, and timely manner. A&M has indicated a willingness to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court. For the reasons set forth above, the Debtors

respectfully request that the Court authorize the retention and employment of A&M as the Debtors' restructuring advisor and Mr. Cejka as the Debtors' CRO pursuant to section 363 of the Bankruptcy Code.

## X.
## Motion Practice

32. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion. Accordingly, the Debtors submit that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## XI.
## Notice

33. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Securities and Exchange Commission; (v) the Debtors' thirty largest unsecured creditors on a consolidated basis; (vi) counsel to Textron, the Debtors' prepetition lender; (vii) counsel to the DIP Lender and the Buyer; and (viii) each of the Debtors' cash management banks. Notice of this Motion will be served in accordance with Local Bankruptcy Rule 9013-1(m). In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## XII.
## No Prior Request

34. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court: (i) enter an Order, in substantially the same form as that attached as Exhibit A, granting the relief requested herein; and (ii) provide such other relief as the Court deems appropriate and just.

Dated: Wilmington, Delaware
November 30, 2010

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP
David W. Wirt (Pro Hac Vice Motion Pending)
Aaron C. Smith (Pro Hac Vice Motion Pending)
Courtney E. Barr (Pro Hac Vice Motion Pending)
111 S. Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-0336

-and-

POLSINELLI SHUGHART PC

/s/ *Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Fax: (302) 252-0921

PROPOSED COUNSEL FOR THE DEBTORS