IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., et al.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Joint Administration Pending |
| | ) | |
| | ) | **Related Docket No. 15** |

**INTERIM ORDER AUTHORIZING DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF CRITICAL VENDORS**

Upon the Debtors' Motion for Entry of an Order Authorizing Debtors to Pay Certain Prepetition Claims of Critical Vendors (the "Motion");[2] and upon consideration of the Cejka Declaration; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and (c) notice of the Motion was due and proper under the circumstances; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted *as set forth herein*.

2. The Debtors are authorized, but not required, in their sole discretion, to pay the Claims that the Debtors determine, in the exercise of their business judgment, are necessary, up to the amount of the Ft. Hood Vendor Cap ($2,150,000), the Lien Right Vendor Cap

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc. (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: 15303 Dallas Parkway, Suite 800, Addison, Texas 75001.

[2] Capitalized terms used but not defined herein shall have the meaning assigned to such terms in the Motion.

1905570.2

($2,100,000), and the Supply Vendor Cap ($500,000) [but in no event more than $2,376,000 in the aggregate] as applicable and as limited by the DIP Budget.

3. The Debtors are authorized, but not required, in their sole discretion to enter into an agreement with a Critical Vendor substantially in the form as the Critical Vendor Agreement annexed to the Motion as <u>Exhibit B</u> in the exercise of the Debtors' reasonable business judgment that it is appropriate to do so.

4. The Debtors are authorized to undertake appropriate efforts to cause the Vendors to enter into a Critical Vendor Agreement substantially in the form of the Critical Vendor Agreement annexed to the Motion as <u>Exhibit B</u>.

5. The Debtors are authorized, as the Debtors deem necessary in the exercise of their reasonable business judgment, to require a Critical Vendor to execute the Critical Vendor Acknowledgement substantially in the form as the one annexed to the Motion as <u>Exhibit C</u>.

6. The Debtors are authorized to make payments on account of the Claims in the absence of a Critical Vendor Agreement after the Debtors have undertaken diligent efforts to cause the Critical Vendor holding the Claim to execute the applicable agreement and to agree to the terms set forth therein and if the Debtors determine in their business judgment that the failure to pay such Claim, at least in part, is likely to result in irreparable harm.

7. The Debtors are authorized to negotiate and enter into new trade terms with any Critical Vendor as a condition to payment of any Claim.

8. As a further condition of receiving payment on account of a Claim, the applicable Critical Vendor must agree: (a) to take whatever action is necessary to remove, at its sole cost and expense, any Trade Liens that may have been filed by such Critical Vendor; and (b) to not

1905570.2

contest the assumption of any purchase order issued by the Debtors to such vendor on the grounds that such purchase order is not an executory contract or any other reason.

9. If a Critical Vendor breaches a Critical Vendor Agreement or otherwise refuses to supply goods and/or services to the Debtors pursuant to the terms of such agreement and this Interim Order following receipt of payment of its Claim, the Debtors, in their discretion, (a) may declare without further order of the Court (i) that any payments made to such Critical Vendor on account of its Claim shall be deemed to have been made in satisfaction of any outstanding postpetition claims and (ii) demand the repayment of the Claim to the extent the aggregate amount of such claim exceeds the postpetition obligations then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise, or (b) seek an order of the Court requiring such Critical Vendor to disgorge the funds used to pay the Claim; provided, however, that nothing in this paragraph shall preclude a Critical Vendor from contesting such treatment.

10. All applicable banks and financial institutions are hereby authorized ~~and directed~~ to receive, process, honor, and pay any and all checks evidencing amounts paid by the Debtors under this Interim Order whether presented prior to or after the Petition Date. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Interim Order.

11. The Debtors are authorized to issue postpetition checks as necessary to replace any prepetition checks issued with respect to the Claims that may have been dishonored.

12. The relief granted herein and the Debtors' actions in connection with the performance of such relief shall not be deemed or construed as: (i) an admission as to the validity of any Claim against the Debtors; (ii) a waiver of the Debtors' right to dispute or contest any

claim for any reason; (iii) a promise or requirement to pay any Claim; (iv) an implication or admission that any particular claim is of a type specified or defined hereunder; (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or that any such agreement is executory or an unexpired lease; or (vi) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable non-bankruptcy law.

13. The Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

14. The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Interim Order.

15. This Interim Order shall be immediately effective and enforceable upon its entry. To the extent it may be applicable, the fourteen-day stay imposed by the Bankruptcy Rule 6004(h) is hereby waived.

16. The requirements of Bankruptcy Rule 6004(a) are waived.

17. A final hearing on the Motion shall be heard before this Court on _December 21_, 2010 at _1:00 p_.m (**prevailing Eastern Time**) at the Bankruptcy Court, 824 North Market Street, Wilmington, Delaware 19801 (the "Final Hearing"). Any party-in-interest objecting to the relief sought at the Final Hearing shall submit any such objection in writing and file same with the Court and serve (so as to be received) such objection no later than _December 14_, 2010 at _4:00 p_.m. (prevailing Eastern Time).

- 5 -

18. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Interim Order.

Dated: _____12/1_____, 2010
      Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge