# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., <u>et al.</u>,[1] | ) | Case No. 10-_13850_ (_CSS_) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket No. 16** |

---

### INTERIM DIP FINANCING ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY <u>RULES 4001(B) AND (C)</u>

This matter is before the Court on the motion filed by Palm Harbor Homes, Inc. and its related debtors (collectively, the "<u>Debtors</u>") in the above-captioned jointly administered chapter 11 cases (collectively, the "<u>Bankruptcy Case</u>") dated November 29, 2010 (the "<u>Motion</u>") requesting, pursuant to Sections 105, 361, 362(a), 363(c), 364(c), 364(d)(1) and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u> (the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"), entry of this Interim DIP Financing Order[2]:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc., a Florida corporation (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: 15303 Dallas Parkway, Suite 800, Addison, Texas 75001. Each of the Debtors is a co-Borrower under the DIP Facility.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Documents, as defined below.

(1)     for immediate authorization and approval, pursuant to sections 105, 361, 362, and 364 of title 11 of the Bankruptcy Code and Rules 2002, 4001, and 9014 of the Bankruptcy Rules, for the Debtors, as Borrowers, to obtain postpetition financing up to the Base Commitment Amount of $50,000,000, which amount may be increased to the Supplemental Commitment Amount of $55,000,000 (the "<u>DIP Facility</u>"), from Fleetwood Homes, Inc. ("<u>DIP Lender</u>") to, among other things; (A) fund, among other things, ongoing working capital, general corporate, and other financing needs of the Debtors; (B) pay certain transaction fees, and other costs and expenses of administration of the Bankruptcy Case; (C) pay the Textron Indebtedness owed under the Textron Facility; (D) fund the approved amounts authorized pursuant to the Critical Vendor Motion; and (E) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lender under the DIP Facility and the other DIP Facility Documents (as defined below);

(2)     authorizing and empowering the Debtors to execute and enter into the (A) Debtor-in-Possession Revolving Credit Agreement (as defined below); (B) Promissory Note; and (C) Security Agreement (collectively, the "<u>DIP Facility Documents</u>") and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3)     approving the terms and conditions of the DIP Facility Documents as executed and delivered;

(4)     modifying the Automatic Stay of section 362 of the Bankruptcy Code (the "<u>Automatic Stay</u>") to the extent provided herein;

(5)     requesting, except as explicitly provided in this Interim DIP Financing

(6)     requesting, pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this Interim DIP Financing Order;

(7)     requesting, pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") be held before this Court to consider entry of a final order (the "Final DIP Financing Order") approving the DIP Facility as set forth in that certain Debtor-In-Possession Revolving Credit Agreement (the "DIP Credit Agreement") by and between the Debtors and the DIP Lender in the aggregate principal amount of up to the Base Commitment Amount of $50,000,000 in availability (or the Supplemental Commitment Amount of $55,000,000 in availability), as set forth in the Motion; and

It appearing that pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Interim Hearing having been provided by the Debtors as set forth in paragraph G below, and the Interim Hearing having been held on December 1, 2010, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved having been overruled; and upon the record made by the Debtors at the Interim Hearing and the *Declaration of Brian E. Cejka in Support of Chapter 11 Petitions and First Day Pleadings*, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND BASED ON THE RECORD MADE AT THE INTERIM HEARING:

A.      On November 29, 2010 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are

Order, pursuant to sections 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

      a.     have priority over any and all administrative expenses, including, without limitation, the kinds specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Bankruptcy Case or any successor case, which allowed super-priority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates (the "DIP Facility Superpriority Claims"); and

      b.     be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior priming security interests in, and liens upon, all prepetition and postpetition assets of the Debtors and their estates, whether now existing or hereafter acquired (collectively, the "DIP Facility Liens"), and to the extent not otherwise included, all proceeds, tort claims, insurance claims, and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (collectively, and as set forth more fully in the DIP Facility Documents, the "Collateral"), as provided for by sections 364(c) and (d) of the Bankruptcy Code; provided, however, that the Collateral shall not include avoidance actions under chapter 5 of the Bankruptcy Code and/or the proceeds thereof pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code (the "Avoidance Actions");

continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Concurrently with the filing of the Motion, the Debtors filed a motion seeking joint administration of their respective bankruptcy cases. No request for the appointment of a trustee or examiner has been made, and no statutory committees have been appointed, in this Bankruptcy Case.

C.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      Subject to the rights of any Committee, if appointed, and any non-debtor party in interest as provided in paragraph 9 herein, each of the Debtors and the DIP Lender acknowledge, agree and stipulate that:

i.      Pursuant to that certain Amended and Restated Agreement for Wholesale Financing (Finished Goods – Wholesale Financing) dated as of June 30, 2005 by and among the Debtors, as borrowers, Textron Financial Corporation and other financial institutions from time to time parties thereto as lenders (the "Textron Lenders"), and Textron Financial Corporation (the "Textron Agent"), as Administrative Agent and Arranger (as amended, supplemented, waived and otherwise modified from time to time, the "Textron Facility" and together with all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Textron Financing Documents"), the Textron Lenders made loans and advances to and/or provided other financial accommodations to or for the benefit of the Debtors from time to time;

ii.     Pursuant to the Textron Financing Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to Textron in an amount not less than $34,019,991, comprised of outstanding principal of $33,805,142, accrued but unpaid interest of $214,849, and unpaid fees, costs, and expenses thereunder in an unliquidated amount (the "Textron Indebtedness").

iii.    Pursuant to the Textron Financing Documents, the Debtors granted to and/or for the benefit of the Textron Lenders and the Textron Agent first priority and continuing pledges, liens and security interests on substantially all of the Debtors' assets, as well as a pledge of 100% of the Debtors' equity in Standard Casualty Co., to secure the Textron Indebtedness (the "Textron Liens");

iv.    As of the Petition Date and immediately prior to giving effect to the Interim DIP Financing Order, (a) the Textron Financing Documents are valid and binding agreements and obligations of the Debtors and are enforceable against the Debtors in accordance with their terms, (b) the Textron Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to the liens permitted under the Textron Financing Documents, if any, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Textron Indebtedness constitutes the legal, valid and binding obligations of the Debtors, and the Textron Indebtedness, and any amounts paid at any time to the Textron Lenders on account thereof or with respect thereto, are not subject to (i) any objection, offset, defense or counterclaim of any kind or nature, or (ii) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or

applicable non-bankruptcy law, and (d) no claims exist against the Textron Lenders or the Textron Agent under any contract or tort (including, without limitation, lender liability) theories of recovery or pursuant to section 105 or chapter 5 of the Bankruptcy Code;

v. Each of the Debtors and the DIP Lender have waived, discharged and released any right they may have to challenge any of the Textron Indebtedness and the Textron Liens, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Textron Lenders, the Textron Agent and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees in connection therewith.

~~E. The Debtors are in default under the Textron Facility.~~

F. The Debtors' businesses have an immediate need for the financing provided under the DIP Facility in order to have adequate liquidity, in addition to cash on hand, to ensure, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational, financial and general corporate needs, and maintain business operations and the value of the Debtors' business and assets during the pendency of the case to support the Debtors' *Motion for an Order (A) Authorizing and Approving Asset Purchase Agreement By and Among the Debtors, As Sellers, and Palm Harbor Homes, Inc., a Delaware Corporation, as Purchaser, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection therewith; and (C) Granting Related Relief* (the "Sale Motion"). ~~The immediate~~

*[handwritten margin note: Subject to the comments made by the Court on the record at the December 1, 2010 hearing]*

~~availability of credit under the DIP Facility~~ will provide confidence to the Debtors'
~~creditors, including their trade vendors and foreign creditors, and the Debtors' employees~~
~~that will enable and encourage them to continue their relationships with the Debtors and,~~
~~thereby, enhance the value of the Debtors' estates.~~ The access of the Debtors to
sufficient working capital and liquidity through the incurrence of new indebtedness for
borrowed money is vital to the preservation and maintenance of the going concern values
of the Debtors and to the success of the Bankruptcy Case. Without such credit, the
Debtors' estates would be irreparably harmed. Therefore, it is in the best interests of the
Debtors' estates to enter into the DIP Facility. The DIP Lender is willing to provide the
DIP Facility to or for the benefit of the Debtors only in accordance with the terms of the
DIP Facility Documents and this Interim DIP Financing Order.

G.    The Debtors are unable to obtain sufficient financing from sources other
than the DIP Lender on terms more favorable than under the DIP Credit Agreement and
all the documents and instruments delivered pursuant thereto or in connection therewith.
The Debtors have been unable to obtain sufficient unsecured credit solely under section
503(b)(1) of the Bankruptcy Code as an administrative expense or under section 364(c)
of the Bankruptcy Code with enhanced priority. The Debtors have requested that the DIP
Lender provide the DIP Facility to provide funds to be used for the sole purposes set forth
in the Budget (as defined below), and such other purposes as required by this Interim DIP
Financing Order and to which the DIP Lender agrees in writing.

H.    The DIP Lender has agreed and consented to provide financing to the
Debtors subject to (i) the entry of this Interim DIP Financing Order within no later than
two business days of the Petition Date; (ii) the terms and conditions of the DIP Credit

Agreement; (iii) the Carve-Out (as defined below); and (iv) findings by the Court that such postpetition financing is essential to the Debtors' estates, that the terms of such financing were negotiated in good faith and at arm's length, and that the DIP Facility Liens and DIP Facility Superpriority Claim, and other protections granted pursuant to this Interim DIP Financing Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Interim DIP Financing Order or any other order, as provided in section 364(e) of the Bankruptcy Code. The DIP Lender has acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the DIP Facility contemplated by this Interim DIP Financing Order and the other DIP Facility Documents and the reliance of the DIP Lender on the assurances referred to above is in good faith.

I.    Telephonic, facsimile notice or overnight mail notice of the Interim Hearing and the proposed entry of this Interim DIP Financing Order has been provided to (i) the Office of the United States Trustee (the "U.S. Trustee"), (ii) the Internal Revenue Service, (iii) the Office of the United States Attorney for the District of Delaware, (iv) the Securities and Exchange Commission, (v) the Debtors' thirty largest unsecured creditors on a consolidated basis, (vi) counsel to the Textron Lenders, the Debtors' prepetition lender, (vii) counsel to the DIP Lender, (viii) counsel to Virgo Service Company, LLC, and (ix) each of the Debtors' cash management banks (collectively, the "Notice Parties"). Notice of the Motion was served in accordance with Local Bankruptcy Rule 9013-1(m). In light of the exigent circumstances confronting the Debtors and Debtors' businesses, the requisite notice of the Motion and the relief requested thereby and this Interim DIP Financing Order has been provided in accordance with Bankruptcy Rule 4001, and is

sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Interim DIP Financing Order.

J.   The Debtors have requested immediate entry of this Interim DIP Financing Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Interim DIP Financing Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.

K.   The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money is in the best interests of the Debtors and their respective creditors and estates. The interim financing authorized hereunder is necessary to avoid immediate irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

L.   Based on the record presented by the Debtors to this Court: (i) the terms of the DIP Facility are fair, reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, and any credit extended, loans made, credit support provided and other financial accommodations extended to the Debtors by the DIP Lender shall be deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code; NOW THEREFORE;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. <u>Disposition</u>. The Motion is granted and the Debtors are authorized to incur the indebtedness and other obligations under the DIP Facility as set forth in this Interim DIP Financing Order. Any objections to the entry of this Interim DIP Financing Order that have not previously been withdrawn or settled on the record at the Interim Hearing are hereby overruled upon the merits. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedures, this Interim DIP Financing Order shall immediately become effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim DIP Financing Order.

2. <u>Authorization to Borrow</u>. Upon execution and delivery of the DIP Credit Agreement, in substantially the form annexed to the Motion and provided that the Debtors are not in default under the terms of this Interim DIP Financing Order, the Debtors are immediately authorized to borrow (and receive other extensions of credit and accommodations) under the DIP Facility from the DIP Lender up to the Base Commitment Amount of $50,000,000, which amount may be increased to the Supplemental Commitment Amount of $55,000,000 (together with interest, fees, charges and expenses payable under the DIP Facility Documents), pursuant to the terms and conditions of the DIP Credit Agreement and use such Borrowings and proceeds in accordance with the terms of the DIP Credit Agreement, the 13-Week Budget (an approved copy of which is attached hereto as Exhibit A, the "Budget"), and this Interim DIP Financing Order. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the

Debtors, enforceable against the Debtors in accordance with their terms. Upon entry of the Final DIP Financing Order, additional financing and Borrowings under the DIP Credit Agreement will be made to (i) fund the Debtors' working capital and other general corporate needs, and (ii) pay such other amounts required or allowed to be paid pursuant to the DIP Credit Agreement, this Interim DIP Financing Order and any other orders of this Court. Notwithstanding the foregoing, the DIP Lender is under no obligation to lend monies or provide any other accommodations to the Debtors under the DIP Facility unless all conditions set forth in the DIP Facility Documents have been satisfied.

3.     Use of DIP Facility Proceeds to Pay the Textron Facility. Upon entry of this Interim DIP Financing Order, the Debtors ~~shall~~ *may* immediately use the proceeds authorized to be borrowed under the DIP Facility by this Interim DIP Financing Order to pay in full the Textron Indebtedness owed pursuant to the Textron Facility. Upon such payment of the Textron Indebtedness and subject to Paragraph 9 below, all then existing Textron Liens will be deemed released by operation of this Interim DIP Order.

4.     DIP Facility Superpriority Claim. For all of the Debtors' Obligations and Indebtedness arising under the DIP Facility and the DIP Facility Documents, the DIP Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, and subject to the Carve-Out (as defined below), the allowed DIP Facility Superpriority Claim which claim shall be payable from and have recourse to, in addition to the Collateral (as defined by the DIP Facility Documents), any unencumbered prepetition or postpetition property of the Debtors and their estates whether now existing or hereafter acquired. The DIP Facility Superpriority Claim shall be deemed legal, valid, binding, enforceable, and

perfected claims ~~and not subject to subordination, impairment or avoidance, for all purposes in the Bankruptcy Case and any successor cases.~~

5. <u>DIP Facility Liens</u>. As security for the repayment of the Indebtedness, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, and subject only to the Carve-Out (as defined below) and the Senior Liens (as defined in the DIP Credit Agreement), the DIP Lender is hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements, or otherwise) the DIP Facility Liens on and in the Collateral (as defined by the DIP Facility Documents) and all proceeds thereof, which liens are valid, binding, enforceable and fully perfected as of the date hereof, ~~not subject to subordination, impairment or avoidance, for all purposes in the Bankruptcy Case and any successor cases.~~ Except as explicitly set forth herein, the DIP Facility Liens on and in the Collateral granted herein shall prime and be senior in all respects to any and all liens pursuant to section 364(d) of the Bankruptcy Code.

6. <u>Limitation on Additional Surcharges</u>. Subject to entry of the Final DIP Financing Order, neither the Collateral, the DIP Lender, nor the Textron Lenders shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, by the Debtors or any other party in interest without the prior written consent of the DIP Lender and no such consent shall be implied from any other action, inaction, or acquiescence by such parties in this proceeding, including but not limited to, the funding of the Debtors' ongoing operations by the DIP Lender. Subject to entry of the Final DIP Financing Order, the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived. Subject to entry of the Final

DIP Financing Order, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

7. <u>Right to Credit Bid</u>.  Subject to entry of the Final DIP Financing Order, the DIP Lender or its assignee shall have the right to "credit bid" the allowed amount of the DIP Lender's claims during any sale of all or substantially all of the Collateral, including without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or pursuant to any plan of reorganization. *In addition to the Event of Default specified in paragraph 14, [seared] 9: (i) any*

8. <u>Restrictions on the Debtors</u>. ~~No~~ claim or lien having a priority superior or *pari passu* with the DIP Facility Liens and the DIP Facility Super Priority Claims, granted ~~by this Interim DIP Financing Order to the DIP Lender shall be granted~~ by any Debtor while any portion of the DIP Facility remains outstanding without the written consent of the DIP Lender. *j or (ii)* Except as expressly permitted by the DIP Credit Agreement and this Interim DIP Financing Order, the Debtors ~~will not~~, at any time during the Bankruptcy Case, grant mortgages, security interests, or liens in the Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

9. <u>Challenge</u>.  Any Committee ~~and any~~ other party in interest shall have ~~30~~ *60 the 75* days from the date of formation of ~~such~~ Committee *(or 75 days from the Petition Date)* (or such longer period as the Committee or any party in interest may obtain from the Court for cause shown before the expiration of such period) to commence a contested matter or an adversary proceeding against the Textron Lenders or the Textron Agent (a "<u>Challenge</u>") for the purpose of (1) challenging the validity, extent, priority, perfection, enforceability and non-avoidability of the Textron Lenders' pre-petition claims and/or Liens against the Debtors ("<u>Lien Challenge</u>"), (2) seeking to avoid or challenge (whether pursuant to chapter 5 of the

Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtors to or for the benefit of the Textron Lenders prior to the Petition Date ("Payment Challenge"), and/or (3) seeking damages or equitable relief against the Textron Lenders or the Textron Agent arising from or related to the pre-petition business relationship among the Debtors and the Textron Lenders or the Textron Agent, including without limitation "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action ("Damage Challenge"). The Committee is granted standing to commence such a proceeding. ~~Any other party in interest shall have 15 days (or a longer period for cause shown to the Court before the expiration of such period) from the date of entry of this Interim DIP Financing Order to move this Court for an order granting it standing to commence a Challenge.~~ All parties in interest, including without limitation any Committee, that fail to act in accordance with the time periods set forth in the preceding sentences of this paragraph shall be, and hereby are, barred forever from commencing a Challenge. The foregoing is without prejudice to any and all of the Textron Lenders' or the Textron Agent's legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff in response to any such Challenge (all of which may be made based on the Textron Agent's or the Textron Lenders' respective positions immediately prior to the filing of the Bankruptcy Case), all of which are reserved, and the foregoing shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of initiation of such Challenge. Nothing contained herein shall limit the Court's ability to fashion an appropriate remedy should the Court determine, by entry of a final order and judgment no longer subject to appeal, a Challenge in favor of the party seeking the Challenge. In the event that a Challenge is asserted, the party

Subject to section 108 of the Bankruptcy Code.

asserting the Challenge must notify counsel for the Textron Agent and Textron Lender, counsel for the DIP Lender and counsel for the Debtors of such Challenge within three (3) business days after taking any action to assert the Challenge. During the pendency of such Challenge, the Textron Agent shall retain any and all amounts paid to it pursuant to this Interim DIP Financing Order. Upon entry of a final non-appealable order as to a successful Lien Challenge in whole or in part, Textron's Agent within three (3) business days shall pay directly to the Debtors such amount, which reflects the overpaid amount on the asserted secured portion of the Textron Indebtedness. Upon entry of a final non-appealable order as to a successful Payment Challenge or a successful Damage Challenge, Textron's Agent within three (3) business days shall pay the amount(s) awarded in such Payment Challenge or Damage Challenge directly to the Debtors, which payment shall immediately become the DIP Lender's Collateral and immediately subject to the DIP Facility Liens as established herein. For the sake of clarity, the forgoing shall be dispositive only as to the Debtors and the Textron Lender and the Textron Agent in the event of a successful Challenge; notwithstanding the forgoing, nothing in this Paragraph 9 shall limit the remedy that Textron may seek or a court of competent jurisdiction may impose in this regard. For the avoidance of doubt, any chapter 7 trustee appointed or elected in these Cases shall, until expiration of the Challenge period and thereafter for the duration of any litigation timely commenced pursuant to this Paragraph 9 shall be deemed a party in interest and shall not be bound by the acknowledgements, agreements and stipulations of the Debtors in this Order; provided, however, that upon expiration of the Challenge period, and if no litigation is timely commenced, any chapter 7 trustee shall

be bound by the acknowledgements, agreements and stipulations of the Debtors in this Order.

10. <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens and the DIP Facility Superpriority Claims shall be subject to the following (but only to the extent that there are not sufficient, unencumbered funds in the Debtors' estates to pay such amounts at the time payment is required to be made): (a) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (b) prior to the occurrence of an Event of Default, the allowed and unpaid professional fees and expenses of the Debtors and any statutory committee (if appointed) (the "Committee") (collectively, the "<u>Professional Fees</u>") incurred to the extent consistent with the Budget; (c) Professional Fees incurred subsequent to the delivery of a notice of the Occurrence of an Event of Default (the "Carve-Out Notice") and to the extent consistent with the Budget, in an aggregate amount not to exceed $500,000 (items (a) through (c), collectively, the "<u>Carve-Out</u>"). The Carve-Out shall exist at all times, but only be triggered and payable upon (i) the occurrence of any Event of Default as defined in the DIP Facility Documents and delivery of a Carve-Out Notice by the DIP Lender to the Debtors, counsel to the Debtors, and counsel to any Committee; or (ii) the Maturity Date.

11. <u>Additional Perfection Measures</u>. The DIP Lender shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Interim DIP Financing Order (including, without limitation, the taking possession of any of the

Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file this Interim DIP Financing Order or such financing statements, mortgages, deeds of trust, notices of lien or similar instruments or otherwise confirm perfection of such liens, security interests and mortgages without seeking modification of the Automatic Stay and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date, with the priorities set forth herein.

12. <u>Access to Collateral – No Landlord's Liens</u>. Upon entry of the Final DIP Financing Order, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in this Interim DIP Financing Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Credit Agreement, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Lender may, subject to any separate agreement by and between such landlord and the DIP Lender (the "<u>Separate Agreement</u>"), enter upon any leased premises of any of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and, subject to the Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided that, subject to the Separate Agreement, the DIP Lender shall only pay rent of the Debtors that first accrues after the DIP Lender's written notice referenced above and that is payable during the period of such occupancy by the DIP Lender, calculated on a per diem basis.

Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this paragraph.

13. <u>Automatic Stay</u>. Subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the Automatic Stay is vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuance of any Event of Default (as defined and provided for in Article VII of the DIP Credit Agreement), all rights and remedies provided for in the DIP Facility Documents; provided, however, that prior to the exercise of any enforcement or liquidation remedies against the Collateral (other than as set forth above), the DIP Lender shall be required to give five (5) business days prior written notice provided to the Debtors, counsel to the Debtors, counsel for any statutory committee (if appointed), and the U.S. Trustee. Notwithstanding the occurrence of an Event of Default under the DIP Credit Agreement or anything herein, all of the rights, remedies, benefits and protections provided to the DIP Lender under the DIP Facility Documents and this Interim DIP Financing Order shall survive the Maturity Date. The Debtors and/or any statutory committee shall be entitled to seek an expedited hearing regarding an Event of Default under the DIP Credit Agreement. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, reimposition or continuance of the Automatic Stay as provided hereunder.

14. <u>Events of Default</u>. The occurrence of any of the following shall constitute an Event of Default under this Interim DIP Financing Order: (a) any material default, violation, or breach of any of the terms of this Interim DIP Financing Order by the

Debtors; (b) the occurrence of the Termination Date, maturity, termination, expiration, or non-renewal of this Interim DIP Financing Order or the DIP Facility as provided for herein or in the DIP Facility Documents; (c) conversion of the Bankruptcy Case to one or more cases under chapter 7 of the Bankruptcy Code; (d) the appointment of a trustee in the Bankruptcy Case; (e) the appointment of an examiner *other than a fee examiner,* in the Bankruptcy Case; (f) the dismissal of the Bankruptcy Case; (g) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Interim DIP Financing Order without the express prior written consent of the DIP Lender; (h) the filing of a plan of reorganization by any of the Debtors; (i) any other security interest, lien, claim or encumbrance is granted that is *pari passu* with or senior to the DIP Facility Liens and the DIP Facility Super Priority claims of the DIP Lender; (j) the entry of an order granting relief from the Automatic Stay of section 362 of the Bankruptcy Code to the holder or holders of any security interest or lien in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Collateral; (k) any sale or other disposition of all or substantially all of the Collateral other than the sale contemplated by the *Motion of the Debtors for Entry of (I) an Order (A) Approving Bid Procedures; (B) Approving a Break-Up Fee and Expense Reimbursement; (C) Approving the Stalking Horse Purchaser's Right to Credit Bid; (D) Approving the Form and Manner of Notices; (E) Approving the Procedures for the Assumption and Assignment of Contracts and Leases; and (F) Setting a Sale Hearing; and (II) an Order Pursuant to 11 U.S.C. §§ 363 and 365 (A) Authorizing and Approving Asset Purchase Agreement by and among the Debtors, as Sellers, and Palm Harbor Homes, Inc., a Delaware Corporation, as Purchaser, or Such Other Purchase Agreement(s) Between the Debtors and the*

*Successful Bidder, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief;* (l) failure to obtain approval of the Final DIP Financing Order in a form acceptable to the DIP Lender; and (m) an Event of Default under and as defined in the DIP Facility Documents (any of the foregoing events of default being referred to in this Interim DIP Financing Order, individually, as an "Event of Default," or severally, as "Events of Default").

15.  Binding Effect. The provisions of this Interim DIP Financing Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and each of the foregoing parties' respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in this Bankruptcy Case or in the event of the conversion of the Bankruptcy Case to one or more cases under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim DIP Financing Order.

16.  Survival. The provisions of this Interim DIP Financing Order and any actions taken pursuant hereto shall survive the entry of any order (i) converting the Bankruptcy Case to one or more cases under chapter 7 of the Bankruptcy Code, or (ii) dismissing the Bankruptcy Case; and the terms and provisions of this Interim DIP Financing Order as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, and/or the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as

provided by this Interim DIP Financing Order, to the maximum extent permitted by law until all of the Indebtedness is indefeasibly paid in full in cash and discharged.

17.    _After Acquired Property._  Except as otherwise provided in this Interim DIP Financing Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lender, pursuant to the DIP Facility Documents and this Interim DIP Financing Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

18.    _Access to the Debtors._  In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents, and/or employees of the DIP Lender and its counsel and other financial advisors to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with and provide to such representatives, agents and/or employees all such information as they may reasonably request.

19.    _Authorization to Act._  Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Interim DIP

Financing Order and the DIP Facility, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Interim DIP Financing Order, including, without limitation:

(a)  the execution of the DIP Facility Documents;

(b)  the non-material modification or amendment of the DIP Credit Agreement or any other DIP Facility Documents without further order of this Court, in this Bankruptcy Case, in such form as the Debtors and the DIP Lender may agree in accordance with the terms of the DIP Facility; provided, however, that notice of any material modification or amendment (including any waiver of any Event of Default) shall be subject to approval by this Court; and

*[handwritten: but upon (3) business days prior notice to the Committee]*

(c)  the non-refundable payments to the DIP Lender, as the case may be, of the fees referred to in the DIP Credit Agreement, and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents; provided, however, that counsel for the DIP Lender shall provide the U.S. Trustee and counsel to any Committee appointed copies of the invoices of the DIP Lender's attorneys' fees within two (2) business days of submission to the Debtors.

Until all of the Borrowings and Obligations have been indefeasibly paid and satisfied in full by their terms, the Debtors shall use the DIP Facility proceeds strictly in accordance with the terms of the Budget, and other terms of this Interim DIP Financing Order.

*[handwritten: It shall be an Event of Default]*

20.  <u>Insurance Policies.</u>  The Debtors ~~shall~~ *[handwritten: but to]* maintain with financially sound and reputable insurance companies insurance of a kind covering the Collateral against loss,

*[handwritten: It shall be an Event of Default if the]*

theft or damage. Upon entry of this Interim DIP Financing Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the Collateral. *It shall be an Event of Default (i)*

21. <u>Preservation of Collateral.</u> The Debtors shall make any and all payments necessary to keep the Collateral and its other property in good repair and condition and not permit or commit any ~~waste~~ thereof. *(ii) or fails to* The Debtors ~~shall~~ *fails to* exercise their business judgment and, in so doing, ~~shall~~ preserve, maintain, and continue all patents, licenses, *their* privileges, franchises, certificates and the like necessary for the operation of ~~its~~ Business.

22. <u>Deposits.</u> If the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits that are not included in the Budget without first obtaining consent of the DIP Lender), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to ~~the~~ *It shall be an Event of Default if* the DIP Facility Liens granted by this Interim DIP Financing Order. The Debtors ~~may not~~ use or transfer any such returned deposits, ~~and~~ the Debtors *hereby* assign and set over their rights in and to all such returned deposits to the DIP Lender.

23. <u>Reporting Requirements.</u> The Debtors are authorized ~~and directed~~ to provide the DIP Lender with all of the documentation and reports necessary to determine compliance with the Budget.

24. <u>No Control.</u> Nothing in this Interim DIP Financing Order shall be deemed to place the DIP Lender in control of the operations or Business of the Debtors. *in and of itself*

*It shall be an Event of Default if,*

25.    <u>Waiver of Right to Additional Credit.</u> During the term of the DIP Facility, the Debtors ~~waive their right~~ *seek* to obtain additional credit under sections 364(c) or (d) of the Bankruptcy Code.

26.    <u>Subsequent Reversal.</u> ~~If any or all of the provisions of this Interim DIP Financing Order or the~~ DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court: (i) such modification, vacatur, amendment or stay shall not affect the validity of any obligation of any Debtor to the DIP Lender that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment or stay (the "<u>Effective Date</u>"), or the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, or other grant authorized or created by this Interim DIP Financing Order and the DIP Facility Documents; and (ii) the Indebtedness pursuant to this Interim DIP Financing Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the original ~~provisions of this Interim DIP Financing Order and the DIP Facility Documents, and~~ the validity of any such credit extended or security interest granted pursuant to this Interim DIP Financing Order and the DIP Facility Documents is and shall be protected by section 364(e) of the Bankruptcy Code.

27.    <u>Effect of Dismissal of Cases.</u> If the Bankruptcy Case is dismissed, converted or substantively consolidated, then neither the entry of this Interim DIP Financing Order nor the dismissal, conversion or substantive consolidation of the Bankruptcy Case shall affect the rights of the DIP Lender, the Textron Lenders or the Textron Agent under this Interim DIP Financing Order, and all of the respective rights

and remedies thereunder of the DIP Lender shall remain in full force and effect as if the Bankruptcy Case had not been dismissed, converted or substantively consolidated.

28.     Reservation of Rights and Retention of Jurisdiction.

(a)     To the extent the terms and conditions of the DIP Facility Documents are in conflict with the terms and conditions of this Interim DIP Financing Order, the terms and conditions of this Interim DIP Financing Order shall control.

(b)     No approval, agreement or consent requested of the DIP Lender by the Debtors pursuant to the terms of this Interim DIP Financing Order or otherwise shall be inferred from any action, inaction or acquiescence of the DIP Lender other than a writing acceptable to and signed by the DIP Lender that expressly shows such approval, agreement or consent, without limitation. Without limitation, nothing herein shall in any way affect the rights of the DIP Lender as to any non-Debtor entity or person (as that term is defined under section 101 of the Bankruptcy Code).

(c)     Nothing herein shall be deemed or construed to waive, limit or modify the rights of the DIP Lender, the Textron Lenders, or the Textron Agent to seek additional relief in the Bankruptcy Case in accordance with any provision of the Bankruptcy Code or applicable law. Any failure by the DIP Lender, the Textron Lenders, or the Textron Agent to seek such relief or otherwise exercise its rights and remedies under the DIP Facility or this Interim DIP Financing Order shall not constitute a waiver of any of the DIP Lender's, the Textron Lenders' or the Textron Agent's rights *under any of their respective lending facilities.*

(d)     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the Bankruptcy Court under the

Bankruptcy Code, to enforce the terms of this Interim DIP Financing Order and to adjudicate any and all disputes in connection therewith.

29. Findings of Fact and Conclusions of Law. This Interim DIP Financing Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable ~~nunc pro tunc to the Petition Date~~ immediately upon the entry thereof.

30. Controlling Effect of Interim DIP Financing Order. To the extent any provision of this Interim DIP Financing Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Interim DIP Financing Order shall control.

31. Final Hearing. A final hearing on the Motion shall be heard before this Court on December 21, 2010 at 3:00 p.m. (prevailing Eastern Time) at the Bankruptcy Court, 824 North Market Street, Wilmington, Delaware 19801 (the "Final Hearing").

32. Adequate Notice. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2) and Local Bankruptcy Rule 9013-1(m). Within two business days of the entry of this Interim DIP Financing Order, the Debtors shall cause a copy of this Interim DIP Financing Order and notice of the Final Hearing to be given via overnight mail or facsimile to the Notice Parties and all landlords of the Debtors. Any party-in-interest objecting to the relief sought in the Final DIP Financing Order shall submit any such objection in writing and file same with the Court and serve (so as to be received) such objection no later than December 14, 2010 at 4:00 p.m. (prevailing Eastern Time) on the following:

(a)     **Proposed Counsel to the Debtors:** Locke Lord Bissell & Liddell LLP, 111 S. Wacker Drive, Chicago, IL 60606-4410 (Attn: David W. Wirt, Aaron C. Smith, Courtney E. Barr);

(b)     **Proposed Co-Counsel to the Debtors**: Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward);

(c)     **Counsel to the DIP Lenders:** Snell & Wilmer, LLP, One Arizona Center, Phoenix, AZ 85004-2202 (Attn: Christopher H. Bayley, Donald F. Ennis);

(d)     **Co-Counsel to the DIP Lenders:** Ashby Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington DE 19899 (Attn: William P. Bowden), Delaware counsel to the DIP Lender; and

(e)     **Counsel to the Textron Lenders and the Textron Agent**: King & Spalding LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Michael C. Rupe); and

(e)     **Office of the United States Trustee for the District of Delaware**, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: David Klauder, Esq.).

33.     <u>Termination Date</u>.   The DIP Lender's agreement to provide credit and other accommodation under the DIP Financing Documents and this Interim DIP Financing Order, on the terms and subject to the limitations set forth in the Budget and this Interim DIP Financing Order, shall be effective ~~nunc pro tunc from the Petition Date~~ ~~to and including~~ the earlier of: (a) notice of the occurrence of an Event of Default; or (b) the Final Hearing (the "<u>Termination Date</u>"). On the Termination Date, all of the Debtors' authority to obtain credit under the DIP Facility Documents and this Interim DIP

Financing Order shall terminate, as will the DIP Lender's obligation to provide the DIP Financing, unless extended by written agreement of the DIP Lender and the Debtors and such agreement is promptly filed with this Court by the Debtors .

Dated: _____12/1_____, 2010
Wilmington, Delaware

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge