

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., et al.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | | Re: Docket No. 25 |

## ORDER (A) APPROVING BID PROCEDURES; (B) APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (C) APPROVING THE STALKING HORSE PURCHASER'S RIGHT TO CREDIT BID; (D) APPROVING THE FORM AND MANNER OF NOTICES; (E) APPROVING THE PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES; AND (F) SETTING A SALE HEARING

Upon the motion (the "Motion")[2] of the above-captioned debtors (collectively, the "Debtors") for the entry of an order (the "Order") (a) approving Bid Procedures; (b) approving a Break-Up Fee and Expense Reimbursement; (c) approving the Stalking Horse Purchaser's right to Credit Bid; (d) approving the form and manner of notices; (e) approving the procedures for the assumption and assignment of contracts and leases, and (f) setting a Sale Hearing; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc., a Florida corporation (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: 15303 Dallas Parkway, Suite 800, Addison, Texas 75001.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion. In the event there is a conflict between this Order and the Motion or the Stalking Horse Agreement, this Order shall control and govern.

CHI1:9950000/00000:1731711v3

appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**[3]

A.   This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.   The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), (ii) Rules 2002(a)(2), 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and (iii) Rules 6004-1 and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

C.   Notice of the Motion has been given to: (i) the United States Trustee for the District of Delaware; (ii) the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Debtors' thirty largest unsecured creditors on a consolidated basis; (vi) counsel to the Committee; (vii) counsel to the DIP Lender and the Stalking Horse Purchaser; (viii) counsel to Textron, the Debtors' prepetition lender; (ix) each of the Debtors' cash management banks; (x) all persons or entities known to be asserting a lien on any of the Transferred Assets; (xi) all persons or entities known to have expressed an interest in acquiring any of the Transferred Assets; (xii) all persons or entities who have requested notice pursuant to Bankruptcy Rule 2002.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

D.  The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bid Procedures; (ii) set the Sale Hearing and approve the manner of notice of the Motion and the Sale Hearing; (iii) approve the Stalking Horse Purchaser's right to credit bid; (iv) approve the procedures for the assumption and assignment of Assumed Contracts, including notice of proposed cure amounts; and (v) grant certain bid protections as provided in the Stalking Horse Agreement and in this Order.

E.  The Expense Reimbursement and the Break-Up Fee shall be paid in accordance with the Stalking Horse Agreement, and (i) if triggered, shall be deemed actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of sections 503 and 507(b) of the Bankruptcy Code; (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Purchaser; (iii) are reasonable and appropriate, including in light of the size and nature of the Asset Sale and the efforts that have been or will be expended by the Stalking Horse Purchaser notwithstanding that the proposed Asset Sale is subject to higher or otherwise better offers for the Transferred Assets; (iv) were negotiated by the parties at arm's length and in good faith; and (v) are necessary to ensure that the Stalking Horse Purchaser will continue to pursue its proposed acquisition of the Transferred Assets. The Expense Reimbursement and Break-Up Fee also induced the Staking Horse Purchaser to submit a bid that will serve as a minimum floor bid on which the Debtors, their creditors and other bidders may rely. The Stalking Horse Bidder has provided a material benefit to the Debtors and their creditors by increasing the likelihood that the Debtors will receive the best possible value for the Acquired Assets.

F.  The Bid Procedures are reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

CH11:9950000/00000:1731711v3

**THE COURT HEREBY ORDERS THAT:**

1. The Motion is granted as provided herein.

2. The Bid Procedures, in the form attached to this Order as <u>Exhibit A</u>, are hereby approved in their entirety and incorporated herein by reference.

3. The bid protections provided in the Motion are approved. Specifically, the Court approves the Expense Reimbursement and the Break-Up Fee provided for the Stalking Horse Purchaser pursuant to the Stalking Horse Agreement.

4. The Debtors are authorized to enter into and execute the Stalking Horse Agreement and to perform such obligations under the Stalking Horse Agreement as expressly authorized under this Order. The Debtors are further authorized to take any and all actions necessary to implement the Bid Procedures and to conduct an Asset Sale by Auction of the Transferred Assets pursuant to the Bidding Procedures and the terms of this Order. The proposed sale of the Transferred Assets, the proposed assumption and assignment of the Assumed Contracts, the Auction and the Sale Hearing shall be conducted in accordance with the provisions of this Order and the Bidding Procedures.

5. The Stalking Horse Purchaser shall, subject to the terms of the Stalking Horse Agreement, be deemed a Qualified Bidder pursuant to the Bidding Procedures, and shall be authorized to include in its bid a credit equal to the amount of the outstanding balance of the DIP Facility at the time of Closing, as more fully set forth in Section 1.6(a) of the Stalking Horse Agreement (the "<u>Credit Bid</u>").

6. The United States Government intends to assert an objection to the entry of any Sale Order that does not include the following:

Notwithstanding any provision in the Motion, the Sale Order or the implementing Asset Sale documents (collectively, the "Documents"), any licenses, authorizations, guaranties, leases, contracts, agreements or other interests of the federal government (collectively, the "Federal Interests") shall be paid, treated, determined and administered in the ordinary course of business as if the Debtors' Bankruptcy Cases were never filed. The Debtors and the Purchaser or Successful Bidder(s) (as applicable) shall comply with all applicable non-bankruptcy law, regulations, statutes and federal guides issued pursuant to the foregoing. Moreover, without limiting the foregoing, nothing in the Documents shall: (1) be interpreted to set cure amounts regarding, or to require the government to novate or otherwise consent to the transfer of, any Federal Interests; (2) affect, limit or prejudice the rights, titles, powers and privileges of the Government National Mortgage Association in its statutory capacity; or (3) affect the government's rights to offset or recoup any amounts due under, or relating to, any Federal Interests, with any such rights being expressly preserved.

**Break-Up Fee and Expense Reimbursement**

7. The Debtors' obligation to pay the Break-Up Fee and the Expense Reimbursement shall survive termination of the Stalking Horse Agreement. A Break-Up Fee of $1,100,000, and an Expense Reimbursement of up to $250,000 in the aggregate, shall (i) only be payable by the Debtors to the Stalking Horse Purchaser immediately upon the closing of an Asset Sale with a Successful Bidder that is not the Stalking Horse Purchaser; (ii) be paid out of the proceeds of the Asset Sale; and (iii) have priority as an

administrative expense in the Debtors' cases under sections 503(b) and 507(a) of the Bankruptcy Code.

### The Auction

8. As further described in the Bid Procedures, if more than one Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Agreement), the Debtors will conduct the Auction at 10:00 a.m. (prevailing Eastern time) on March 1, 2011, at the offices of the Debtors' Delaware counsel, Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington DE 19801 or such later time on such day or other place as the Debtors shall notify all Qualified Bidders who have submitted Qualified Bids, if a Qualified Bid is timely received. The Auction shall be transcribed or videotaped.

9. If the Debtors do not receive any Qualified Bids other than the Stalking Horse Bidder's bid pursuant to the Stalking Horse Agreement, an Auction will not be held and the Stalking Horse Bidder will be named the Successful Bidder.

10. All bidders submitting a Qualified Bid are deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction, or the construction and enforcement of any Competing Transaction Documents.

11. The Debtors will be deemed to have accepted the Successful Bid only when such bid has been approved by the Court at the Sale Hearing.

### Assumption and Assignment Notices & Procedures

12. By January 17, 2011, the Debtors shall send a notice to each counterparty to an Assumed Contract ("Contract Counterparty") setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such Contract Counterparty if the Debtors

6

assume or assume and assign such executory contract or unexpired lease, and alerting such Contract Counterparty that their contract may be assumed and assigned to the Successful Bidder (the "Cure and Possible Assumption and Assignment Notice"). Any Contract Counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their executory contract or unexpired lease must file an objection (a "Cure or Assignment Objection") on or before 4:00 p.m. prevailing Eastern Time on February 7, 2011 (the "Cure or Assignment Objection Deadline"). All Cure or Assignment Objections shall: (a) be in writing; (b) state with specificity the cure amount that the counterparty believes is required; (c) comply with the Bankruptcy Rules and Local Rules; (d) be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, DE 19801, by the Cure or Assignment Objection Deadline; and (e) be served on: (i) counsel for the Debtors, Locke Lord Bissell & Liddell, LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt and Aaron C. Smith, and Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn Christopher A. Ward; (ii) counsel for the Stalking Horse Purchaser, Snell & Wilmer, LLP, One Arizona Center, Phoenix, AZ 85004-2202, Attn: Christopher H. Bayley and Donald F. Ennis, and Ashby Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attn: William P. Bowden; and (iii) counsel for the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones, so that it is actually received no later than the Cure or Assignment Objection Deadline.

13. Unless a Contract Counterparty timely files and serves a Cure or Assignment Objection, that Contract Counterparty shall: (a) be forever barred from objecting to the

7

CHI1:9950000/00000:1731711v3

Debtors' proposed Cure Amount and from asserting any additional cure, damages, or other amounts with respect to the Assumed Contract, and the Debtors and Stalking Horse Purchaser (or the Successful Bidder) shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Cure and Possible Assumption and Assignment Notice; (b) be deemed to have consented to the proposed assumption and assignment of the Assumed Contract; and (c) be forever barred and estopped from asserting or claiming against the Debtors or Stalking Horse Purchaser (or the Successful Bidder) that any other defaults exist, that conditions to assignment must be satisfied under such Assumed Contract or that there is any objection or defense to the assumption and assignment of such Assumed Contract.

14. Where a Contract Counterparty to an Assumed Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that counterparty's Assumed Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under section 365 of the Bankruptcy Code (if any) or, as the case may be, the Debtors' ability to assign the Assumed Contract to the Successful Bidder, will be determined at the Sale Hearing. Pending a ruling on such objection, if not made at the Sale Hearing, an amount necessary to pay the Cure Amount will be reserved and paid upon entry of an order determining the correct Cure Amount (if any) and approving the assignment of the Assumed Contract to the Successful Bidder.

### Notice of the Sale Process

15. The notices, in substantially the same forms as annexed to the Motion as Exhibit C (the "Sale Notice"), Exhibit D (the "Creditor Notice"), and Exhibit E (the "Bid Procedures Notice") and to the Bid Procedures as Exhibit 2 (the Cure and Possible Assumption and

Assignment Notice), are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale Hearing and the Assignment Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

16. Within two (2) business days after entry of this Order, the Debtors (or their agents) shall serve the Sale Notice by first-class mail upon: (a) the United States Trustee for the District of Delaware; (b) the United States Attorney for the District of Delaware; (c) the Internal Revenue Service; (d) the Securities and Exchange Commission; (e) the Debtors' thirty largest unsecured creditors on a consolidated basis; (f) counsel to the Committee (if one is appointed); (g) counsel to the DIP Lender and the Stalking Horse Purchaser; (h) counsel to Textron, the Debtors' prepetition lender; (i) each of the Debtors' cash management banks; (j) all persons or entities known to be asserting a lien on any of the Transferred Assets; (k) all persons or entities known to have expressed an interest in acquiring any of the Transferred Assets; and (l) all persons or entities who have requested notice pursuant to Bankruptcy Rule 2002.

17. The Debtors shall publish the Bid Procedures Notice once in the *USA Today* or the *Wall Street Journal* within five (5) business days after entry of this Order.

18. Within two (2) business days after entry of this Order, the Debtors (or their agents) shall serve the Creditor Notice on all of the parties set forth on the Debtors' creditor matrix who were not served with a Sale Notice.

### **The Sale Hearing**

19. The Sale Hearing will be conducted on March 4, 2011 at 10:00 a.m. (prevailing Eastern time). The Debtors will seek entry of an order of the Court at the Sale Hearing approving and authorizing the sale of the Transferred Assets to the Stalking Horse

Purchaser or, as the case may be, the Successful Bidder. The Sale Hearing may be continued from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed with the Court and served on the Notice Parties.

**Objections to the Sale**

20. Objections, if any, to the relief requested in the Motion relating to the Asset Sale (except for any objection that arises at the Auction) must: (a) be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on March 3, 2011; and (b) be served so that it is actually received no later than 4:00 p.m. (prevailing Eastern time) on March 2, 2011 by (i) counsel for the Debtors, Locke Lord Bissell & Liddell, LLP, 111 S. Wacker Drive, Chicago, IL 60606, Attn.: David W. Wirt and Aaron C. Smith, and Polsinelli Shughart PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn Christopher A. Ward; (ii) counsel for the Stalking Horse Purchaser, Snell & Wilmer, LLP, One Arizona Center, Phoenix, AZ 85004-2202, Attn: Christopher H. Bayley and Donald F. Ennis, and Ashby Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attn: William P. Bowden; and (iii) counsel for the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones.

21. The Stalking Horse Purchaser shall have standing to appear and be heard before this Court in connection with all matters relating to the selection of a Successful Bidder or Qualified Bidder, the Bid Procedures, the Expense Reimbursement and Break-Up Fee, and the Auction.

## Other Relief Granted

22. All objections to the relief requested in the Motion (and all reservations of rights included therein) that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

23. To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered after any conversion of these cases to one or more cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Order, the provisions of this Order shall control. The Debtors' obligations under this Order, including the obligation to pay the Break-Up Fee and the Expense Reimbursement, survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases.

24. Nothing in this Order, the Stalking Horse Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

25. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

26. The Debtors are hereby authorized to conduct the Asset Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

27. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

28. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

29. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

30. Notwithstanding anything in the DIP Credit Agreement or the Asset Purchase Agreement to the contrary, in the event that the Stalking Horse Purchaser breaches the Asset Purchase Agreement, the Debtors and their estates may set off any claims against the Stalking Horse Purchaser against their obligations owed to the DIP Lender under the DIP Credit Agreement.

31. Notwithstanding anything to the contrary in the Asset Purchase Agreement, at the Closing, in addition to making payment of the Purchase Price, the Successful Bidder, including without limitation the Stalking Horse Purchaser, shall be obligated to pay to the Debtors an amount needed to establish a "wind-down fund" of $3,000,000 in cash (the "Wind-Down Fund"), which shall become the unencumbered property of the Debtors' estates. Notwithstanding the foregoing, to the extent that the Successful Bidder's bid exceeds $50,000,000, then any additional cash paid to the Debtors in excess of payment of the $50,000,000 million purchase price (whether such $50,000,000 is paid by credit bidding or cash or a combination thereof) shall be credited against the Successful Bidder's obligation hereunder to fund the Wind-Down Fund. Once the Purchase Price paid by the Successful Bidder results in the payment of additional cash consideration of $3,000,000 or more above $50,000,000, then the Successful Bidder's obligation to fund the Wind-Down Fund shall be deemed fully satisfied. For

the avoidance of doubt, cash paid by the Stalking Horse Purchase to supplement the credit-bidding of the DIP Facility balance in order to make payment of the Base Price shall not be credited towards the Successful Bidder's obligation hereunder to fund the Wind-Down Fund.

32. The following sentence shall be added at the end of Section 5.15 of the Asset Purchase Agreement: "Effective as of the time of Closing, each Transferred Subsidiary shall be deemed to have unconditionally waived, released and discharged each of the Sellers from and against any and all Claims and Liabilities, whether or not known to the Transferred Subsidiaries (or any of them) as of the Closing Date, including any Claim or Liability arising under the Bankruptcy Code or any other applicable Law."

Date: _January 6_, 2011

United States Bankruptcy Judge