

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., et al.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 25** |

## ORDER PURSUANT TO 11 U.S.C. §§ 363 AND 365 (A) AUTHORIZING AND APPROVING ASSET PURCHASE AGREEMENT BY AND AMONG THE DEBTORS, AS SELLERS, AND PALM HARBOR HOMES, INC., A DELAWARE CORPORATION, AS PURCHASER, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF

Upon consideration of the *Motion of the Debtors for Entry of an Order Pursuant to 11 U.S.C. 363 and 365 (A) Authorizing and Approving Asset Purchase Agreement by and among the Debtors, as Sellers, and Palm Harbor Homes, Inc., a Delaware Corporation, as Purchaser, or Such Other Purchase Agreement(s) Between the Debtors and the Successful Bidder, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief* (the "Sale Motion") [Docket Entry No. 25] of Palm Harbor Homes, Inc., a Florida corporation, and the other debtors and debtors-in-possession (the "Debtors") in the above-captioned cases which requests an order (the "Sale Order") that, among other things, (a) authorizes and approves that certain Amended and Restated Asset Purchase Agreement dated as of March 1, 2011 (including all related exhibits and schedules) (the "Agreement")[2] (a complete copy of the Agreement was attached to the *Notice of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc., a Florida corporation (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: 15303 Dallas Parkway, Suite 700, Addison, Texas 75001.

[2] Except as otherwise defined herein, or where reference is made to a definition in the Sale Motion, all capitalized terms shall have the meanings ascribed to them in the Agreement.

*Filing of Amended and Restated Asset Purchase Agreement with Successful Bidder* filed at Docket No. 351), among the Debtors and Palm Harbor Homes, Inc., a Delaware corporation ("<u>Purchaser</u>"), which provides for, effective as of the Closing on the Closing Date, Debtors' sale, assignment, transfer, conveyance and delivery of the Transferred Assets identified therein to Purchaser or such entity that submits the highest or otherwise best bid at the Auction (as defined in the Sale Motion) to consider competing bids, free and clear of all Encumbrances except the Permitted Encumbrances (the "<u>Asset Sale</u>"), and (b) authorizes and approves the assumption and assignment of certain unexpired leases and executory contracts referenced in the Agreement (the "<u>Assumed Contracts</u>"), or in one or more subsequent filings authorized by an order of this Court; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a); and it appearing that the Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the Sale Motion and opportunity for objection having been given; and adequate notice with respect to the assumption and assignment of the Assumed Contracts having been given; and this Court having reviewed and considered the Sale Motion and any objections thereto; and this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before this Court (the "<u>Sale Hearing</u>"); and upon the full record of the Bankruptcy Case; and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Sale Motion and the record made at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor:

1928438.1

## FINDINGS OF FACT:

**THE COURT HEREBY FINDS THAT:[3]**

### Jurisdiction, Final Order and Statutory Predicates

A.     The Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Bankruptcy Case and the Sale Motion is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of the Sale Order upon the terms set forth herein.

C.     The statutory predicates for the relief requested in the Sale Motion include, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9014 and 9036.

### Retention of Jurisdiction

D.     It is necessary and appropriate for the Court to retain jurisdiction as provided in the Agreement to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including its related documents, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any of the Debtors is a party or which has been assigned by any of the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

involving the Debtors concerning or relating in any way to, or affecting, the Asset Sale or the transactions contemplated in the Agreement, and related documents.

**Corporate Authority; Consents and Approvals**

E.     The Debtors have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby and to consummate the Asset Sale and all transactions contemplated in the Agreement.    The Asset Sale and all transactions contemplated by the Agreement have been duly and validly authorized by all necessary corporate actions of the Debtors.  No consents or approvals other than the authorization and approval of this Court are required for the Debtors to consummate the Asset Sale and the transactions contemplated by the Agreement.

**Notice of the Sale, Auction, and Assumption and Assignment**

F.     Notice of the Sale Hearing, the Auction, the Sale Motion, the Asset Sale and the transactions contemplated by the Agreement, and the assumption and assignment of the Assumed Contracts, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all known interested Persons entitled to receive such notice, including, without limitation, the following:

(i)     the Office of the United States Trustee for the District of Delaware;

(ii)     the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions;

(iii)     counsel to any official committee of unsecured creditors appointed in the Bankruptcy Case;

(iv)     the Office of the United States Attorney for the District of Delaware;

(v)     counsel to the Debtors' prepetition secured lenders;

(vi)     the Securities and Exchange Commission;

(vii)     counsel to the DIP Lender and the Purchaser;

(viii)     all taxing authorities and other governmental agencies having jurisdiction over any of the Transferred Assets, including the Internal Revenue Service;

4

(ix)    all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002;

(x)    all Persons known or reasonably believed to have asserted an Encumbrance on any of the Transferred Assets;

(xi)    the non-Debtor counterparties to each of the Assumed Contracts (the "Contract Counterparties"); and

(xii)    all persons or entities known to have expressed an interest in acquiring any of the Transferred Assets.

G.    Debtors published notice of the Sale Motion, the time and place of the proposed Auction, the time and place of the Sale Hearing and the time for filing an objection to the Sale Motion in the national edition of *The Wall Street Journal* on January 13, 2011.

H.    The Debtors served notice upon the Contract Counterparties: (i) that the Debtors seek to assume and assign certain executory contracts and unexpired leases as provided for in the Agreement as of the Closing Date or in one or more subsequent filing authorized by order of this Court; and (ii) of the relevant proposed Cure Costs for each of the Assumed Contracts.  The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Cost for the Assumed Contracts. Each of the Contract Counterparties has had an opportunity to object to the Cure Costs set forth in the notice.

I.    The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion regarding the sales process, including, without limitation: (i) determination of final Cure Costs; and (ii) approval and authorization to serve notice of the Auction and Sale Hearing.

J.    The notice of the Auction and the Sale Hearing provided all interested parties with timely and proper notice of the Asset Sale, Auction and Sale Hearing.

K.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, Asset Sale and

the transactions contemplated by the Agreement has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014. The notices described above were good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Asset Sale, or assumption and assignment of the Assumed Contracts is required.

L. The disclosures made by the Debtors concerning the Agreement, Auction, Asset Sale, Sale Hearing, and the assumption and assignment of the Assumed Contracts were good, complete and adequate.

## Auction

M. The Debtors conducted an Auction on March 1, 2011 in connection with, and have otherwise complied in all respects with, the Bidding Procedures Order. The Auction process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Transferred Assets. The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Transferred Assets. The Auction was transcribed and the transcript of the Auction was introduced into evidence at the Sale Hearing. At the conclusion of the Auction, the Debtors determined in the exercise of their good faith business judgment that Purchaser submitted the highest and best bid for the Transferred Assets and, accordingly, was determined to be the successful bidder for the Transferred Assets.

## Good Faith of Purchaser

N. As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtors and their investment bankers marketed the Debtors' assets to secure the highest and best offer. The terms and conditions set forth in the Agreement are fair, adequate and reasonable, including the amount of the Purchase Price, which is found to constitute reasonably equivalent and fair value.

1928438.1

O.     Purchaser is not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  No officer or director or other insider of the Debtors holds any interest in or is otherwise related to Purchaser.

P.     The Debtors and Purchaser extensively negotiated the terms and conditions of the Agreement in good faith and at arm's length.  Purchaser is purchasing the Transferred Assets and has entered into the Agreement in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) Purchaser agreed to subject its bid to competitive bidding at the Auction; (iii) all payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser in connection with the Asset Sale have been disclosed; (iv) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (v) no common identity of directors or controlling stockholders exists between Purchaser and the Debtors; and (vi) the negotiation and execution of the Agreement was at arm's length and in good faith.

Q.     Neither the Debtors nor Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. The Debtors and Purchaser were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Asset Sale.

R.     No party has objected to the Asset Sale, the Agreement or the Auction on the grounds of fraud or collusion.

### Highest and Best Offer

S.     The Debtors conducted a marketing process and the Auction in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.  The Auction process afforded a full, fair and reasonable opportunity for any Persons to make a higher or otherwise better offer to purchase the Transferred Asset than that proposed in the Agreement.

The Auction was duly noticed and conducted in a noncollusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Transferred Assets.

T.     The Agreement constitutes the highest and best offer for the Transferred Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreement constitutes the highest and best offer for the Transferred Assets constitutes a valid and sound exercise of the Debtors' good faith business judgment.

U.     The Agreement represents a fair and reasonable offer to purchase the Transferred Assets under the circumstances of the Bankruptcy Case. No other Person or group of Persons has offered to purchase the Transferred Assets for greater economic value to the Debtors' estates than that offered by Purchaser.

V.     Approval of the Sale Motion and the Agreement and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

W.     The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Asset Sale prior to, and outside of, a plan of reorganization.

## No Fraudulent Transfer

X.     The consideration provided by Purchaser pursuant to the Agreement is fair and adequate and constitutes no less than reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

Y.     Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity between Purchaser and the Debtors, or their estates. Purchaser is not holding itself out to the public as a continuation of the Debtors. Purchaser is not a successor to the Debtors or their

estates and the Asset Sale does not amount to a consolidation, merger or de facto merger of Purchaser and the Debtors.

## Validity of Transfer

Z.     The Debtors have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Agreement, except as otherwise set forth in the Agreement.

AA.     The transfer of each of the Transferred Assets to Purchaser will be as of the Closing Date a legal, valid, and effective transfer of good and marketable titled of the Transferred Assets, and vests or will vest Purchaser with all right, title, and interest of the Debtors to the Transferred Assets as of the Closing Date free and clear of all Encumbrances, and pursuant to section 363(f) of the Bankruptcy Code except as otherwise provided in the Agreement.

## Section 363(f) Is Satisfied

BB.     The Debtors may sell the Transferred Assets to Purchaser free and clear of all Encumbrances (except as expressly stated as obligations of Purchaser under the Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been or will be satisfied. Those holders of such Encumbrances of each type against the Debtors or their estates or any of the Transferred Assets, and non-Debtor parties to any related agreements who did not object, or who withdrew their objections, to the Asset Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who asserted an objection at the Sale Hearing, if any, fall within one or more of the other subsections of 363(f) and are adequately protected by having their Encumbrances, if any, in each instance against the Debtors, their estates or any of the Transferred Assets, attach to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of

1928438.1

the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which they allege such an Encumbrance.

CC.     Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Transferred Assets to Purchaser, and the assumption and assignment of the Assumed Contracts to Purchaser, were not free and clear of all Encumbrances (except the Permitted Encumbrances and except as expressly stated as obligations of Purchaser under the Agreement), or if Purchaser would, or in the future could, be liable for any of such liens, claims, encumbrances and interests.

## Assumption and Assignment of the Assumed Contracts

DD.     The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order are integral to the Agreement and are in the best interests of the Debtors and their estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

EE.     The respective amounts set forth in <u>Exhibit A</u> annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts (the "Cure Costs").

FF.     Pursuant to the terms of the Agreement, on or before the Closing Date, Purchaser shall have (i) cured and/or provided adequate assurance of cure of any monetary defaults existing prior to the Closing Date under any Assumed Contract, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provided compensation or adequate assurance of compensation to any Contract Counterparty to such Assumed Contracts for its actual pecuniary losses resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provided adequate assurance of its future performance under the relevant Assumed Contract within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

1928438.1

GG.    As of the Closing Date, subject only to the payment of the Cure Costs, as determined in accordance with the procedures identified in the Sale Motion and its accompanying and related documents, each of the Assigned Contracts will be in full force and effect and enforceable by Purchaser against any Contract Counterparty thereto in accordance with its terms.

HH.    The Debtors have, to the extent necessary, satisfied the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the Asset Sale, the assumption and assignment of the Assumed Contracts, and shall upon assignment thereto on the Closing Date, be relieved from any liability for any breach thereof.

II.    Purchaser has demonstrated that it has the financial wherewithal to fully perform and satisfy the obligations under the Assumed Contracts as required by sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f)(2)(B) of the Bankruptcy Code, Purchaser has provided adequate assurance of future performance of the obligations under the Assumed Contracts.

<u>**Sound Business Purpose for the Sale**</u>

JJ.    Good and sufficient reasons for approval of the Agreement and the Asset Sale have been articulated.  The relief requested in the Sale Motion is within the reasonable business judgment of the Debtors, and is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

KK.    The Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification, and (ii) compelling circumstances for the entry into the Agreement and the consummation of the Asset Sale pursuant to section 363(b) of the Bankruptcy Code, in that, among other things, the immediate consummation of the Asset Sale, and the assumption and assignment of the Assumed Contracts is necessary and appropriate to maximize the value to Debtors' estates and the Asset Sale.

1928438.1

## Compelling Circumstances for an Immediate Sale

LL.     To maximize the value of the Transferred Assets and preserve the viability of the Business to which the Transferred Assets relate, and to satisfy the postpetition debtor-in-possession financing borne by the Debtors, it is essential that the Asset Sale occur within the time constraints set forth in the Agreement. Time is of the essence in consummating the Asset Sale.

MM.     Given all of the circumstances of the Bankruptcy Case and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Asset Sale to Purchaser constitutes a reasonable and sound exercise of the Debtors' good faith business judgment and should be approved.

NN.     The consummation of the Asset Sale and transactions contemplated by the Agreement is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions.

OO.     The Asset Sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

1928438.1

## CONCLUSIONS OF LAW:

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### General Provisions

1.      Relief Granted. The relief requested in the Sale Motion is granted and approved in its entirety and in all respects, and the Asset Sale and the transactions contemplated thereby and by the Agreement are approved as set forth in this Sale Order.

2.      Objections Overruled. All objections to the Sale Motion or the relief requested therein, including all reservations of rights related thereto, that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court or as otherwise provided in this Sale Order, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

3.      Sale Order Binding on All Parties. The terms and provisions of this Sale Order shall be binding in all respect upon the Debtors, their estates, creditors, members, managers and shareholders of the Debtors, Purchaser and its officers, directors and members, all interested parties, and their respective successors and assigns, including, but not limited to, all Contract Counterparties and all other non-Debtor parties asserting any Encumbrances in the Transferred Assets.

### Approval of the Agreement

4.      Agreement Approved. The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.      Authorization to Consummate Transactions. Pursuant to sections 363(b), (f) and (l) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Asset Sale of the Transferred Assets to Purchaser pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Asset Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement and close fully the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to

1928438.1

implement the Agreement and the Asset Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Agreement and such other ancillary documents.

## Transfer of the Transferred Assets

6.     Transfer of Transferred Assets Authorized.  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code and on the terms set forth in the Agreement, upon the Closing provided in the Agreement, the Transferred Assets shall be and hereby are deemed transferred and assigned to Purchaser effective as of the Closing on the Closing Date, and upon the Debtors' receipt of the Purchase Price, shall be free and clear of all Encumbrances arising or relating to the period immediately prior to the Closing, other than the Permitted Encumbrances, with such Encumbrances, if any, against the Debtors or their estates or the Transferred Assets, attaching to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which they allege such an Encumbrance.   Such Transferred Assets shall be transferred to Purchaser "as is, where is" with all faults in accordance with the Agreement upon and as of the Closing Date.

7.     Surrender of Transferred Assets by Third Parties. All entities that are in possession of some or all of the Transferred Assets on the Closing Date are directed to surrender possession of such Transferred Assets to Purchaser at the Closing.   All Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Transferred Assets to Purchaser in accordance with the terms of the Agreement and this Sale Order.

8.     Transfer Free and Clear of Encumbrances. Except as expressly permitted by the Agreement, (i) the transfer and sale of the Transferred Assets to Purchaser shall be free and clear of any and all Encumbrances of any and every kind and nature, and all Persons holding Encumbrances of any kind and nature accruing, arising or relating to a period prior to the Closing Date with respect to any Transferred Asset (other than the Permitted Encumbrances)

14

hereby are barred, estopped, and permanently enjoined from asserting such Encumbrances against Purchaser or any of its affiliates, stockholders, members, managers, partners, parent entities, successors, assigns, officers, directors or employees, agents, representatives, and attorneys, or the Transferred Assets, and (ii) Purchaser shall have no liability or responsibility for any Encumbrance arising, accruing, or relating to a period prior to the Closing Date, except as otherwise provided for in the Agreement and the Permitted Encumbrances.

9. <u>Legal, Valid, and Marketable Transfer with Permanent Injunction.</u> The transfer of the Transferred Assets to Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Transferred Assets, and vests or will vest Purchaser with all right, title, and interest to the Transferred Assets, free and clear of all Encumbrances except as otherwise expressly stated as obligations of Purchaser under the Agreement and the Permitted Encumbrances. All Persons holding interests or claims of any kind or nature whatsoever against the Debtors or the Transferred Assets, the operation of the Transferred Assets prior to the Closing, the Auction or the Asset Sale are hereby and forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property, or the Transferred Assets, any claim, interest or liability existing, accrued, or arising prior to the Closing.

10. <u>Recording Offices</u>. On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance and transfer of the Transferred Assets or a bill of sale transferring good and marketable title of the Transferred Assets to Purchaser. This Sale Order is and shall be binding upon and govern the acts of all Persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing

15

Persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

11. <u>Transfers Binding on Third Parties.</u> This Sale Order and the Agreement shall be binding in all respects upon all creditors of and holders of equity interests in the Debtors (whether known or unknown), agents, trustee and collateral trustees, all Contract Counterparties and any other non-Debtor parties to any contracts with the Debtors (whether or not assigned), all successors and assigns of the Debtors, and any subsequent trustees appointed in the Bankruptcy Case or upon a conversion of the Bankruptcy Case to one or more cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or unwinding. Nothing in any chapter 11 plan confirmed in the Bankruptcy Case, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Bankruptcy Case, or any order entered upon the conversion of the Bankruptcy Case to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Agreement or this Sale Order.

12. A certified copy of this Sale Order may be (i) filed with the appropriate clerk; (ii) recorded with the recorder; and/or (iii) filed or recorded with any other governmental agency to act to cancel any Encumbrances against the Transferred Assets, other than the Permitted Encumbrances.

13. If any Person which had filed statements or other documents or agreements evidencing Encumbrances on any or a portion of the Transferred Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to Purchaser for the purpose of documenting the release of all Encumbrances against the Transferred Assets, which Person has or may assert with respect to all or a portion of the Transferred Assets, Purchaser is hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such Person with respect to the Transferred Assets.

16

## Assumed Contracts

14.     <u>Authorization to Assume and Assign</u>. Upon the Closing, the Debtors are authorized and directed, in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to assume and assign each of the Assumed Contracts to Purchaser free and clear of all Encumbrances as of the Closing Date. The payment of the applicable Cure Costs (if any) by Purchaser shall (a) effect a cure or adequate assurance of cure of all defaults existing thereunder as of the date on which the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "<u>Petition Date</u>") and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default. Purchaser shall then have assumed the Assumed Contracts and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of such Assumed Contracts shall not be a default thereunder. After the payment of the relevant Cure Costs, neither the Debtors, nor Purchaser shall have any further liabilities to the Contract Counterparties other than Purchaser's obligations under the Assumed Contracts, that accrue and become due and payable on or after the Closing Date.

15.     <u>Assignment Requirements Satisfied</u>. The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser, in accordance with their respective terms, notwithstanding (i) any provision in any such Assigned Contract (including provisions of the type described in sections 365(b)(2), (e)(1) and (f)(1) of the Bankruptcy Code) which prohibits, restricts or conditions such assignment or transfer or (ii) any default by any Debtor prior to Closing under any such Assumed Contract or any disputes between any Debtor and a Contract Counterparty with respect to any such Assigned Contract arising prior to Closing. In particular, any provisions in any Assumed Contract that restrict, prohibit or condition the assignment of such Assumed Contract or allow the Contract Counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the

17

assumption by the Debtors and assignment to Purchaser of the Assumed Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts.

16.     Consent to Assign.  The Contract Counterparties to each Assigned Contract shall be and hereby are deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code or this Court has determined that no such consent is required, and Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the Closing Date without the necessity of obtaining the Contract Counterparty's written consent to the assumption and assignment thereof.

17.     Section 365(k).  Upon the Closing and (i) the payment of the applicable Cure Cost; or (ii) in the event of any dispute over the appropriate Cure Cost, the Debtors' reserve and escrow of the amount necessary to satisfy the Cure Cost asserted by the Contract Counterparty pending resolution of the dispute by the Bankruptcy Court, Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors and their estates shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Contracts.

18.     No Default.  Subject to the terms hereof with respect to the Cure Costs, all defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date have been cured or shall promptly be cured by the Debtors in accordance with the terms hereof such that Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assigned Contract prior to the Closing Date, except to the extent expressly provided in the Agreement, except for Purchaser's payment of the Cure Costs. Each party to an Assigned Contract is forever barred, estopped and permanently enjoined from asserting against Purchaser or its property or affiliates, or successors and assigns, any breach or default under any Assigned Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or

any other matter arising prior to the Closing Date for such Assigned Contract or with regard to the assumption and assignment therefore pursuant to the Agreement or this Sale Order. Upon the payment of the applicable Cure Cost, if any, the Assumed Contracts will remain in full force and effect, and no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

19. <u>Adequate Assurance Provided</u>. The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Assumed Contracts based on Purchaser's evidence of its financial condition and wherewithal and without any further action by Purchaser, including but not limited to any other or further deposit. Pursuant to section 365(f) of the Bankruptcy Code, Purchaser has provided adequate assurance of future performance of the obligations under the Assumed Contracts.

20. <u>No Fees</u>. There shall be no rent accelerations, assignment fees, increases or any other fees charged to Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts. The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Assumed Contracts.

21. <u>Injunction</u>. Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, other than the right to payment of the Cure Costs, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or Purchaser any assignment fee, default, breach or claim or pecuniary loss arising under or related to the Assumed Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

<u>**Other Provisions**</u>

22. <u>No Purchaser Liability.</u> Except for the liabilities defined explicitly in the Agreement and specifically assumed by Purchaser pursuant to the Agreement, including any

Permitted Encumbrances, Purchaser shall have no liability or responsibility whatsoever for any liability or other obligation of the Debtors arising under or related to the Debtors, their assets or the Transferred Assets. Purchaser is acquiring the Transferred Assets free and clear of the Excluded Assets and Excluded Liabilities, as defined in the Agreement. All Persons holding interests of any kind in any Excluded Liabilities or Excluded Assets are barred, estopped, and permanently enjoined from commencing, continuing or otherwise pursuing or enforcing any remedy, Claim (as defined in section 101(5) of the Bankruptcy Code), cause of action, interest or encumbrance against Purchaser, its successors, assigns or affiliates, or the Transferred Assets related to such Excluded Liability or Excluded Asset. Purchaser shall (i) not be liable for any Claims or causes of action against the Debtors or any of their agents, representatives or affiliates and (ii) have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors.

23.    <u>Sale Order Binding on Third Parties.</u>  This Sale Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Transferred Assets. All Encumbrances except for the Permitted Encumbrances against the Transferred Assets as of the date of this Sale Order shall forthwith, upon the occurrence of the Closing on the Closing Date with respect to any Transferred Assets, be removed and stricken as against such Transferred Assets, without further order of the Court or act of any party, and such Encumbrances shall attach to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in

which they allege such an Encumbrance. Upon the Closing Date, the entities listed above in this paragraph are authorized and specially directed to strike all such recorded liens or claims against the Transferred Assets as provided for herein from their records, official and otherwise (including those asserted by any secured lender). Each and every federal, state, and local governmental agency, unit or department is hereby directed to accept this Sale Order as sole and sufficient evidence of the transfer of title of the Transferred Assets and such agency or department may rely upon this Sale Order in connection with the Asset Sale.

24.     <u>No Liens or Collection Efforts</u>. After the Closing Date, no Person, including without limitation, any federal, state or local taxing authority, may (a) attach or perfect a lien or security interest against any of the Transferred Assets on account of, or (b) collect or attempt to collect from Purchaser or any of its affiliates, any tax or other amount alleged to be owing by the Debtor (i) for any period commencing before and concluding prior to or after the Closing, or (ii) assessed prior to and payable after the Closing Date, except as otherwise specifically provided in the Agreement.

25.     <u>Injunction</u>. Effective upon the Closing Date and except (i) as otherwise provided by stipulations filed with or announced to this Court with respect to a specific matter, (ii) with respect to the Permitted Encumbrances, or (iii) as otherwise explicitly provided in the Agreement, all Persons are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against Purchaser, its successors and assigns, or the Transferred Assets, with respect to any (a) Encumbrance arising under, out of, in connection with or in any way relating to the Debtors, Purchaser, the Transferred Assets, or the operation of the Transferred Assets prior to the Closing, or (b) successor liability, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding against Purchaser and its successors or assigns, or the Transferred Assets; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Purchaser and its successors or assigns, or the Transferred Assets; (iii) creating,

perfecting or enforcing any Encumbrance against Purchaser and its successors or assigns, or the Transferred Assets; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due Purchaser or its successors or assigns; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to issue or renew any license, permit or authorization to operate any of the Transferred Assets or conduct any of the businesses operated with the Transferred Assets. For the avoidance of doubt, nothing contained herein shall preclude Virgo Service Company LLC, as administrative agent and collateral agent under the loan documents relating to the Virgo Indebtedness, from enforcing its rights in connection with the Virgo Security Interest and Virgo Indebtedness.

26. <u>Consideration Provided</u>. The consideration provided by Purchaser for the Transferred Assets under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code. Each and every Person is hereby barred, estopped, and permanently enjoined from commencing or continuing any action against Purchaser seeking relief under section 363(n) of the Bankruptcy Code.

27. <u>Good Faith</u>. The Debtors have undertaken the Asset Sale in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Additionally, the transactions contemplated by the Agreement are undertaken by Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Sale shall not affect the validity of the Asset Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such Asset Sale are duly stayed pending such appeal. Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and granted, the full protections of section 363(m) of the Bankruptcy Code.

28. <u>Plan Not to Conflict</u>. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Bankruptcy Case, (b) any subsequent chapter 7 case into which this Bankruptcy Case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.

29. <u>Effective Immediately</u>. The provisions of Bankruptcy Rules 6004(h), 6006(d) and 7062 imposing any stay on the effectiveness of this Sale Order, to the extent applicable, are hereby waived. The Debtors and Purchaser may consummate the Agreement at any time after entry of this Sale Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Asset Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest. Pursuant to Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Debtors and Purchaser are authorized to close the Asset Sale immediately upon entry of this Sale Order.

30. <u>Bulk Sales Law</u>. No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Asset Sale.

31. <u>Agreement Approved in Entirety</u>. The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

32. <u>Modifications to Agreement</u>. The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

1928438.1

33.  Standing.  The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

34.  Authorization to Effect Order.  The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

35.  Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified, lifted and annulled with respect to the Debtors and Purchaser to the extent necessary, without further order of this Court, to (i) allow Purchaser to deliver any notice provided for in the Agreement, and (ii) allow Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

36.  No Other Bids.  No further bids or offers for the Transferred Assets shall be considered or accepted by the Debtors after the date hereof unless the sale to Purchaser is not consummated or otherwise does not occur in accordance with the Agreement or its related documents.

37.  Retention of Jurisdiction.  This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Asset Sale.

38.  Order to Govern.  To the extent that this Sale Order is inconsistent with any prior order entered or pleading filed in the Bankruptcy Case, the terms of this Sale Order shall govern. To the extent there are any inconsistencies between the terms of this Sale Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

1928438.1

## Resolution of Objections

39. <u>GE Fleet</u>. Upon entry of this Order, that certain Master Lease Agreement, dated June 10, 2003, by and between GE Capital Fleet Services and Palm Harbor Homes, Inc. shall be assumed and assigned, pursuant to section 365 of the Bankruptcy Code, to Standard Casualty Company; provided that, Standard Casualty Company's obligations under the Master Lease Agreement shall be limited to obligations with respect to only the following three scheduled vehicles: (i) 2007 Toyota, Vin # 4T1BK46K47U029938; (ii) 2008 Chrysler, Vin # 2A8HR44H28R623954; and (iii) 2008 Toyota, Vin # 4T1BK46K18U064292.

40. <u>Maricopa County Treasurer</u>. The Maricopa County Treasurer falls within one or more of the subsections of 363 (f) and is adequately protected by having the liens and claims, including accrued and accruing statutory interest, asserted in its proofs of claims and in its objection to the sale, in each instance against the Debtors, their estates or any of the Transferred Assets, attach to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which it alleges such liens and claims.

41. <u>Objecting Texas Tax Authorities</u>. The Objecting Texas Tax Authorities, as defined in the Final DIP Financing Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, and (II) Granting Liens and Superpriority Claims (the "<u>Final DIP Order</u>") entered by the Court on January 6, 2011, fall within one or more of the subsections of 363(f) and are adequately protected by having the liens and claims, if any, that they assert against the Debtors, their estates or any of the Transferred Assets attach to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which they allege such liens and claims. For the avoidance of doubt, nothing in this Order shall

25

be deemed to amend or supersede paragraph 12 of the Final DIP Order titled Resolution of Texas Tax Authority Objection.

42.     <u>Travis County</u>. Travis County, City of Austin, Central Health Administration, Travis County Emergency Services District Number 2, Austin Community College, Austin Independent School District, Pflugerville Independent School District, and Del Valle Independent School District ("<u>Travis County</u>") falls within one or more of the subsections of 363(f) and are adequately protected by having the liens and claims, if any, that they assert against the Debtors, their estates or any of the Transferred Assets attach to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which they allege such liens and claims."

43.     <u>Wells Fargo Leasing</u>. Wells Fargo Financial Leasing Manufacturer Services Group ("<u>Wells Fargo Leasing</u>") has asserted a claim that is secured by a lien on a Caterpillar P6000D Forklift. Wells Fargo Leasing falls within one or more of the subsections of 363 (f) and is adequately protected by having the liens and claims asserted by it, in each instance against the Debtors, their estates or any of the Transferred Assets, attach to the cash proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which it alleges such liens and claims.

44.     <u>GNMA, DOD, PBS&J and Peter Brown Construction</u>. Except as provided in this paragraph 44, the Debtors represent that they do not have any licenses, authorizations, permits, leases, contracts or agreements with the Federal government. Notwithstanding any provision in the Sale Motion, the Sale Order or implementing Sale documents (collectively, the "<u>Documents</u>"): (1) the sale, transfer, change in ownership or control, including but not limited to the sale of any outstanding shares of capital stock, of CountryPlace Acceptance Corp., shall require the Purchaser to cause such corporate guarantees to be put in place as may be required by

1928438.1

and to obtain the approval of the Government National Mortgage Association ("GNMA"), any assumption and assignment of the contracts between CountryPlace Mortgage, Ltd., and GNMA shall require the approval of GNMA, and nothing contained in the Documents shall affect, limit or prejudice the rights, titles, powers and privileges of GNMA; (2) any assumption or assignment of the subcontractor agreement between PBS&J Constructors, Inc., and Peter Brown Construction, Inc., (the "PB Contract") shall be completed in full compliance with the PB Contract terms, all applicable non-bankruptcy law, regulations, statutes and federal guides and nothing shall affect, limit or prejudice the rights, titles, powers and privileges of the Department of Defense ("DOD"); (3) nothing shall be determined to set cure amounts with respect to any GNMA interests or the PB Contract; and (4) nothing shall affect the offset and recoupment rights of GNMA, the DOD, PBS&J Constructors, Inc., and Peter Brown Construction, Inc. and such rights are expressly preserved.

45.     Department of Justice. Nothing in this Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order.

46.     Ocasio. Notwithstanding anything in this Order to the contrary, the Transferred Assets shall not include the home situated on the real property located at 2552 Parma Street, Sarasota, FL 34231.

47.     EMS ISD. Eagle Mountain-Saginaw ISD, City of Azle, Mansfield ISD, Crowley ISD, Princeton ISD, Alvarado ISD, Venus ISD, Joshua ISD, City of Burleson, Burleson ISD, Johnson County, City of Tomball, Klein ISD, Crosby ISD, Chambers County Tax Office, Clear Creek ISD, Magnolia ISD, Clear Creek ISD, Tomball ISD, City of West Tawakoni, Greenville ISD, Tyler ISD, Potter County Tax Office, Boerne ISD, Hidalgo County, Hidalgo County Drainage District #1, and Kerr County (collectively, "EMS ISD") fall within one or more of the subsections of 363(f) and are adequately protected by having the liens and claims, if any, that they assert against the Debtors, their estates or any of the Transferred Assets attach to the cash

proceeds to be received by the Debtors under the Agreement, subject to the same priority and validity (and defenses and objections of the Debtors and other parties in interest, if any, with respect thereto) as are presently existing against the Transferred Assets in which they allege such liens and claims.

Dated: _____3/4_____, 2011
       Wilmington, Delaware

_____
United States Bankruptcy Judge

28