IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., et al.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Objection Deadline: April 12, 2011 at 4:00 p.m. (ET) |
| | ) | Hearing Date: April 19, 2011 at 2:00 p.m. (ET) |

**MOTION FOR AN ORDER, PURSUANT TO §§ 105 AND 363 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (II) GRANTING RELATED RELIEF**

Palm Harbor Homes, Inc. ("Palm Harbor") and its related debtors (collectively, the "Debtors"), as debtors and debtors in possession in the above-captioned cases, hereby file their Motion for an Order, Pursuant to §§ 105 and 363 of the Bankruptcy Code, (I) Authorizing the Sale of Property Free and Clear of Liens, Claims, Encumbrances and Other Interests, and (II) Granting Related Relief (the "Motion"). In support hereof, the Debtors respectfully state:

## I.
## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are §§ 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc. (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: 15305 Dallas Parkway, Suite 700, Addison, Texas 75001.

1933919.1

## II.
## GENERAL BACKGROUND

3.  On November 29, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court") commencing the above-captioned chapter 11 cases.

4.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of Brian E. Cejka in Support of Chapter 11 Petitions and First Day Pleadings, filed on the Petition Date and fully incorporated herein by reference.

5.  The Debtors have continued in possession of their respective properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  No trustee has been appointed in these chapter 11 cases. On December 14, 2010, the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). On January 25, 2011, the Court appointed Morris-Anderson & Associates Ltd. as the fee examiner.

7.  An auction of substantially all of the Debtors' assets occurred on March 1, 2011, with Palm Harbor Homes, Inc., a Delaware corporation, submitting the highest bid.

## III.
## BACKGROUND OF PROPOSED SALE

8.  The Debtors own two parcels of real property, one located in Linwood, NC (the "NC Facility") and another located in Florence, SC (the "SC Facility" and with the NC Facility, collectively the "Facilities").

9. The Facilities are manufactured home sales centers, with adjacent acreage upon which inventory is stored, marketed, and ultimately sold. The Debtors currently lease the Facilities to Select Homes, Inc. (the "Buyer").

10. PHH and the Buyer have entered into certain Contact of Sale (as amended, the "Sale Agreement"), dated as of February 28, 2011, by which the Buyer has agreed to purchase the Facilities (the "Sale") from PHH for $253,890 (the "Purchase Price"). See Exhibit A, §2.1. A true and correct copy of the Sale Agreement is attached hereto as Exhibit A.

11. The North Carolina Department of Transportation ("NCDOT") has condemned a portion of the NC Facility in order to facilitate the expansion of a highway. As compensation for the condemnation, NCDOT has offered PHH $46,000 (the "Compensation"). PHH is challenging the adequacy of the Compensation through judicial proceedings, seeking to increase the amount of the Compensation. Under the Sale Agreement, PHH has the sole discretion to determine whether the proposed Compensation is adequate, or whether to seek additional Compensation. Pursuant to the Sale Agreement, PHH and the Buyer will equally divide, after expenses, the ultimate Compensation amount that PHH receives from the NCDOT. See Exhibit A, §9.1.

## IV.
## RELIEF REQUESTED

12. By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014, authorizing the Sale of the Facilities to the Buyer and granting other related relief.

# V.
# BASIS FOR THE RELIEF REQUESTED

A. **The Sale of the Facilities Should Be Approved**

13. Section 363(b)(1) of the Bankruptcy Code provides that "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> . . . the notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1).

14. To approve the use, sale, or lease of property outside the ordinary course of business, this Court must find "some articulated business justification" for the proposed action. See In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 145-47 (3rd. Cir. 1986) (implicitly adopting the "articulated business justification" and good faith tests of Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2nd Cir. 1983)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in Abbotts Dairies); Titusville Country Club v. PennBank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc., 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

15. Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. See Lionel, 722 F.2d at 1071 (setting forth the "sound business purpose" test); Abbotts Dairies, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); Delaware & Hudson Ry., 124 B.R. at 176 (stating that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

16. This fundamental analysis does not change if the proposed sale is private, rather than public. See, e.g., In re Ancor Exploration Co., 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) (stating that "the bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under [section] 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." In re WPRV-TV, Inc., 143 B.R. 315, 319 (D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1992); accord, In re Canyon Partnership, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). Here, the Sale satisfies the foregoing requirements and should be approved.

17. First, there is more than ample business justification to sell the Facilities through a private sale. The Debtors do not currently use the Facilities to conduct their businesses. The Debtors, in their business judgment, have determined that the Facilities are not necessary for the

continued operation of the Debtors' business. They thus desire to liquidate the Facilities in order to generate cash, which will inure to the benefit of the Debtors and their estates and creditors.

18. Second, the Debtors believe that the Purchase Price represents a fair and reasonable price for the Facilities. The Buyer currently leases and occupies the Facilities, and consequently is the most natural purchaser of the Facilities. Unlike a third-party purchaser, the Buyer will not incur any transaction costs in moving into the Facilities, and thus can offer the highest price for the Facilities.

19. Third, the Sale and the Purchase Price are the product of good faith, arms'-length negotiations between the Debtors and the Buyer. The Buyer is not otherwise affiliated with the Debtors or their officers and directors.

20. Fourth, as detailed in Section VI below, the Debtors have provided adequate notice of the Sale to all parties entitled thereto.

21. Finally, in the Debtors' informed business judgment, there is very little, if anything, to be gained by conducting a formal auction of the Facilities. The Buyer currently leases and occupies the Facilities and is thus the natural purchaser of the Facilities, and is likely to be willing to pay a higher purchase price than other third-party buyers. Further, because the Debtors have a pre-existing relationship with the Buyer, the Debtors were able to complete the Sale without retaining a broker and incurring the attendant broker fees, thus maximizing the net sales proceeds to the Debtors' estates. It is the Debtors' business judgment that the proposed Sale is in the best interests of the Debtors' estates and creditors inasmuch as it represents a fair offer for the Facilities and will infuse value into the Debtors' estates. Even if there were other entities willing and able to increase the anticipated offers for the Facilities, which the Debtors believe to be unlikely, the delay, uncertainty and added administrative expenses attendant to the

auction process would be unfavorable to the Debtors, their estates, and their creditors. For these reasons, the Debtors should not be required to conduct a public sale or to establish bidding procedures, but instead the Debtors request that the Court approve the private Sale of the Facilities to the Buyer.

### B. The Sale of the Facilities is Proposed in "Good Faith" under Section 363(m) of the Bankruptcy Code

22. The Debtors additionally request that this Court find that the Buyer is entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

23. Section 363(m) of the Bankruptcy Code provides in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

24. Section 363(m) of the Bankruptcy Code thus protects a purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" Abbotts Dairies, 788 F.2d at 147. To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." Id. (citing In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)).

25. The Sale was negotiated at arms'-length by the Debtors and the Buyer. The Debtors and the Buyer are not affiliated or related, and have none of the same personnel. The

Debtors therefore submit that the Sale resulted from good faith, arms'-length negotiations, in which the parties at all times acted in good faith under the standards set forth by the Third Circuit and reached a Purchase Price that represents fair consideration for the Facilities. Accordingly, the Debtors request that this Court make a factual determination that the Buyer will purchase the Facilities in "good faith," as defined in section 363(m) of the Bankruptcy Code.

### C. The Sale Should be Free and Clear of Liens, Claims, and Encumbrances

26. Under section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of a lien, claim or encumbrance if:

(i) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(ii) the lienholder or claimholder consents;

(iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv) such interest is in bona fide dispute; or

(v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27. The Debtors' prepetition lender, Textron Financial Corporation ("Textron"), previously recorded liens on the Facilities (collectively, the "Textron Liens"), evidenced by a deed of trust (recorded in Book 1964 at Page 1133) and a UCC financing statement (recorded in Book 1864 at Page 1154) pertaining to the NC Facility and a mortgage (recorded on March 19, 2010 in Book B293 at page 698) and a UCC financing statement (recorded on March 19, 2010 in Book B293 at page 719) pertaining to the SC Facility.

28. On January 6, 2011, this Court entered the Final DIP Financing Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9104 (I)

- 8 -

1933919.1

Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, and (II) Granting Liens and Superpriority Claims (the "DIP Order"). See Docket No. 184. Pursuant to the DIP Order, the Debtors' prepetition indebtedness to Textron was satisfied. Accordingly, subject to the exception discussed below, Textron has agreed to release the Textron Liens and consent to the sale of the Facilities free and clear of the Textron Liens.

29. Paragraph 8 of the DIP Order provides that the Committee has the right to challenge Textron's liens and claims (a "Challenge"). See Docket No. 184, ¶ 8. Currently, through a stipulation approved by the Court, the Committee has until March 31, 2011 to file a Challenge. In the event that the Committee files, and succeeds in, a Challenge and payment to Textron in satisfaction of the Debtors' prepetition indebtedness is avoided, the Textron Liens shall attach to the proceeds of the Sale of the Facilities with the same priority and validity as they previously existed against the Facilities.

30. The Debtors do not believe that there are any liens, claims, or encumbrances on the Facilities besides the Textron Liens. Nevertheless, in an abundance of caution, the Debtors seek authority sell the Facilities free and clear of any liens, claims or encumbrances. Satisfaction of any of the requirements enumerated in section 363 suffices to warrant the Debtors' sale of the Facilities free and clear of liens, claims and encumbrances. See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) is written in the disjunctive; therefore, a court may approve a sale "free and clear," provided that at least one of the subsections is met).

31. To the extent that any lien, claim or encumbrance exists, the Debtors seek to sell the Facilities free and clear of any such lien, claim, or encumbrance. As no such liens, claims, or

- 9 -

1933919.1

encumbrances have been asserted or recorded against the Facilities, South Carolina and North Carolina law permits the sale of the property free and clear of them. 11 U.S.C. § 363(f)(1).

32. Further, to the extent that any holder of an unrecorded encumbrance on the Facilities subsequently asserts the encumbrance, the Debtors submit that any such lien, claim or encumbrance will be adequately protected by attachment to the net proceeds of the Sale with the same force, effect and priority that such lien, claim or encumbrance, if any, has on the Facilities.[2] Accordingly, the Debtors respectfully submit that the sale of the Facilities free and clear of liens, claims and encumbrances satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code and should be approved.

### D. Relief from the Ten-Day Waiting Period under Bankruptcy Rule 6004(h) is Appropriate

33. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The Debtors request that the Order approving the Sale be effective immediately upon its entry by providing that the ten-day stay under Bankruptcy Rule 6004(h) is waived.

34. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten-day stay period, at least one leading commentator suggests that the ten-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶ 6004.10. Furthermore,

---

[2] The Debtors reserve all rights to challenge any liens, claims, or encumbrances on any basis.

Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id.

35. Since promptly closing the Sale is of critical importance to the Debtors' efforts to minimize costs and to maximize the value to their estates, the Debtors request that the Court waive the ten-day stay period under Bankruptcy Rule 6004(h).

## VI.
## NOTICE

36. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) the Office of the United States Attorney for the District of Delaware; (iv) the Securities and Exchange Commission; (v) counsel to Textron, the Debtors' prepetition lender; (vi) counsel to the DIP Lender ; (vii) counsel to the Buyer; (viii) counsel to the Committee; and (ix) all parties that have requested notice. In light of the nature of the relief requested, the Debtors submit that no further notice is necessary.

## VII.
## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the proposed order, substantially in the form attached hereto as Exhibit B, (i) approving the Sale of the Facilities to the Buyer; (ii) waiving the ten day waiting period established by Fed. R. Bankr. P. 6004(h); and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
March 25, 2011

Respectfully submitted,

LOCKE LORD BISSELL & LIDDELL LLP
David W. Wirt (Admitted Pro Hac Vice)
Aaron C. Smith (Admitted Pro Hac Vice)
Courtney E. Barr (Admitted Pro Hac Vice)
111 S. Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0700
Fax: (312) 443-0336

-and-

POLSINELLI SHUGHART PC

/s/ *Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Fax: (302) 252-0921

COUNSEL FOR THE DEBTORS

1933919.1