# EXHIBIT A

**CONTRACT OF SALE**

THIS CONTRACT OF SALE (this "Contract") is made and entered into as of February 28, 2011 (the "Effective Date"), by and between PALM HARBOR HOMES, INC., a Florida corporation ("Seller"), and BILLY E. LOFLIN, an individual ("Purchaser").

**ARTICLE I.**

**SALE OF THE PROPERTY**

1.1     Subject Property.  For the consideration and upon and subject to the terms, provisions and conditions of this Contract, Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, all of Seller's right, title and interest in and to that certain parcel of real property which is more fully described on Exhibit A attached hereto (the "Land") and all of Seller's right, title and interest in and to all improvements, buildings and fixtures located on the Land (collectively, the "Improvements") and all rights, privileges and appurtenances (the "Appurtenances") located on or pertaining to the Land (the Land, Improvements and Appurtenances being collectively referred to herein as the "Property").  The Property is subject to and encumbered by the Permitted Exceptions (as hereinafter defined) applicable to the Property.

**ARTICLE II.**

**PURCHASE PRICE**

2.1     Purchase Price.  The total Purchase Price (herein so called) to be paid by Purchaser to Seller for the Property is Two Hundred Fifty-Three Thousand Eight Hundred Ninety and No/100 Dollars ($253,890.00).

**ARTICLE III.**

**EARNEST MONEY DEPOSIT**

3.1     Earnest Money Deposit.  Not later than two (2) days after the Effective Date, Purchaser shall deliver to the title company shown in Section 12.1 hereof (the "Title Company"), $0.00     (the "Earnest Money Deposit") in Current Funds, to be held by the Title Company in escrow to be applied or disposed of by the Title Company as is provided in this Contract.  In the event Purchaser fails to deposit the Earnest Money Deposit with the Title Company as herein provided, Seller may, at its option, terminate this Contract, in which event neither Seller nor Purchaser shall have any further rights, duties or obligations hereunder except for provisions of this Contract which expressly survive the termination of this Contract.  As used in this Contract, the term "Current Funds" shall mean wire transfers, certified funds or a cashier's check in a form acceptable to the Title Company that would permit the Title Company to immediately disburse such funds.

3.2     Application and Interest.  If the purchase and sale hereunder is consummated, then the Earnest Money Deposit shall be applied to the Purchase Price at Closing to reduce the amount required under Section 8.2(b)(i) hereof.  In all other events, the Earnest Money Deposit shall be disposed of by the Title Company as provided in this Contract.  The Title Company shall invest the Earnest Money Deposit in a federally insured interest-bearing account for the benefit of Purchaser at a bank deemed appropriate by the Title Company.  All interest earned on the Earnest Money Deposit is part of the Earnest Money Deposit, to be applied or disposed of in the same manner as the Earnest Money Deposit under this Contract.

3.3     <u>Demand for Earnest Money Deposit</u>. If for any reason the Closing does not occur and either party makes a written demand upon the Title Company for payment of the Earnest Money Deposit, the Title Company shall give written notice to the other party of such demand. If the Title Company does not receive a written objection from the other party to the proposed payment within ten (10) business days after the giving of such notice, the Title Company is hereby authorized to make such payment. If the Title Company does receive such written objection within such ten (10) business day period or if for any other reason the Title Company in good faith shall elect not to make such payment, the Title Company shall continue to hold such amount until otherwise directed by written instructions from both parties to this Contract or a final judgment of a court of competent jurisdiction which is not subject to further appeal. The parties acknowledge that the Title Company is acting solely as a stakeholder at their request and for their convenience, that the Title Company shall not be deemed to be the agent of either of the parties, except as expressly set forth herein, and that the Title Company shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or of any escrow agreement or involving gross negligence. The Title Company joins in the execution of this Contract solely for the purpose of acknowledging receipt of the Earnest Money Deposit and its agreement to hold the same pursuant to the terms hereof.

## ARTICLE IV.

## TITLE AND SURVEY

4.1     <u>Title and Survey</u>. It shall be Purchaser's sole obligation and cost to obtain title commitments and title insurance on the Property as well as any surveys they may deem necessary on the Property. All matters of record as well as any title encumbrances, exceptions or other matters which are set forth in any title commitment, exception document, title policy or survey shall be referred to herein as the "Permitted Exceptions"). The Permitted Exceptions shall also include the following: (a) taxes and assessments for the year in which Closing occurs and subsequent years; (b) liens and encumbrances arising after the date hereof to which Purchaser consents in writing; (c) building, zoning and subdivision laws and ordinances, and local, state and federal laws, rules and regulations; and (d) any title exceptions arising out of the acts of Purchaser.

## ARTICLE V.

## INSPECTION BY PURCHASER

5.1     <u>Inspection Rights</u>. Purchaser has previously examined the Property and conducted its feasibility study thereof. Seller has and will allow Purchaser and Purchaser's agents access to the Property during reasonable hours to conduct surveys, soil and engineering, hazardous waste, marketing, feasibility, zoning and other studies or tests and to otherwise determine the feasibility of the Property for Purchaser's intended use. Notwithstanding the foregoing, (a) the costs and expenses of Purchaser's investigation shall be borne solely by Purchaser, (b) Purchaser shall restore the Property to the condition which existed prior to Purchaser's entry thereon and investigation thereof to the extent the condition of the Property was affected by or as a result of the actions of Purchaser or its agents, contractors or representatives, (c) Purchaser shall not interfere with, interrupt or disrupt the operation of Seller's business on the Property, (d) Purchaser shall not permit any construction, mechanic's or materialman's liens or any other liens to attach to the Property or any portion thereof by reason of the performance of any work or the purchase of any materials by Purchaser or any other party in connection with any studies or tests conducted pursuant to this Section 5.1, (e) Purchaser shall take all reasonable actions and implement all protections necessary to ensure that all actions taken in connection with the investigations and inspections of the Property, and all equipment, materials and substances generated, used or brought onto the Property pose no material threat to the safety of persons or the environment and cause no damage to the Property or other property of Seller or other persons, and (f) Purchaser shall give notice to Seller a reasonable time prior to entry onto the Property and shall permit Seller to have a representative present

during all investigations and inspections conducted with respect to the Property. This Contract, the terms and conditions of this Contract, and all information made available by Seller to Purchaser in accordance with this Contract or obtained by Purchaser in the course of its investigations shall be treated as confidential information by Purchaser, and, prior to the purchase of the Property by Purchaser, Purchaser shall prevent its agents and employees from divulging such information to any third parties except as reasonably necessary to third parties engaged by Purchaser for the limited purpose of analyzing and investigating such information for the purpose of consummating the transaction contemplated by this Contract, including Purchaser's attorneys and representatives, prospective lenders and engineers. PURCHASER SHALL INDEMNIFY, DEFEND AND HOLD SELLER HARMLESS FOR, FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITIES, CAUSES OF ACTION, DAMAGES, LIENS, LOSSES AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES AND COSTS) INCIDENT TO, RESULTING FROM OR IN ANY WAY ARISING OUT OF ANY OF PURCHASER'S OR ITS AGENTS', CONTRACTORS' OR REPRESENTATIVES' ACTIVITIES ON THE PROPERTY (INCLUDING, WITHOUT LIMITATION, ANY TESTS OR INSPECTIONS CONDUCTED BY PURCHASER OR ITS AGENTS, CONTRACTORS OR REPRESENTATIVES ON THE PROPERTY) OR FROM PURCHASER'S BREACH OF ITS OBLIGATIONS OR AGREEMENTS UNDER THIS ARTICLE V. PURCHASER'S INDEMNITY OBLIGATIONS CONTAINED IN THIS SECTION 5.1 SHALL SURVIVE THE CLOSING AND NOT BE MERGED THEREIN AND SHALL ALSO SURVIVE ANY TERMINATION OF THIS CONTRACT. Copies of any and all reports which Purchaser obtains pursuant to this Section 5.1 shall be promptly provided to Seller.

5.2    Approval of Inspections. Purchaser has determined that, subject to the cure of any title objections timely and properly raised in accordance with Article IV of the Contract, the Property is satisfactory to Purchaser in all respects and Purchaser may not terminate this Contract based upon any objection to the condition of the Property.

## ARTICLE VI.

## REPRESENTATIONS AND WARRANTIES; DISCLAIMERS AND WAIVERS

6.1    Representations and Warranties of Purchaser. Purchaser represents and warrants to Seller as of the Effective Date and as of the Closing Date, as applicable, that (a) Purchaser has the full right, power and authority to enter into this Contract and to consummate the transactions contemplated herein; and (b) this Contract constitutes a valid and legally binding obligation of Purchaser, enforceable in accordance with its terms.

6.2    Representations and Warranties of Seller. Seller represents and warrants to Purchaser as of the Effective Date and as of the Closing Date, as applicable that (a) Seller is a corporation duly organized and validly existing under the laws of the State of Florida; (b) Seller has or will have at Closing the full right, power and authority to enter into this Contract and to consummate the transactions contemplated herein; and (c) this Contract constitutes a valid and legally binding obligation of Seller, enforceable in accordance with its terms.

6.3    NO ADDITIONAL REPRESENTATIONS OR WARRANTIES OF SELLER. PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY SPECIFIED IN SECTION 6.2 OF THIS CONTRACT OR THE SPECIAL WARRANTY DEED TO BE DELIVERED AT CLOSING, SELLER HAS NOT MADE, AND SELLER HEREBY SPECIFICALLY DISCLAIMS, ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, OR CONCERNING, (a) THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON; (b) THE EXISTENCE,

NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE, RIGHT TO POSSESSION OR USE, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHER MATTER AFFECTING TITLE TO THE PROPERTY; OR (c) WHETHER THE USE OR OPERATION OF THE PROPERTY COMPLIES WITH ANY AND ALL LAWS, ORDINANCES OR REGULATIONS OF ANY GOVERNMENT OR OTHER REGULATORY BODY. PURCHASER AGREES TO ACCEPT THE PROPERTY AND ACKNOWLEDGES THAT THE SALE OF THE PROPERTY AS PROVIDED FOR HEREIN IS MADE BY SELLER, ON AN "AS IS, WHERE IS, AND WITH ALL FAULTS" BASIS. PURCHASER EXPRESSLY ACKNOWLEDGES THAT EXCEPT AS OTHERWISE EXPRESSLY SPECIFIED IN SECTION 6.2 OF THIS CONTRACT, IF ANY, AND EXCEPT FOR ANY WARRANTY OF TITLE CONTAINED IN THE SPECIAL WARRANTY DEED TO BE DELIVERED BY SELLER TO PURCHASER AT CLOSING, SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, WITH RESPECT TO THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE (OTHER THAN SELLER'S WARRANTY OF TITLE TO BE SET FORTH IN THE SPECIAL WARRANTY DEED), ZONING, TAX CONSEQUENCES, PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY.

FURTHER, AND WITHOUT IN ANY WAY LIMITING ANY OTHER PROVISION OF THIS CONTRACT, SELLER HAS NOT MADE AND WILL NOT MAKE ANY REPRESENTATION, WARRANTY OR GUARANTY, AND HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, WITH RESPECT TO THE PRESENCE OR DISPOSAL ON OR BENEATH THE PROPERTY (OR ANY PARCEL IN PROXIMITY THERETO) OF HAZARDOUS SUBSTANCES OR MATERIALS WHICH ARE CATEGORIZED AS HAZARDOUS OR TOXIC UNDER ANY LOCAL, STATE OR FEDERAL LAW, STATUTE, ORDINANCE, RULE OR REGULATION PERTAINING TO ENVIRONMENTAL OR SUBSTANCE REGULATION, CONTAMINATION, CLEANUP OR DISCLOSURE (INCLUDING, WITHOUT LIMITATION, ASBESTOS) AND SHALL HAVE NO LIABILITY TO PURCHASER THEREFOR. WITHOUT LIMITATION OF THE PRECEDING SENTENCE, SELLER SPECIFICALLY DISCLAIMS ANY REPRESENTATION, WARRANTY OR GUARANTY REGARDING THE ACCURACY OF ANY ENVIRONMENTAL REPORTS. BY ACCEPTANCE OF THIS CONTRACT AND THE SPECIAL WARRANTY DEED TO BE DELIVERED BY SELLER AT THE CLOSING, PURCHASER ACKNOWLEDGES THAT PURCHASER'S OPPORTUNITY FOR INSPECTION AND INVESTIGATION OF THE PROPERTY (AND OTHER PARCELS IN PROXIMITY THERETO) WILL BE ADEQUATE TO ENABLE PURCHASER TO MAKE PURCHASER'S OWN DETERMINATION WITH RESPECT TO THE PRESENCE OR DISPOSAL ON OR BENEATH THE PROPERTY (AND OTHER PARCELS IN PROXIMITY THERETO) OF SUCH HAZARDOUS SUBSTANCES OR MATERIALS, AND PURCHASER ACCEPTS THE RISK OF THE PRESENCE OR DISPOSAL OF ANY SUCH SUBSTANCES OR MATERIALS. PURCHASER AGREES THAT SHOULD ANY CLEANUP, REMEDIATION OR REMOVAL OF HAZARDOUS SUBSTANCES OR OTHER ENVIRONMENTAL CONDITIONS ON THE PROPERTY BE REQUIRED AFTER THE DATE OF CLOSING, SUCH CLEAN-UP, REMOVAL OR REMEDIATION SHALL BE THE RESPONSIBILITY OF AND SHALL BE PERFORMED AT THE SOLE COST AND EXPENSE OF PURCHASER.

PURCHASER, AND ANYONE CLAIMING, BY, THROUGH OR UNDER PURCHASER, HEREBY FULLY RELEASES, DISCHARGES, AND HOLDS HARMLESS SELLER, ITS

EMPLOYEES, OFFICERS, DIRECTORS, PARTNERS, REPRESENTATIVES AND AGENTS, AND THEIR RESPECTIVE PERSONAL REPRESENTATIVES, HEIRS, SUCCESSORS AND ASSIGNS FROM ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION OR CAUSE OF ACTION ARISING FROM OR RELATED TO ANY CONSTRUCTION DEFECTS, ERRORS, OMISSION, OR OTHER CONDITIONS AFFECTING THE PROPERTY; PROVIDED, THAT THIS SHALL NOT RELEASE SELLER FROM CLAIMS ARISING, IF ANY, AS A RESULT OF ANY WRITTEN REPRESENTATION OR WARRANTY OF SELLER BEING FALSE WHEN MADE. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT THIS RELEASE SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING, BUT NOT LIMITED TO, THOSE RELATING TO UNKNOWN AND SUSPECTED CLAIMS, DAMAGES AND CAUSES OF ACTION. THIS COVENANT RELEASING SELLER SHALL BE BINDING UPON PURCHASER, ITS PERSONAL REPRESENTATIVES, HEIRS, SUCCESSORS AND ASSIGNS.

THE PROVISIONS OF THIS SECTION 6.3 (INCLUDING, WITHOUT LIMITATION, THE WAIVER AND RELEASE OF CLAIMS CONTAINED HEREIN) SHALL SURVIVE THE CLOSING OR EARLIER TERMINATION OF THIS CONTRACT.

6.4     No Reliance on Documents.  Seller makes no representation or warranty as to the truth, accuracy or completeness of any materials, data or information delivered by Seller to Purchaser in connection with the transaction contemplated hereby.  Purchaser acknowledges and agrees that all materials, data and information delivered by Seller to Purchaser in connection with the transaction contemplated hereby are provided to Purchaser as a convenience only and that any reliance on or use of such materials, data or information by Purchaser shall be at the sole risk of Purchaser.

6.5     Survival of Representations and Warranties.  The representations and warranties of Seller and Purchaser set forth in this Article VI shall survive the Closing for a period of twelve (12) months subsequent to Closing, and any action brought upon a claim by Purchaser or Seller against the other party for breach of any representation or warranty contained in this Article VI must be brought, if at all, within twelve (12) months after Closing or such claim and action shall be forever barred.

6.6     Effect of Disclaimers.  Seller has informed and hereby does inform Purchaser that the compensation to be paid to Seller for the Property has been decreased to take into account that the Property is being sold subject to the provisions of this Article VI.

**ARTICLE VII.**

**CONDITIONS PRECEDENT TO PURCHASER'S AND
SELLER'S PERFORMANCE**

7.1     Conditions to Purchaser's Obligations.  Purchaser's obligation under this Contract to purchase the Property is subject to the fulfillment of each of the following conditions (any or all of which may be waived by Purchaser):

(a)     the representations and warranties of Seller contained herein shall be true, accurate and correct in all material respects as of the Closing Date; and

(b)     Seller shall have delivered all the documents and other items required pursuant to Section 8.2(a), and shall have performed, in all material respects, all other covenants, undertakings and obligations, and complied with all conditions required by this Contract to be performed or complied with by the Seller at or prior to the Closing.

7.2     <u>Conditions to Seller's Obligations</u>. Seller's obligation under this Contract to sell the Property to Purchaser is subject to the fulfillment of each of the following conditions (any or all of which may be waived by Seller):

        (a)     the representations and warranties of Purchaser contained herein shall be true, accurate and correct in all material respects as of the Closing Date;

        (b)     Purchaser shall have delivered the Purchase Price, and other funds required hereunder and all the documents and other items required pursuant to Section 8.2(b), and shall have performed, in all material respects, all other covenants, undertakings and obligations, and complied with all conditions required by this Contract to be performed or complied with by Purchaser at or prior to Closing; and

        (c)     Seller shall have received all necessary approvals of the bankruptcy court allowing the sale of the Property in connection with the terms of this Contract.

## ARTICLE VIII.

## CLOSING

8.1     <u>Closing Date</u>.

        (a)     <u>Time and Place</u>. Provided the terms and conditions set forth in this Contract have been fulfilled, the consummation of the purchase and sale of the Property (the "Closing") shall take place by delivery of documents to the office of the Title Company (it being contemplated that the Closing will occur by delivery of Closing documents into escrow with the Title Company) as soon as possible but in any event no later than 11:00 a.m., Central Standard Time, on March 8, 2011, or at such earlier date as agreed in writing by Purchaser and Seller (the "Closing Date").

        (b)     <u>Delivery of Documents in Escrow; Title Insurance</u>. The documents required hereunder to be delivered at Closing shall be delivered by Seller and Purchaser into escrow with the Title Company, which shall record and/or deliver all documents deposited into escrow hereunder upon unconditional payment of the Purchase Price to the Title Company for delivery to Seller and shall remit the Purchase Price to Seller simultaneously with the recordation and/or delivery of all documents deposited into escrow hereunder.

8.2     <u>Items to be Delivered at the Closing</u>.

        (a)     <u>Seller</u>. At the Closing, Seller shall deliver, or cause to be delivered to the Title Company, for recording or delivery to the Purchaser, as applicable, each of the following items with respect to the Property:

              (i)     A Special Warranty Deed (the "Deed") in the form attached hereto as <u>Exhibit B</u>, subject to the Permitted Exceptions, duly executed and acknowledged by Seller;

              (ii)     A Bill of Sale, dated the Closing Date, in the form of <u>Exhibit C</u> hereto (the "Bill of Sale"), duly executed by Seller;

              (iii)     A Non-Foreign Affidavit for purposes of compliance with Section 1445 (b)(2) of the Internal Revenue Code of 1986, as amended, and the regulations adopted thereunder in the form attached hereto as <u>Exhibit D</u>;

(iv)     Other items reasonably requested by the Title Company for the sale of the Property in accordance with this Contract or for administrative requirements for consummating the Closing;

(v)     If the Seller is a corporation, partnership or other entity, a certificate from an officer of Seller, or the general partner of Seller, evidencing that the person or persons executing this Contract and the closing documents on behalf of Seller have full right, power and authority to do so, and attaching the articles of incorporation and bylaws (or other appropriate organizational documents) of Seller and appropriate resolutions authorizing this Contract and the transactions contemplated hereunder; and

(vi)     A termination of those certain Lease Agreements executed by and between Seller, as landlord, and Purchaser, as tenant, relating to the Property (collectively, the "Termination Agreements").

(b)     <u>Purchaser</u>.  At the Closing, Purchaser shall deliver or cause to be delivered, to the Title Company, for recording or delivery to Seller or perform, as applicable, each of the following items with respect to the Property:

(i)     The Purchase Price in Current Funds;

(ii)     Such additional funds in Current Funds, as may be necessary to cover Purchaser's share of the closing costs and prorations hereunder;

(iii)     If the Purchaser is a corporation, partnership or other entity, a certificate from an officer of Purchaser, or the general partner of Purchaser, evidencing that the person or persons executing this Contract and the closing documents on behalf of Purchaser have full right, power and authority to do so, and attaching the articles of incorporation and bylaws (or other appropriate organizational documents) of Purchaser and appropriate resolutions authorizing this Contract and the transactions contemplated hereunder;

(iv)     Other items reasonably requested by the Title Company for the sale of the Property in accordance with this Contract or for administrative requirements for consummating the Closing; and

(v)     The Termination Agreements.

8.3     <u>Costs of Closing</u>.  Seller and Purchaser shall each be responsible for payment of one-half of the escrow fees of the Title Company.  Purchaser shall pay any and all costs relating to the issuance of a title policy in the amount of the Purchase Price with basic coverage and any and all premiums and other charges for any extended coverage, the modification of the survey exception, a survey and any endorsements to such title policy shall be borne by Purchaser.  Any and all recording costs or fees relating to the transfer of the Property from Seller to Purchaser including, but not limited to, tax statements or certificates, preparation of the Special Warranty Deed and Bill of Sale, shall be borne and paid exclusively by Purchaser.  Any and all costs and expenses (including, without limitation, recording costs, loan fees, attorneys' fees, documentary or stamp taxes, transfer taxes, intangible taxes, mortgage taxes or other similar taxes, fees or assessments) relating to or incurred in connection with any loans or other financing obtained by the Purchaser for the purchase of the Property shall be borne and paid exclusively by Purchaser.  Any and all transfer taxes, intangible taxes, documentary stamp taxes or similar taxes relating to the transfer of the Property from Seller to Purchaser shall be borne and paid exclusively by Purchaser.  All other expenses incurred by Seller and Purchaser with respect to the Closing, including, but not limited to, the attorneys' fees and costs and expenses incurred in connection with negotiating,

preparing and closing the transaction contemplated by this Contract, shall be borne and paid exclusively by the party incurring same, unless otherwise expressly provided in this Contract. The provisions of this Section 8.3 shall survive the Closing or earlier termination of this Contract.

8.4 <u>Prorations</u>. All normal and customarily proratable items, including, without limitation, taxes, operating expenses and other expenses and fees shall be prorated as of the Closing Date, Seller being charged and credited for all of same attributable to the period up to the Closing Date (and credited for any amounts paid by Seller attributable to the period on or after the Closing Date) and Purchaser being responsible for, and credited or charged, as the case may be, for all of same attributable to the period on and after the Closing Date. All real estate ad valorem or similar taxes for the Property, or any installment of assessments payable in installments which installment is payable in the year of Closing, shall be prorated to the date of Closing, based upon actual days involved. In connection with the proration of real property taxes or installments of assessments, such proration shall be based upon the assessed valuation and tax rate figures for the year in which the Closing occurs to the extent the same are available; provided, that in the event that actual figures (whether for the assessed value of the Property or for the tax rate) for the year of Closing are not available at the Closing Date, the proration shall be made using figures from the preceding year for the figures which are unavailable for the year of Closing. The proration shall be final and unadjustable. Purchaser shall be responsible for any rollback taxes for the year in which Closing occurs and for all prior years due to a change in land usage or ownership. The provisions of this Section 8.4 shall survive the Closing.

**ARTICLE IX.**

**CONDEMNATION**

9.1 <u>Condemnation</u>. Purchaser acknowledges that (a) Case No. 10-CVS-00509 has been filed by the Department of Transportation ("NCDOT") against Seller in connection with a condemnation proceeding for a portion of the Linwood Property (as hereinafter defined) (the "Linwood Condemnation"), (b) Seller has engaged Nelson Mullins Riley & Scarborough, L.L.P. ("Linwood Local Counsel") to represent them in connection with the Linwood Condemnation, (c) Purchaser is willing and able to purchase the Property regardless of the outcome of the Linwood Condemnation, and (d) Purchaser is not relying upon any representation or warranty from Seller regarding the Linwood Condemnation or the condemnation proceeds payable as a result of such Linwood Condemnation other than NCDOT has deposited Forty-Six Thousand and No/100 Dollars ($46,000.00) (the "Linwood Deposit") with the court which may be released as full compensation or credit against compensation. Seller and Purchaser hereby acknowledge and agree that the Linwood Deposit shall be split equally between Seller and Purchaser (and Purchaser shall be required to reimburse Seller for one-half of all costs and expenses incurred by Seller (including, without limitation, attorney's fees) in connection with the Linwood Condemnation, which may reduce the amount of the Linwood Deposit received by Purchaser) and in the event either party receives the Linwood Deposit it shall promptly remit payment to the other party of its portion of the Linwood Deposit (less Purchaser's portion of the above-referenced expenses). In addition, Purchaser hereby acknowledges and agrees that Seller shall solely control the decision of whether to pursue additional condemnation proceeds from NCDOT in connection with the Linwood Condemnation or to accept the Linwood Deposit as full and final compensation regardless of Closing and in the event it is required that Purchaser be substituted as the defendant in the Linwood Condemnation by virtue of the sale of the Linwood Property, Purchaser shall fully cooperate, execute and deliver any and all documentation required to make such substitution and shall fully cooperate with Seller in connection with the Linwood Condemnation but in no event shall take any action, respond to any pleading, settle or release the Linwood Condemnation without the express written consent of Seller. In the event Seller decides to pursue additional condemnation proceeds then all additional condemnation proceeds in excess of the Linwood Deposit, if any (the "Excess Proceeds") shall be split equally between Seller and Purchaser but Purchaser shall be required to reimburse Seller for one-half of all costs and expenses incurred by Seller

(including, without limitation, attorney's fees) in connection with the Linwood Condemnation and the pursuit of the Excess Proceeds, which may reduce the amount of the Excess Proceeds received by Purchaser) and in the event either party receives the Excess Proceeds it shall promptly remit payment to the other party of its portion of the Excess Proceeds (less Purchaser's portion of the above-referenced expenses). The provisions of this Section 9.1 shall survive the Closing.

## ARTICLE X.

## DEFAULTS AND REMEDIES

10.1     Default by Purchaser.  If Purchaser refuses or fails to consummate the Closing under this Contract for reasons other than as expressly set forth in Section 5.2 or Article IX hereof or other than due to a failure of a condition precedent to Purchaser's obligation to close as set forth in Section 7.1 hereof, the Purchaser shall be in default under this Contract and Seller may terminate this Contract in which event the Title Company shall pay the Earnest Money Deposit to Seller and neither party shall have any further rights, duties, or obligations hereunder except with respect to the provisions hereof which expressly survive the termination of this Contract or shall also be entitled to exercise any and all remedies available at law or in equity.

10.2     Default by Seller.  If Seller refuses or fails to consummate the Closing under this Contract other than due to a termination permitted under this Contract or a failure of a condition precedent to Seller's obligation to close as set forth in Section 7.2 hereof, then Seller shall be in default under this Contract and Purchaser may, at Purchaser's sole option and as its sole and exclusive remedy, terminate this Contract in which event neither party shall have any further rights, duties or obligations hereunder except with respect to the provisions of this Contract which expressly survive the termination hereof, and Purchaser shall be entitled to a return of the Earnest Money Deposit.  In no event shall Seller be liable to Purchaser for any damages, including, without limitation, any actual, punitive, speculative or consequential damages or damages for loss of opportunity or lost profit.

10.3     Attorneys' Fees.  If it shall be necessary for either Purchaser or Seller to employ an attorney to enforce its rights pursuant to this Contract, the non-prevailing party shall reimburse the prevailing party for its reasonable attorneys' fees.  The provisions of this Section 10.3 shall survive the Closing or termination of this Contract.

## ARTICLE XI.

## BROKERAGE COMMISSIONS

11.1     Brokerage Commission.  Seller and Purchaser each represent to the other that each has had no dealings with any broker, finder or other party concerning the purchase of the Property.  Purchaser and Seller each agree to indemnify, defend and hold the other harmless for, from and against any and all loss, liability, damage, cost or expense (including, without limitation, reasonable attorneys' fees) arising out of or paid or incurred by such party by reason of any claim to any broker's, finder's or other fee in connection with this transaction by any party claiming by, through or under such party.

## ARTICLE XII.

## MISCELLANEOUS

12.1     Notices.  Any notice provided or permitted to be given under this Contract must be in writing and may be served by depositing the same in the United States Mail, postage prepaid, certified or registered mail with return receipt requested, or by delivering the same in person to the party to be notified via a delivery service, Federal Express or any other nationally recognized overnight courier

service that provides a return receipt showing the date of actual delivery of same to the addressee thereof, or by facsimile copy transmission with proof of receipt. Any party giving notice hereunder shall use reasonable efforts to send a copy of any such notice by facsimile transmission on the same date as deposited in the mail or given to such delivery service. Notice given in accordance herewith shall be deemed given and shall be effective upon the earlier of actual receipt (including, without limitation, receipt of a facsimile transmission) or refusal of delivery. For purposes of notice, the addresses of the parties shall be as follows:

If to Seller:        Palm Harbor Homes, Inc.
15303 Dallas Parkway, Suite 800
Addison, Texas 75001
Attention: Richard Peck
Telephone No.: 972/991-2422
Facsimile No.: 972/991-5168
Email Address: rpeck@palmharbor.com

With a copy to:    Liechty & McGinnis, LLP
11910 Greenville Avenue, Suite 400
Dallas, Texas 75243
Attention: Kristy K. Bowen, Esq.
Telephone No.: 214/265-0008
Facsimile No.: 214/265-0615
Email Address: kbowen@lmlawyers.com

If to Purchaser:   Billy E. Loflin
175 NC Highway 49 South
Asheboro, North Carolina 27205
Telephone No.: 336/625-4693 or 336/362-1891
Facsimile No.: 336/625-0422

If to Title Company:
With respect to the Linwood, NC Property:
Hunter H. Galloway III, Attorney at Law
Deborah Galloway, Paralegal Assistant
101 S. Elm Street, Ste 215
Greensboro, NC 27401
Telephone No: (336)-274-6574
Facsimile No.: (336)-275-0723
Email Address: ronclarkattrap@hotmail.com

With respect to the Florence, SC Property:
Robert V. Harrelson
3955 Southeastern Way, Ste. 1-B
West Columbia, SC 29169
Telephone No: (803) 791-8411
Facsimile No.: _____
Email Address: bethg@harrelsonlawfirm.com

    12.2   GOVERNING LAW. THE LAWS OF THE STATE OF TEXAS SHALL GOVERN THE VALIDITY, CONSTRUCTION, ENFORCEMENT AND INTERPRETATION OF THIS CONTRACT.

12.3     Entirety and Amendments.  This Contract embodies the entire agreement between the parties and supersedes all prior agreements and understandings, if any, relating to the transaction described herein, and may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

12.4     Assignment.  Purchaser may assign its rights under this Contract to an entity controlling, controlled by, or under common control with Purchaser without the prior written consent of Seller; provided, that Purchaser must immediately provide Seller with a copy of any instrument assigning this Contract, assignee's assumption of Purchaser's obligations under the Contract and evidence of the Purchaser's affiliation with the assignee.  Except as expressly provided in the preceding sentence, this Contract may not be assigned in whole or in part by Purchaser without the prior written consent of Seller, which consent shall not be unreasonably withheld, conditioned or delayed.  In the event of an assignment of this Contract by Purchaser, Purchaser shall not be released from any liability or obligations hereunder, and Purchaser shall promptly deliver to Seller a copy of the instrument effecting such assignment. Subject to the foregoing, this Contract shall be binding upon and inure to the benefit of Seller and Purchaser and their respective heirs, personal representatives, successors and assigns.

12.5     Survival.  Except as otherwise expressly provided herein, no representations, warranties, covenants or agreements contained in this Contract shall survive the termination of this Contract or the Closing and the sale of the Property hereunder.

12.6     Time of Essence.  It is expressly agreed by the parties hereto that time is of the essence with respect to this Contract and Closing hereunder.

12.7     Multiple Counterparts.  To facilitate execution, this Contract may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party, appear on each counterpart. Facsimile copies or electronic versions of a signature of any party shall be deemed the same as the original.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Contract to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.  Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages.

12.8     Risk of Loss.  Subject to the provisions of Article IX of this Contract, risk of loss or damage to the Property, or any part thereof, by fire or any other casualty from the date this Contract is fully executed up to the time of Closing will be on Seller and, thereafter, will be on Purchaser.

12.9     No Recordation of Contract.  In no event shall this Contract or any memorandum hereof be recorded in the public records of the state or county in which any portion of the Property is situated, and any such recordation or attempted recordation shall constitute a breach of this Contract by the party responsible for such recordation or attempted recordation.

12.10    Business Days.  All references to "business days" contained herein are references to normal working business days, i.e., Monday through Friday of each calendar week, exclusive of federal and national bank holidays.  In the event that any event hereunder is to occur, or a time period is to expire, on a date which is not a business day, such event shall occur or time period shall expire on the next succeeding business day.

12.11    Captions.  The captions, headings and arrangements used in this Contract are for convenience only and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

12.12  Number and Gender of Words.  Whenever herein the singular number is used, the same shall include the plural where appropriate, and words of any gender shall include each other gender where appropriate.

12.13  Interpretation.  No provision of this Contract shall be construed in favor of, or against, any particular party by reason of any presumption with respect to the drafting of this Contract; both parties, being represented by counsel and having fully participated in the negotiation of this instrument, hereby agree that this Contract shall not be subject to the principle that a contract would be construed against the party which drafted the same.

12.14  Incorporation of Exhibits.  All exhibits attached and referred to in this Contract are hereby incorporated herein as though fully set forth in (and shall be deemed to be a part hereof) this Contract.

12.15  Third-Party Beneficiaries.  Nothing in this Contract, express or implied, is intended to confer any rights or remedies upon any person, other than the parties hereto and, subject to the restrictions on assignment herein contained, their respective successors and assigns.

12.16  Faxed Signatures.  The parties agree that faxed signatures may be used to expedite the transaction contemplated by this Contract. Each party intends to be bound by its faxed signature and each is aware that the other will rely on the faxed signature, and each acknowledges such reliance and waives any defenses to the enforcement of the documents effecting the transaction contemplated by this Contract based on a faxed signature.

12.17  Abstract.  Purchaser acknowledges that at the time of the execution of this Contract, the Seller advised Purchaser by this writing that Purchaser should have an abstract covering the parcels examined by an attorney of Purchaser's own selection or should be furnished with or obtain a policy of title insurance.

12.18  Mandatory Arbitration.  Notwithstanding anything contained in this Contract, the parties have agreed to submit disputes to mandatory arbitration in accordance with the provisions of Exhibit E attached hereto and made a part hereof for all purposes. Each of Seller and Purchaser hereby waives the right to commence an action in connection with this Contract in any court and expressly agrees to be bound by the decision of the arbitrator determined in Exhibit E. The waiver in this Section 12.18 will not prevent Seller or Purchaser from commencing an action in any court for the sole purposes of enforcing the obligation of the other party to submit to binding arbitration or the enforcement of an award granted by arbitration herein.

12.19  Extra-Territorial Jurisdiction.  If the Property is located outside the limits of a municipality, the Property may now or later be included in the extra-territorial jurisdiction ("ETJ") of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and ETJ. To determine if the Property is located within a municipality's ETJ, Purchaser should contact all municipalities located in the general proximity of the Property for further information.

**[SIGNATURES APPEAR ON FOLLOWING PAGES]**

IN WITNESS WHEREOF, the undersigned have executed this Contract of Sale to be effective as of the Effective Date.

**SELLER:**

PALM HARBOR HOMES, INC.,
a Florida corporation

By:_____
Name:____W R Peck_____
Title:____ASST SECRETARY_____

Date:_____

**PURCHASER:**

_____
BILLY E. LOFLIN, an individual

Date:____2/28/11_____

## RECEIPT OF EARNEST MONEY DEPOSIT
## AND AGREEMENT OF TITLE COMPANY

_____ (the "Title Company") hereby acknowledges the receipt of one (1) fully signed and executed copy of this Contract.

_____

By:_____
    Name:_____
    Title:_____

Date:_____

R:\Palm Harbor\Linwood\Contract of Sale.doc

# EXHIBIT A

## LEGAL DESCRIPTION

**Tract 1:**
Property Address:  981 Seven Oaks Drive (the "Linwood Property")
City, State, Zipcode:  Linwood, North Carolina 27299
County:  Davidson County

Tax Parcel Identification Number:  04-028-0-000-004C

See attached legal description containing approximately 7.17 acres:

**Tract 2:**
Property Address:  2705 East Palmetto Street (the "Florence Property")
City, State, Zipcode:  Florence, South Carolina 29506
County:  Florence County

Tax Parcel Identification Number:  90-152-01-001

See attached legal description containing approximately 9.1358 acres:

# LEGAL DESCRIPTION

Tract 1:

BEGINNING at an existing iron on the western right of way of Clark Road, NCSR 1136, the northeast corner of the 40.0 acre tract described in deed recorded in Deed Book 796, Page 437, Davidson County Registry, and corner to Robert L. Grubb, Trustee (part of property described in deed recorded in Deed Book 688, Page 176, Davidson County Registry); thence with the western right of way of Clark Road the following bearings and distances: South 18° 14' 24" West 271.15 feet to a point; thence South 14° 58' 49" West 101.55 feet to an iron on said right of way, new corner; thence with a new line North 68° 25' 10" West 829.76 feet to an iron, new corner on the southern right of way of Interstate 85-Highways 29, 70, and 52, also being the southern right of way of Seven Oaks Road, NCSR 1285; thence with the said right of way North 48° 51' 05" East 585.00 feet to an existing iron, the northwest corner of the 40.0 acre tract described in deed recorded in Deed Book 796, Page 437, and corner to Robert L. Grubb, Trustee; thence with the line of Robert L. Grubb, Trustee, South 52° 53' 39" East 554.47 feet to the point and place of beginning, and containing 7.166 acres, more or less, according to survey by Mitcham & Associates, P.A., David W. Mitcham, Registered Land Surveyor #L-1527, dated October 4, 1996.

See copy of survey attached hereto and incorporated herein by reference.

Tract 2:

That certain piece, parcel or tract of land situate, lying and being in the County of Florence, State of South Carolina, being shown and designated as 9.1358 acres of land East of Florence on U.S. Highway 76 and 301, East Palmetto Street on a Plat of property surveyed for Palm Harbor Homes, Inc. by Ervin Engineering Company dated April 30, 1997 and recorded June 4, 1997 in the Office of the Clerk of the Court for Florence County, South Carolina in Plat Book 64, Page 308, reference to which plat is craved for a more complete description.

This is the same property a portion of which was conveyed to Grantor by Clerk's Title to Real Estate dated February 9, 1988 and recorded February 18, 1988 in the Office of the Clerk of Court for Florence County, South Carolina in Deed Book A-279 at Page 1934. This is also the same property described in that certain Order dated February 9, 1988 and recorded February 16, 1988 in the Office of the Clerk of Court for Florence County in Judgment Roll No. 76932 at Page 1936.

## [Survey of Linwood, NC]

BK 1:020 PG 1071



This document is prepared by and please return to:
Kristy K. Bowen, Esq.
Liechty & McGinnis, LLP
11910 Greenville Avenue, Suite 400
Dallas, Texas 75243

## SPECIAL WARRANTY DEED
## [SUBJECT TO LOCAL COUNSEL COMMENT AS TO FORM]

STATE OF _____  §
                           §   KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF _____  §

_____, a _____ (hereinafter called "Grantor"), for and in consideration of the sum of TEN AND No/100 Dollars ($10.00) and other good and valuable consideration in hand paid by _____, a _____ (hereinafter called "Grantee"), whose mailing address is _____, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, SOLD AND CONVEYED and by these presents does GRANT, SELL AND CONVEY unto Grantee that certain tract or parcel of land situated in _____ County, _____, and more particularly described on Exhibit A attached hereto and made a part hereof for all purposes, together with Grantor's rights and interests in all improvements, structures and fixtures located thereon and all rights, titles and interests of Grantor appurtenant thereto (all of the above-described properties being hereinafter collectively referred to as the "Property"). This conveyance is made and accepted subject to (a) general real estate taxes on the Property for the current year which Grantee assumes and agrees to pay, (b) zoning laws and regulations and ordinances of municipal and other governmental authorities, if any, affecting the Property, and (c) all matters of record, including, without limitation, the matters set forth on Exhibit B attached hereto and made a part hereof for all purposes (all of the foregoing being hereinafter collectively referred to as the "Permitted Exceptions").

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances thereto in anywise belonging unto Grantee, its successors and assigns forever, and Grantor does hereby bind itself, its successors and assigns, to WARRANT AND FOREVER DEFEND all and singular the Property unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through or under Grantor, but not otherwise, subject, however, to the Permitted Exceptions.

GRANTEE ACKNOWLEDGES AND AGREES THAT GRANTOR HAS NOT MADE, AND GRANTOR HEREBY SPECIFICALLY DISCLAIMS, ANY WARRANTY, GUARANTY OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, OR CONCERNING (i) THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, THE PRESENCE OR ABSENCE OF ANY HAZARDOUS MATERIALS ON THE PROPERTY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH GRANTEE MAY ELECT TO CONDUCT THEREON; (ii) EXCEPT FOR ANY WARRANTY OF TITLE CONTAINED HEREIN, THE EXISTENCE, NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE, RIGHT TO POSSESSION OR USE, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHER MATTER AFFECTING TITLE TO THE PROPERTY; AND (iii) WHETHER THE USE OR OPERATION OF THE PROPERTY COMPLIES WITH ANY AND ALL LAWS, ORDINANCES OR REGULATIONS OF ANY GOVERNMENT OR OTHER REGULATORY BODY.  GRANTEE ACKNOWLEDGES THAT HAVING BEEN GIVEN THE OPPORTUNITY TO INSPECT THE PROPERTY, GRANTEE IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND NOT ON ANY INFORMATION PROVIDED BY GRANTOR.  GRANTEE FURTHER ACKNOWLEDGES THAT ANY INFORMATION PROVIDED WITH RESPECT TO THE PROPERTY WAS OBTAINED FROM A VARIETY OF SOURCES AND GRANTOR (i) HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND (ii) MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION. GRANTEE ACCEPTS THE PROPERTY, AND ACKNOWLEDGES THAT THE CONVEYANCE OF THE PROPERTY TO GRANTEE IS MADE BY GRANTOR, ON AN "AS IS, WHERE IS, AND WITH ALL FAULTS" BASIS. GRANTEE EXPRESSLY ACKNOWLEDGES THAT, EXCEPT FOR THE WARRANTY OF TITLE CONTAINED HEREIN, GRANTOR MAKES NO WARRANTY OR REPRESENTATION OF ANY KIND, ORAL OR WRITTEN, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE (OTHER THAN GRANTOR'S WARRANTY OF TITLE TO BE SET FORTH HEREIN), ZONING, TAX CONSEQUENCES, PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS, THE TRUTH, ACCURACY OR COMPLETENESS OF ANY INFORMATION PROVIDED BY OR ON BEHALF OF GRANTOR TO GRANTEE, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY.

GRANTEE AGREES THAT GRANTOR SHALL NOT BE RESPONSIBLE OR LIABLE TO GRANTEE FOR ANY CONSTRUCTION DEFECTS, ERRORS, OMISSIONS, OR ON ACCOUNT OF ANY OTHER CONDITIONS AFFECTING THE PROPERTY, AS GRANTEE IS PURCHASING THE PROPERTY "AS IS, WHERE IS, AND WITH ALL FAULTS." EXCEPT AS EXPRESSLY LIMITED BY THE TERMS OF THE CONTRACT, GRANTEE, BY ITS ACCEPTANCE OF THIS SPECIAL WARRANTY DEED, AND ANYONE CLAIMING, BY, THROUGH OR UNDER GRANTEE, BY THEIR ACCEPTANCE

OF A DEED TO THE PROPERTY, OR ANY PORTION THEREOF, FULLY RELEASES AND DISCHARGES GRANTOR FROM ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION OR CAUSE OF ACTION ARISING FROM OR RELATED TO ANY CONSTRUCTION DEFECTS, ERRORS, OMISSIONS, OR OTHER CONDITIONS AFFECTING THE PROPERTY. GRANTEE FURTHER ACKNOWLEDGES AND AGREES THAT THIS RELEASE SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING, BUT NOT LIMITED TO, THOSE RELATING TO UNKNOWN AND SUSPECTED CLAIMS, DAMAGES AND CAUSES OF ACTION. THIS COVENANT RELEASING GRANTOR SHALL BE A COVENANT RUNNING WITH THE PROPERTY AND SHALL BE BINDING UPON GRANTEE, ITS SUCCESSORS AND ASSIGNS. WHERE USED IN THIS PARAGRAPH, THE TERM "GRANTOR" SHALL INCLUDE GRANTOR AND GRANTOR'S EMPLOYEES, OFFICERS, DIRECTORS, PARTNERS, REPRESENTATIVES AND AGENTS, AND THEIR RESPECTIVE PERSONAL REPRESENTATIVES, HEIRS, SUCCESSORS AND ASSIGNS.

GRANTEE'S AGREEMENT TO, AND ACKNOWLEDGMENT OF, THE VARIOUS MATTERS SPECIFIED IN THIS SPECIAL WARRANTY DEED SHALL BE CONCLUSIVELY EVIDENCED BY GRANTEE'S ACCEPTANCE HEREOF.

Current ad valorem taxes on the Property having been prorated, Grantee hereby assumes the payment thereof.

IN WITNESS WHEREOF, this Special Warranty Deed is executed by Grantor to be effective for all purposes as of the _____ day of _____, 200_.

GRANTOR:

PALM HARBOR HOMES, INC.,
a Florida corporation

By:_____
Name:_____
Title:_____

STATE OF TEXAS §
§
COUNTY OF DALLAS §

    This instrument was acknowledged before me on this _____ day of _____, 200_, by _____, _____ of Palm Harbor Homes, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said corporation.


_____
Notary Public, State of Texas

My Commission Expires:

_____                _____
Printed Name of Notary Public


GRANTEE'S ADDRESS:

_____
_____
_____

**EXHIBIT A**
**TO**
**SPECIAL WARRANTY DEED**

**PROPERTY DESCRIPTION**

[Attach legal description of the Property]

**EXHIBIT B**
**TO**
**SPECIAL WARRANTY DEED**

**<u>PERMITTED EXCEPTIONS</u>**

[Attach list of Permitted Exceptions created
in accordance with the terms of the Contract]

# EXHIBIT C

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, that in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, _____, a _____ ("Seller"), hereby sells, conveys and transfers unto _____, a _____ ("Buyer") all RIGHTS, TITLE AND INTEREST OF Seller, if any, in and to the lighting, electrical, mechanical, plumbing and heating, ventilation and air conditioning systems, and all carpeting, draperies, appliances, fencing, gates, phone systems, furniture, storage building and other fixtures (including trade fixtures) attached or appurtenant to the parcel of real property in _____, described on Exhibit A hereto (collectively, the "Personal Property").

THE PERSONAL PROPERTY IS CONVEYED BY SELLER AND ACCEPTED BY BUYER AS IS, WHERE IS AND WITH ALL FAULTS, WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY NATURE WHATSOEVER, EXPRESS OR IMPLIED, IT BEING THE INTENTION OF SELLER AND BUYER EXPRESSLY TO NEGATE AND EXCLUDE ALL WARRANTIES, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, WARRANTIES CREATED BY ANY AFFIRMATION OF FACT OR PROMISE OR BY ANY DESCRIPTION OF THE PERSONAL PROPERTY CONVEYED HEREUNDER, AND ALL OTHER REPRESENTATIONS AND WARRANTIES WHATSOEVER CONTAINED IN OR CREATED BY THE UNIFORM COMMERCIAL CODE OF THE STATE OR STATES WHERE THE PERSONAL PROPERTY IS LOCATED.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Seller has executed and delivered this instrument as of the ___ day of _____, 200_.

**SELLER:**

PALM HARBOR HOMES, INC.,
a Florida corporation

By:_____
Name:_____
Title:_____

**BUYER:**

_____,
a _____

By:_____
Name:_____
Title:_____

**EXHIBIT A**
**TO**
**BILL OF SALE**

**<u>LEGAL DESCRIPTION</u>**

[to be attached]

**EXHIBIT D**

## NON-FOREIGN AFFIDAVIT

STATE OF _____ §
§      KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF _____ §

On this date, _____, a _____ ("Seller"), has sold and conveyed certain real property situated in _____ County, _____, to _____, a _____ ("Purchaser"). Section 1445 of the Internal Revenue Code of 1986, as amended, provides that a transferee of a U.S. Real Property Interest must withhold tax if the transferor is a foreign person. To inform Purchaser that withholding of tax is not required upon the disposition of a U.S. Real Property Interest by Seller, the undersigned hereby certifies the following on behalf of Seller:

1.      Seller is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.      Seller's U.S. Employer Identification Number is _____; and

3.      Seller's office address is 15303 Dallas Parkway, Suite 800, Addison, Texas 75001.

4.      Seller is not a disregarded entity, as defined in Treasury Regulations Section 1.1445-2(b)(2)(iii).

Seller agrees to inform Purchaser if it becomes a foreign person at any time during the three year period immediately following the date of this notice.

Seller understands that this certification may be disclosed to the Internal Revenue Service by Purchaser and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Seller.

Executed this _____ day of _____, 200_.

SELLER:

PALM HARBOR HOMES, INC.,
a Florida corporation

By:_____
Name:_____
Title:_____

STATE OF TEXAS      §
                             §
COUNTY OF DALLAS   §

This instrument was acknowledged before me on this _____ day of _____, 200_, by _____, _____ of Palm Harbor Homes, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of said corporation.

_____
Notary Public, State of Texas

My Commission Expires:

_____

_____
Printed Name of Notary Public

**EXHIBIT E**

**MANDATORY ARBITRATION**

The parties have agreed to submit disputes to mandatory arbitration in accordance with the following provisions:

A.    **General**. Any dispute among Seller and Purchaser as to the interpretation of any provision of this Contract or the rights or obligations of any party hereunder shall be resolved through binding arbitration as hereinafter provided in Dallas, Texas.

B.    **Selection of Arbitrator**. If arbitration is required to resolve a dispute among Seller and Purchaser, a panel of three (3) arbitrators shall be convened. Seller and Purchaser shall each select one (1) arbitrator with at least five (5) years experience in commercial real estate in the Dallas, Texas area, and those two (2) arbitrators shall by agreement select a third (3rd) arbitrator having recognized expertise and at least five (5) years experience in commercial real estate in the Dallas, Texas area.

C.    **Rules of Arbitration**. The arbitrators selected pursuant to Section A above will establish the rules for proceeding with the arbitration of the dispute, which will be binding upon all parties to the arbitration proceeding. The arbitrators may use the rules of AAA for commercial arbitration but are encouraged to adopt the rules the arbitrators deem appropriate to accomplish the arbitration in the quickest and least expensive manner possible. Accordingly, the arbitrators may (1) dispense with any formal rules of evidence and allow hearsay testimony so as to limit the number of witnesses required, (2) accept evidence of property values without formal appraisals and upon such information provided by Seller and Purchaser or other persons and otherwise minimize discovery procedures as the arbitrators deem appropriate, (3) act upon their understanding or interpretation of the law on any issue without the obligation to research the issue or accept or act upon briefs of the issue prepared by any party, (4) limit the time of presentation of any party's case as well as the amount of information or number of witnesses to be presented in connection with any hearing, and (5) impose any other rules which the arbitrators believe appropriate to effect a resolution of the dispute as quickly and inexpensively as possible.

D.    **Costs of Arbitration**. The arbitrators will have the exclusive authority to determine and award costs of arbitration and the costs incurred by any party for its attorneys, advisors and consultants.

E.    **Award of Arbitrators**. Any award made by the arbitrators shall be binding on Seller, Purchaser and all parties to the arbitration and shall be enforceable to the fullest extent of the law.

F.    **Governing Law; Actual Damages; Etc.** In reaching any determination or award, the arbitrators shall apply the laws of the state in which the Property is located. Except as permitted under Section D above, the arbitrators' award will be limited to actual damages and will not include punitive or exemplary damages. Nothing contained in this Contract will be deemed to give the arbitrators any authority, power or right to alter, change, amend, modify, add to or subtract from any of the provisions of this Contract. All privileges under state and federal law, including, without limitation, attorney-client, work product and party communication

privileges, shall be preserved and protected. All experts engaged by a party must be disclosed to the other party within fourteen (14) days after the date of notice and demand for arbitration is given.

# FIRST AMENDMENT TO CONTRACT OF SALE

THIS FIRST AMENDMENT TO CONTRACT OF SALE (this "Amendment") is made and entered into effective as of March 8, 2011, by and between PALM HARBOR HOMES, INC., a Florida corporation ("Seller"), and BILLY E. LOFLIN, an individual ("Purchaser").

## W I T N E S S E T H:

WHEREAS, effective February 28, 2011, Seller and Purchaser entered into that certain Contract of Sale (the "Contract") pursuant to the terms and conditions of which Seller agreed to sell and Purchaser agreed to purchase certain real estate situated in Davidson County, North Carolina and Florence County, South Carolina (the "Property"), and more particularly described therein; and

WHEREAS, Seller and Purchaser have agreed to make certain amendments and modifications to the Contract;

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt and total sufficiency of which are hereby acknowledged, Seller and Purchaser hereby agree as follows:

1.  <u>Defined Terms</u>. Unless otherwise defined in this Amendment or the context otherwise requires, each term used in this Amendment with its initial letter capitalized which has been specifically defined in the Contract shall have the same meaning herein as given to such term in the Contract.

2.  <u>Amendment</u>. Section 8.1(a) of the Contract is hereby modified to extend the Closing Date to the date which is three (3) business days following the bankruptcy court's grant of Seller's motion for an order authorizing the Contract and sale of the Property.

3.  <u>Continuing Effect</u>. Except as expressly modified by the terms and provisions of this Amendment, each and every of the terms and provisions of the Contract of Sale are unchanged and continued in full force and effect.

4.  <u>Parties Bound</u>. This Amendment shall be binding upon the parties hereto and their respective successors and assigns.

5.  <u>Counterparts</u>. To facilitate execution, this Amendment may be executed in as many counterparts as may be convenient or required. It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party appear on each counterpart. All counterparts shall collectively constitute a single instrument. It shall not be necessary in making proof of this Amendment to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto. Any signature page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature pages. Delivery of an executed counterpart of this Amendment by facsimile or email shall be binding upon the party so delivering.

IN WITNESS WHEREOF, the undersigned have executed this Amendment effective as of March 8, 2011.

SELLER:

PALM HARBOR HOMES, INC.,
a Florida corporation

By:

Name: W. R. PECK

Title: VP Return OPS

Date: 3/14/11

PURCHASER:

BILLY E. LOFLIN, an individual

Date: 3/14/11

R:\PALM HARBOR\LINWOOD\1ST AMENDMENT.DOC