# Exhibit 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHH Liquidation Trust, etal.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket Nos. 812, 971** |
| | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING JOINT PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND COMMITTEE FOR PALM HARBOR HOMES, INC. AND ITS RELATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors (collectively, the "Debtors") having:[2]

- on November 29, 2010 (the "Petition Date"), commenced chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C §§ 101-1532 (the "Bankruptcy Code");

- filed, on November 29, 2011, the Declaration of Brian E. Cejka in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 3] (the "Cejka Declaration");

- continued to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until April 2011, when the sale of substantially all of the Debtors' assets closed;

- filed, with the Committee, on August 5, 2011, the Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and Its Related Debtors Under Chapter 11 of the Bankruptcy Code [Docket No. 812] (the "Plan"), a copy of which is attached hereto as Exhibit A, as may be amended;

- filed, on September 26, 2011, the Second Amended Disclosure Statement for the Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and Its Related Debtors Under Chapter 11 of the Bankruptcy Code [Docket No. 930] (the "Disclosure Statement"), as may be amended;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: PHH Liquidation Trust (f/k/a Palm Harbor Homes, Inc.), a Florida corporation (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: Alvarez & Marsal, c/o Palm Harbor Winddown; 2100 Ross Avenue, 21st Floor, Dallas, TX75201.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and Its Related Debtors Under Chapter 11 of the Bankruptcy Code.

- obtained approval of the Disclosure Statement by that certain Order: (I) Approving the Disclosure Statement; (II) Fixing (A) the Record Date, (B) the Voting Deadline, (C) the Plan Objection and Reply Deadlines, and (D) the Date of the Confirmation Hearing; (III) Approving Solicitation Procedures by Which Parties Entitled to Vote May Vote to Accept or Reject the Plan and the Form of Certain Documents to Be Distributed in Connection With the Solicitation of the Plan; and (IV) Approving the Voting and General Tabulation Procedures [Docket No. 937] (the "Disclosure Statement Order"), which Disclosure Statement Order also approved, among other things, solicitation procedures (collectively, the "Solicitation Procedures") and related notices, forms, and ballots (collectively, the "Solicitation Packages");

- completed distribution of the Notice of (A) The Solicitation and Voting Procedures, and (B) the Objection Deadline and the Confirmation Hearing With Respect to the Plan (the "Confirmation Hearing Notice") approved by the Bankruptcy Court in the Disclosure Statement Order apprising the recipients of (a) their ability to obtain a copy of the Plan and Disclosure Statement from BMC, (b) the deadline to object to the adequacy of the Plan, (c) the date of the hearing (the "Confirmation Hearing") on the confirmation of the Debtors' Plan (the "Confirmation"), and (d) the deadline to object to the Confirmation on November 7, 2011, as evidenced by the Affidavit of Service filed by BMC Group, Inc., the Debtors' retained claims, noticing and balloting agent ("BMC") on October 13, 2011 [Docket Nos. 964, 967] (the "Scheduling Notice Affidavit of Service");

- completed distribution of the Non-Voting Status Notices – Deemed to Reject to Class 5 and Class 6 (the "Non-Voting Status Notices – Deemed to Reject") approved by the Court in the Disclosure Statement Order to all Holders of Claims and Equity Interests whose Claims or Equity Interests are receiving no distributions under the Plan on account of such Claims or Equity Interests, and who thus are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan, as evidenced by the Scheduling Notice Affidavit of Service;

- completed distribution of the Non-Voting Status Notices – Deemed to Accept (the "Non-Voting Status Notice – Deemed to Accept") approved by the Court in the Disclosure Statement Order to all Holders of Claims whose claims are Unimpaired under the Plan, and thus are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan, as evidenced by the Scheduling Notice Affidavit of Service;

- completed distribution of the Solicitation Packages on October 4, 2011, consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, as evidenced by the Scheduling Notice Affidavit of Service;

- filed, on November 4, 2011, the Declaration of Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection With the Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and its Related Debtors Under Chapter 11 of the Bankruptcy Code (along with the attached Exhibit A, the "Voting Report"), detailing the results of the Plan voting process, evidencing that: (a) 100 percent in number and 100 percent in value of Holders of Class 3 Claims who voted on the Plan voted in favor of the Plan; and (b) 95.83 percent in number and 97.75 percent in value of Holders of Class 4 Claims who voted on the Plan voted in favor of the Plan [Docket No. 1007];

- filed the Debtors' Memorandum of Law in Support of Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and Its Related Debtors Under Chapter 11 of the Bankruptcy Code (the "Plan Confirmation Brief") [Docket No. 971];

- filed the Declaration of Brian E. Cejka in Support of Confirmation of the Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and Its Related Debtors Under Chapter 11 of the Bankruptcy Code (the "Cejka Confirmation Declaration") [Docket No. 972];

- published notice of the confirmation hearing in *USA Today* on October 4, 2011, as provided by the Affidavit of Publication filed on October 12, 2011 [Docket No. 956] (The "Publication Affidavit"); and

The Bankruptcy Court having:

- entered the Disclosure Statement Order on September 27, 2011;

- set November 17, 2011, at 1:00 p.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

- reviewed the Disclosure Statement, the Plan, the Plan Confirmation Brief, the Cejka Confirmation Declaration, the Voting Report and all filed pleadings, exhibits, statements, and comments in support of Confirmation;

- reviewed those objections, settlements and reservations of rights in opposition to confirmation, if any (collectively, the "Objections");

- heard the statements and arguments made by counsel in respect of Confirmation;

- considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation; and

- taken judicial notice of the papers and pleadings filed in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the

Confirmation Hearing and the opportunity for any party in interest to object to Confirmation

have been adequate and appropriate as to all entities affected or to be affected by the Plan and the

transactions contemplated thereby, and the legal and factual bases set forth in the documents

filed in support of Confirmation and presented at the Confirmation Hearing establish just cause

for the relief granted herein; and after due deliberation thereon and good cause appearing

therefor, the Bankruptcy Court hereby makes and issues the following Findings of Fact,

Conclusions of Law and Orders:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED
THAT:

### A. Jurisdiction and Venue

A.    Beginning on the Petition Date, the Debtors commenced the Chapter 11 Cases.

Venue in the Bankruptcy Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408

and 1409 and continues to be proper during the Chapter 11 Cases. Confirmation of the Plan is a

core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter

jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and has exclusive jurisdiction to

determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and

should be confirmed.

### B. Eligibility for Relief

B.    The Debtors were and are entities eligible for relief under section 109 of the

Bankruptcy Code.

### C. Commencement and Joint Administration of the Chapter 11 Cases

C.    Beginning on the Petition Date, each of the Debtors commenced a case under

chapter 11 of the Bankruptcy Code. By prior order of the Bankruptcy Court [Docket No. 50], the

Chapter 11 Cases have been consolidated for procedural purposes and are being jointly

administered pursuant to Bankruptcy Rule 1015. The Debtors continued in possession of their

respective properties and continued to operate and maintain their business as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code until April 2011, when

- 4 -

the sale of substantially all of the Debtors' assets closed. The Committee was appointed on December 14, 2010.

## D. Judicial Notice

D. The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for Confirmation) the Scheduling Notice Affidavit of Service, the Plan, the Disclosure Statement, the Disclosure Statement Order, the Plan Confirmation Brief, the Voting Report, the Cejka Confirmation Declaration, the Cejka Declaration, the disclosures made in accordance with section 1129(a)(5) of the Bankruptcy Code, the docket of the Chapter 11 Cases, all pleadings and orders filed in the Chapter 11 Cases in any way relating to the Plan and the Disclosure Statement, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements and reservations of rights are overruled on the merits.

## E. Burden of Proof

E. The Debtors and the Committee, as co-proponents of the Plan, have proven the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

## F. Scheduling Order and the Disclosure Statement Order

F. On September 27, 2011, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things: (a) fixed November 1, 2011 at 4:00 p.m., prevailing Eastern Time, as the Voting Deadline to accept or reject the Plan; (b) fixed November 7, 2011, at 4:00 p.m., prevailing Eastern Time, as the deadline for objecting to the Plan; and (c) fixed November 17, 2011, at 1:00 p.m., prevailing Eastern Time, as the date and time for the commencement of

- 5 -

the Confirmation Hearing; (d) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (e) fixed September 27, 2011 as the Record Date (as defined in the Disclosure Statement Order); and (f) approved the Solicitation Procedures and the Solicitation Packages.

## G. Transmittal and Mailing of Materials; Notice

G. As evidenced by the Scheduling Notice Affidavit of Service, due, adequate, and sufficient notice of the Disclosure Statement, Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to: (a) all known Holders of Claims and Equity Interests; and (b) entities that properly requested notice (and did not withdraw such request) in accordance with Bankruptcy Rule 2002, each in compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b), and no other or further notice is or shall be necessary or required.

## H. Solicitation

H. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations. Specifically, the Solicitation Packages approved by the Bankruptcy Court in the Disclosure Statement Order, which contained, the applicable Ballot, the Disclosure Statement Order, and the Disclosure Statement (together with the Plan, which is Exhibit A thereto), were transmitted to and served on all Holders of Claims in Classes that were entitled to vote to accept or reject the Plan, as set forth in the Scheduling Notice Affidavit of Service. The transmittal and service of the Solicitation Packages described herein was in compliance with section 1125 of the Bankruptcy Code, the Disclosure Statement Order, the Solicitation Procedures, and the Bankruptcy Rules. Such

transmittal and service were adequate and sufficient, and no further notice is necessary or required or shall be required. The Non-Voting Status Notices (as defined in the Disclosure Statement Order) approved by the Bankruptcy Court and the Confirmation Hearing Notice were transmitted to and served on Holders of Claims and Equity Interests in Classes that were not entitled to vote to accept or reject the Plan, all in compliance with the Disclosure Statement Order.

I.       The Debtors have identified defects or irregularities in Ballots that were invalid, not timely received or otherwise failed to conform to the requirements set forth in the voting instructions and procedures contained on the Ballots and as provided by the Solicitation Procedures pursuant to the Disclosure Statement Order. All such ballots were properly documented as set forth in Exhibit Ato the Voting Report and were not included in the tabulation of votes to accept or reject the Plan. The exclusion of such ballots on the grounds set forth in the Voting Report facilitates the solicitation process in a manner consistent with the Solicitation Procedures, the Bankruptcy Code, and the Bankruptcy Rules and their exclusion is approved.

J.       All processes and procedures used to distribute Solicitation Packages to Holders of Claims in Classes that were entitled to vote on the Plan were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court – District of Delaware (collectively, the "Local Bankruptcy Rules"), and all other applicable rules, laws, and regulations.

I.      **Voting Report**

K.      Prior to the Confirmation Hearing, the Debtors Filed the Voting Report. All procedures used to tabulate the Ballots and Master Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Solicitation Procedures, the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations.

L.    Holders of Claims and Equity Interests in Class 5 (Intercompany Claims) and Class 6 (Equity Interests) are Impaired, and shall receive no distribution under the Plan on account of their Claims or Equity Interests. Therefore, Holders of Claims and Equity Interests in Classes 5 and 6 are deemed not to have accepted the Plan and are not entitled to vote to accept or reject the Plan (collectively, the "Rejecting Classes").

M.    As evidenced by the Voting Report, creditors in each of Classes 3 and 4 (collectively, the "Voting Classes" and with the Rejecting Classes, collectively the "Impaired Classes") voted to accept the Plan (collectively, the "Impaired Accepting Classes"). In addition, Holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

## J.    **Bankruptcy Rule 3016**

N.    The Plan is dated and identifies the entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

## K.    **Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

O.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows.

- 8 -

### 1. Section 1129(a)(1)-Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

P.      As set forth below, the Plan complies with all applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123 of the Bankruptcy Code, thus satisfying section 1129(a)(1) of the Bankruptcy Code.

#### (i)      Sections 1122 and 1123(a)(1)-Proper Classification

Q.      The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Equity Interests into six Classes, based on differences in the legal nature or priority of such Claims and Equity Interests (other than Administrative Claims, 3.25% Convertible Senior Notes Indenture Trustee Claims, and Priority Tax Claims, which are unclassified and addressed in Article II of the Plan, and which are required not to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Equity Interests created under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims and Equity Interests.

R.      In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. As a result thereof, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

#### (ii)      Section 1123(a)(2)-Specification of Unimpaired Classes

S.      Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired under the Plan. Additionally, Article II of the Plan specifies that Administrative Claims, 3.25%

Convertible Senior Notes Indenture Trustee Claims, and Priority Tax Claims, are Unimpaired, and these Claims are not classified under the Plan. As a result thereof, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### (iii) Section 1123(a)(3)-Specification of Treatment of Impaired Classes

T. Article III of the Plan specifies the treatment of each Impaired Class under the Plan, including Classes 3, 4, 5, and 6. As a result thereof, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### (iv) Section 1123(a)(4)-Equal Treatment Within Classes

U. In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the Plan provides for the same treatment of each Claim or Equity Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest. As a result thereof, the requirements of section 1123(a)(4) of the Bankruptcy Code have been satisfied.

### (v) Section 1123(a)(5)-Adequate Means for Plan Implementation

V. In accordance with Section 1123(a)(5) of the Bankruptcy Code, the Plan provides for adequate means of implementation. Specifically, among other things, Article V of the Plan provides for: (i) the substantive consolidation of the Debtors' estates (Plan, Art. V.B) (discussed further below); (ii) the establishment of the Post-Consummation Trust and the transfer of the Debtors' assets to the Post-Consummation Trust (Plan, Art. V.C.1); (iii) the dissolution of the Debtors (Plan, Art. V.C.2); (iv) the appointment of the Post-Consummation Trust Administrator (Plan, Art. V.C.3); and (v) the cancellation of the 3.25% of Convertible Senior Notes and Equity Interests (Plan, Art. V.H). As a result thereof, the requirements of section 1123(a)(5) of the Bankruptcy Code have been satisfied.

### (vi) Section 1123(a)(6)-Voting Power of Equity Securities

W. Because the Debtors have sold substantially all of the Debtors' assets to the Purchaser, cancelled all notes, stock, instruments, indentures (to the extent provided in the Plan), certificates and Equity Interests, and because the Post-Consumption Trust is not issuing non-voting equity securities, section 1123(a)(6) of the Bankruptcy Code prohibiting the issuance of non-voting equity securities is not applicable.

### (vii) Section 1123(a)(7)-Selection of Officers and Directors

X. The Plan provides that the Debtors' current chief restructuring officer, Brian E. Cejka, shall assume the position of Post-Consummation Trust Administrator. Plan, Art. VIII.E.1. Further, the Post-Consummation Trust Agreement provides for the creation of a Post-Consummation Trust Oversight Committee that will oversee the Post-Consummation Trust Administrator's actions. Plan Art. VIII.E.3; Exhibit A to Plan, § 3.1. The provisions of the Plan for the selection of the Post-Consummation Trust Administrator and the Post-Consummation Trust Oversight Committee are consistent with the interests of creditors and with public policy as to the manner and selection of any officer or director and any successor thereto, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

### (viii) Section 1123(b)-Discretionary Contents of the Plan

Y. As further set forth in the Plan Confirmation Brief, the Plan contains other provisions that may be construed as discretionary but are not required for confirmation under the Bankruptcy Code, including the Debtors' retention of claims or interests and provisions governing the treatment of Executory Contracts and Unexpired Leases. These discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. As a result, section 1123(b) of the Bankruptcy Code is satisfied.

### 2. Section 1129(a)(2)-Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code

Z.     The Debtors and the Committee, as Proponents of the Plan, have complied with

all applicable provisions of the Bankruptcy Code including sections 1123, 1125 and 1126 of the

Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019, thereby satisfying section

1129(a)(2) of the Bankruptcy Code. Specifically:

> (i)     the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;
>
> (ii)    the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and
>
> (iii)   the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

### 3. Section 1129(a)(3)-Proposal of the Plan in Good Faith

AA.    The Debtors and the Committee have proposed the Plan in good faith and not by

any means forbidden by law. In determining that the Plan has been proposed in good faith, the

Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the

Chapter 11 Cases, the Plan, and the process leading to the Plan's formulation. The Debtors' and

the Committee's good faith is evident from, among other things, the facts and records of the

Chapter 11 Cases, the Disclosure Statement and the hearing thereon, and the record of the

Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Plan is the

product of comprehensive, arms' length negotiations between, among other entities, the Debtors

and the Committee. The Plan itself, and the process leading to its formulation, provide

independent evidence of the Debtors' and the Committee's good faith. The Plan serves the

public interest and assures fair treatment for Holders of Claims and Equity Interests. Consistent

with the overriding purpose of chapter 11 of the Bankruptcy Code, the Chapter 11 Cases were filed, and the Plan was proposed, to facilitate the legitimate purpose of selling all or substantially all of the Debtors' assets, to be followed by the orderly liquidation of the Debtors' estates and the orderly distribution of proceeds to Holders of Allowed Claims as provided in the Plan. The Debtors, the Committee, and their respective agents, members, officers, directors, financial advisors, attorneys, advisors, employees, equity holders, partners, affiliates, and representatives, through their participation in arms' length negotiations and preparation of the Plan and related documents, including the Disclosure Statement, have participated in the Chapter 11 Cases in good faith and in compliance with the applicable provisions of the Bankruptcy Code. As a result, the requirements of section 1129(a)(3) of the Bankruptcy Code have been satisfied.

### 4. Section 1129(a)(4)-Bankruptcy Court Approval of Certain Payments as Reasonable

BB. The procedures set forth in the Plan and this Confirmation Order for the Bankruptcy Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, including the payment of the fees of retained professionals for awards of compensation for services rendered and reimbursement of expenses incurred, comply with section 1129(a)(4) of the Bankruptcy Code. As a result, the requirements of section 1129(a)(4) of the Bankruptcy Code have been satisfied.

### 5. Section 1129(a)(5)-Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy

CC. The Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy Code. The identity and affiliation of Brian Cejka as Post-Consummation Trust Administrator and the members of the Post-Consummation Trust Oversight Committee and the appointment to,

- 13 -

or continuation in, such offices of such persons is consistent with the interests of Holders of Claims against, and Equity Interests in, the Debtors and with public policy.

**6. Section 1129(a)(6)-Approval of Rate Changes**

DD. Because the Plan contemplates the liquidation and distribution of all Assets of the Debtors' estates and does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, section 1129(a)(6) is not applicable.

**7. Section 1129(a)(7)-Best Interests of Holders of Claims and Equity Interests**

EE. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis contained in the Disclosure Statement and other evidence proffered or adduced at or prior to the Confirmation Hearing or contained in the Cejka Confirmation Declaration: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been successfully challenged or controverted by other evidence; and (d) establish that, with respect to each Impaired Class, each Holder of an Allowed Claim or Equity Interest in such Class has either voted to accept the Plan (as evidenced by the Voting Report) or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. As a result, the requirements of section 1129(a)(7) of the Bankruptcy Code have been satisfied.

**8. Section 1129(a)(8)-Acceptance or Rejection by Certain Classes**

FF. Holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are conclusively presumed to have accepted the Plan under section 1126(f) of the

Bankruptcy Code because their Claims are Unimpaired under the Plan. As set forth in the Voting Report, the Impaired Accepting Classes (Class 3 (3.25% Convertible Senior Notes Claims)) and Class 4 (General Unsecured Claims)) have voted to accept the Plan.

GG.     The Rejecting Classes (Class 5 (Intercompany Claims)) and Class 6 (Equity Interests)) are conclusively presumed to reject the Plan under section 1126(g) of the Bankruptcy Code because their Claims and Equity Interests are Impaired under the Plan and they will receive no distribution under the Plan. The Debtors have accordingly sought Confirmation under section 1129(b) of the Bankruptcy Code. As set forth below and as set forth in the Cejka Confirmation Declaration, although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. As a result, the requirements of section 1129(b) of the Bankruptcy Code have been satisfied.

### 9.     Section 1129(a)(9)-Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

HH.     The treatment of Allowed Administrative Claims, 3.25% Convertible Senior Notes Indenture Trustee Claims, and Priority Tax Claims pursuant to Article II of the Plan complies in all respects with section 1129(a)(9) of the Bankruptcy Code. As a result, the requirements of section 1129(a)(9) of the Bankruptcy Code have been satisfied.

### 10.     Section 1129(a)(10)-Acceptance by at Least One Impaired Class

II.     As set forth in the Voting Report, each of Class 3 (3.25% Convertible Senior Notes Claims) and Class 4 (General Unsecured Claims) has voted to accept the Plan in requisite numbers and amounts without the need to include any acceptances of the Plan by an insider. As such, there is at least one Class of Claims that is Impaired under the Plan that has accepted the Plan, which was determined without including any acceptance of the Plan by any insider (as

- 15 -

defined by the Bankruptcy Code). The requirements of section 1129(a)(10) of the Bankruptcy Code have thus been satisfied.

### 11. Section 1129(a)(11)-Feasibility of the Plan

JJ. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at or prior to the Confirmation Hearing or in the Cejka Confirmation Declaration: (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible; and (e) establishes that the Debtors and the Post-Consummation Trust will have sufficient funds available to meet their obligations under the Plan. The Plan presents a workable scheme of liquidation and is found and determined to be feasible. As a result, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

### 12. Section 1129(a)(12)-Payment of Certain Fees

KK. Articles II.A.1 and XIV.B of the Plan provide that all fees payable pursuant to 28 U.S.C. § 1930 either have been paid or will be paid prior to the closing of the Chapter 11 Cases. As a result, the requirements of section 1129(a)(12) of the Bankruptcy Code have been satisfied.

### 13. Section 1129(a)(13)-Retiree Benefits

LL. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. The Debtors do not owe any retiree benefits (as defined in section 1114 of the Bankruptcy Code) and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

- 16 -

## 14. Section 1129(b)-Confirmation of the Plan Over Nonacceptance of Impaired Classes

MM. As described above, the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8). Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan because: (a) the Impaired Accepting Classes have voted to accept the Plan; and (b) the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes. With respect to Holders of Claims in Classes 5 and 6, no Holders of Claims or Equity Interests, as applicable, that are junior to these Classes will receive or retain any property under the Plan on account of those Claims or Equity Interests. Accordingly, the requirements of section 1129(b)(2)(B)(ii) are satisfied with respect to Class 5 and the Plan is fair and equitable with respect to Class 5. Further, the requirements of section 1129(b)(2)(C)(ii) of the Bankruptcy Code are satisfied with regard to Class 6 and the Plan is fair and equitable with respect to Class 6.

NN. The Plan does not unfairly discriminate because Holders of Claims and Equity Interests receive treatment that fairly and appropriately reflects the differences in legal rights and the differences in relative value between these Claims and Equity Interests assigned to the different Classes under the Plan. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code and shall be confirmed notwithstanding the requirements of section 1129(a)(8) of the Bankruptcy Code. After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

### 15. Section 1129(c)-Only One Plan

OO. Other than the Plan (including all amendments and previous versions thereof), no other plan has been filed in the Chapter 11 Cases. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

### 16. Section 1129(d)-Principal Purpose of the Plan Is Not the Avoidance of Taxes or Application of the Securities Law

PP. No governmental unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. As a result, the requirements of section 1129(d) of the Bankruptcy Code have been satisfied.

### 17. Satisfaction of 1129 Requirements

QQ. For all the above reasons, the Plan satisfies all the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

### L. Section 1125(e)-Good Faith Solicitation

RR. Based on the record before the Court in the Chapter 11 Cases, the Debtors and the Committee, and their respective members, officers, directors, agents, financial advisors, attorneys, advisors, employees, equity holders, partners, affiliates, and representatives are deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation. The Debtors and the Committee have been, are and will continue to act in good faith as they proceed to: (a) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby (including,

without limitation, the entry into and performance under the Post-Consummation Trust Agreement); and (b) take the actions authorized and directed by this Confirmation Order.

**M.    Rule 9019 Settlement of Claims and Controversies**

SS.    The provisions of the Plan constitute a good faith compromise and settlement of all claims or controversies relating to the enforcement or termination of all contractual, legal, and equitable subordination and turnover rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made pursuant to the Plan on account of such Claim. Such settlement, as reflected in the relative distributions and recoveries of Holders of Allowed Claims and Equity Interests under the Plan, (a) will save the Debtors and their estates the costs and expenses of prosecuting various disputes, the outcome of which likely would consume substantial resources of the Debtors' estates and require substantial time to adjudicate, and (b) has facilitated the creation and implementation of the Plan and benefits the Debtors' estates and creditors. Accordingly, such settlement is fair, equitable, and reasonable.

**N.    Good Faith**

TT.    The Debtors (and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents) have been, are, and will continue to act in good faith as they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order.

**O.    Releases, Exculpations, and Injunctions**

UU.    Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, releases, discharges, exculpations, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable,

were proposed in good faith, and are in the best interests of the Debtors, the Debtors' estates, the Post-Consummation Trust, and the Holders of Claims and Equity Interests. The releases of non-Debtors under the Plan and related injunctions are fair to the Holders of Claims and Equity Interests and are necessary to the proposed liquidation of the Debtors and the successful administration of their estates. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpations, and injunctions provided for in Article XI of the Plan.

## P.    Executory Contracts and Unexpired Leases

VV.    The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of their Executory Contracts pursuant to Article VI of the Plan. The Plan satisfies all requirements for the assumption of the Executory Contracts contained in the Bankruptcy Code, including, without limitation, the requirements to cure all outstanding defaults, if any. Each assumption, assumption and assignment, and rejection of an Executory Contract as provided in Article VI of the Plan is legal, valid, and binding upon the Debtors, the Post-Consummation Trust, and all non-Debtor parties to each such Executory Contract, all to the same extent as if such assumption, assumption and assignment, or rejection had been effectuated pursuant to an independent order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code.

WW.    The Debtors have provided adequate assurance of future performance for each of the assumed Executory Contracts that are being assumed, or assumed and assigned, by the Debtors pursuant to the Plan, if any. The Debtors have cured or provided adequate assurance that the Debtors will cure defaults, if any, under or relating to each of the assumed Executory Contracts that are being assumed, or assumed and assigned, by the Debtors pursuant to the Plan. As a result, the requirements of section 365 of the Bankruptcy Code have been satisfied.

### Q.  Substantive Consolidation

XX.  Substantive consolidation of the Debtors' estates is warranted because: (i) the Debtors' creditors looked to the Debtors to satisfy each others' debts; and (ii) the Debtors' financial records are so intertwined that substantive consolidation will benefit all of the Debtors' creditors, thereby satisfying both applicable tests for substantive consolidation under governing Third Circuit law.

### R.  Transfers by Debtors; Vesting of Assets

YY.  Except as otherwise provided in the Plan or this Confirmation Order, on or after the Effective Date, all property of the Debtors' bankruptcy estates shall vest in the Post-Consummation Trust free and clear of all Claims, Equity Interests, Liens, encumbrances, charges, and other interests. From and after the Effective Date, the Post-Consummation Trust may acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, subject to the terms and conditions of the Plan and the Post-Consummation Trust Agreement.

### S.  Conditions to Confirmation

ZZ.  Entry of this Confirmation Order shall satisfy the conditions set forth in Article X.A of the Plan.

### T.  Retention of Jurisdiction

AAA.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law. The Bankruptcy Court

properly may retain jurisdiction over the matters set forth in Article XIII of the Plan and other applicable provisions of the Plan.

## II. ORDER

Based on the foregoing, it is hereby ORDERED:

### A. Order

1. For the reasons set forth herein, all requirements for Confirmation of the Plan have been satisfied. Accordingly, the Plan is hereby confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the exhibits to the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, the exhibits to the Plan, and all other relevant and necessary documents shall be effective and binding as of the Effective Date of the Plan. A copy of the Plan is attached hereto as Exhibit A.

### B. Objections

2. To the extent that any objections, reservations of rights, statements or joinders to confirmation have not been resolved, withdrawn, waived, or settled prior to entry of the Confirmation Order or otherwise resolved or stated on the record at the Confirmation Hearing, they are hereby overruled on their merits.

### C. Findings of Fact and Conclusions of Law

3. The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, and the findings and conclusions of the Bankruptcy Court at the Confirmation Hearing are incorporated herein by reference. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

### D. Plan Classification Controlling

4. The terms of the Plan shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims entitled to vote on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

### E. Compromise and Settlement

5. As of the Effective Date, any and all contractual, legal and equitable subordination rights relating to the allowance, classification, and treatment of Allowed Claims and Equity Interests and their respective distribution and treatment under the Plan are settled, compromised and released. In addition, to the extent set forth in the Plan, any and all Causes of Action, whether under the Bankruptcy Code or otherwise under non-applicable law between the Debtors, on the one hand, and the Debtor Releasees, on the other hand, are settled, compromised and released pursuant to the Plan as further set forth in the Plan. The releases by all Entities of all such contractual, legal, and equitable subordination rights or Causes of Action that are satisfied, compromised, and settled pursuant to the Plan, are hereby approved in their entirety.

**F.** **The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

6.     The following releases, injunctions, exculpations, and related provisions set forth

in Article XI of the Plan are essential provisions of the Plan and are hereby approved and

authorized in their entirety:

i.     **Debtor Release**

UPON SIX MONTHS AFTER THE EFFECTIVE DATE, IF THE POST CONFIRMATION TRUST HAS NOT INSTITUTED AN ACTION AGAINST THE DEBTOR RELEASEES, FOR GOOD AND VALUABLE CONSIDERATION (INCLUDING FOR SERVICES PERFORMED BY THE DEBTORS' DIRECTORS AND OFFICERS DURING THESE CHAPTER 11 CASES), THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTORS (IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS AND DEBTORS IN POSSESSION) WILL BE DEEMED TO RELEASE FOREVER, WAIVE, AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES (OTHER THAN THE RIGHTS OF THE DEBTORS TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED HEREUNDER, AND LIABILITIES ARISING AFTER THE EFFECTIVE DATE IN THE ORDINARY COURSE OF BUSINESS) WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCES IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE DEBTORS, TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE (OR THE DATE OF RESIGNATION OF AN OFFICER OR DIRECTOR, IF EARLIER), THE CHAPTER 11 CASES OF THE DEBTORS, THE NEGOTIATION AND FILING OF THE PLAN, THE DISCLOSURE STATEMENT OR ANY PRIOR PLANS OF REORGANIZATION, THE FILING OF THE CHAPTER 11 CASES RELATING TO THE DEBTORS, THE PURSUIT OF CONFIRMATION OF THE PLAN OR ANY PRIOR PLANS OF REORGANIZATION, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE PLAN THAT COULD HAVE BEEN ASSERTED BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES, AGAINST THE DEBTOR RELEASEES, PROVIDED, HOWEVER, THAT THIS RELEASE SHALL NOT EXTEND TO OR COVER ANY ACTS OR OMISSIONS THAT ARISE FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD. FOR THE AVOIDANCE OF DOUBT, THE RELEASES GRANTED IN THIS ARTICLE XI.B SHALL NOT EXTEND TO OR COVER ANY DIRECTORS OR OFFICERS OF THE DEBTORS WHO WERE NOT DIRECTORS OR OFFICERS OF THE DEBTORS AS OF THE PETITION DATE,

OR ANY OF THE DEBTORS' SHAREHOLDERS OR EQUITY INTEREST HOLDERS
WHO ARE NOT DEBTOR RELEASEES.

ii.     **Exculpation**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, THE
DEBTORS, THE POST-CONSUMMATION TRUST ADMINISTRATOR, THE POST-
CONSUMMATION TRUST, THE COMMITTEE, THE MEMBERS OF THE
COMMITTEE (SOLELY IN THEIR CAPACITY AS SUCH), AND ANY OF THE
FOREGOING PARTIES' RESPECTIVE PRESENT OR FORMER MEMBERS,
OFFICERS,     DIRECTORS,     EMPLOYEES,     ADVISORS,     ATTORNEYS,
REPRESENTATIVES, FINANCIAL ADVISORS, INVESTMENT BANKERS, AGENTS
OR OTHER PROFESSIONALS AND ANY OF SUCH PARTIES' SUCCESSORS AND
ASSIGNS, SOLELY IN THEIR CAPACITIES AS SUCH, SHALL NOT HAVE OR
INCUR ANY CLAIM, ACTION, PROCEEDING, CAUSE OF ACTION, AVOIDANCE
ACTION, SUIT, ACCOUNT, CONTROVERSY, AGREEMENT, PROMISE, RIGHT TO
LEGAL REMEDIES, RIGHT TO EQUITABLE REMEDIES, RIGHT TO PAYMENT,
OR CLAIM (AS DEFINED IN BANKRUPTCY CODE SECTION 101(5)), WHETHER
KNOWN, UNKNOWN, REDUCED TO JUDGMENT, NOT REDUCED TO JUDGMENT,
LIQUIDATED, UNLIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED,
DISPUTED, UNDISPUTED, SECURED, OR UNSECURED AND WHETHER
ASSERTED OR ASSERTABLE DIRECTLY OR DERIVATIVELY, IN LAW, EQUITY,
OR OTHERWISE TO ONE ANOTHER OR TO ANY CLAIMHOLDER OR INTEREST
HOLDER, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR
RESPECTIVE     AGENTS,     EMPLOYEES,     REPRESENTATIVES,     ADVISORS,
ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS,
FOR ANY ACT OR OMISSION ORIGINATING OR OCCURRING ON OR AFTER
THE PETITION DATE THROUGH AND INCLUDING THE EFFECTIVE DATE (OR
THE DATE OF RESIGNATION OF AN OFFICER OR DIRECTOR, IF EARLIER) IN
CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE DEBTORS, THE
CHAPTER 11 CASES OF THE DEBTORS, THE NEGOTIATION AND FILING OF
THE PLAN, THE DISCLOSURE STATEMENT OR ANY PRIOR PLANS OF
REORGANIZATION, THE FILING OF THE CHAPTER 11 CASES OF THE
DEBTORS, THE PURSUIT OF CONFIRMATION OF THE PLAN OR ANY PRIOR
PLANS OF REORGANIZATION, THE CONSUMMATION OF THE PLAN, THE
ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE LIQUIDATED
AND/OR DISTRIBUTED UNDER THE PLAN.

iii.     **Indemnification**

EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR ANY CONTRACT,
INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT ENTERED
INTO IN CONNECTION WITH THIS PLAN, ANY AND ALL INDEMNIFICATION
OBLIGATIONS THAT THE DEBTORS HAVE PURSUANT TO A CONTRACT,
INSTRUMENT, AGREEMENT, CERTIFICATE OF INCORPORATION, BY-LAW,
COMPARABLE ORGANIZATIONAL DOCUMENT OR ANY OTHER DOCUMENT,
OR APPLICABLE LAW SHALL BE REJECTED AS OF THE EFFECTIVE DATE, TO

THE EXTENT EXECUTORY. NOTHING IN THIS PLAN SHALL BE DEEMED TO RELEASE THE DEBTORS' INSURERS FROM ANY CLAIMS THAT MIGHT BE ASSERTED BY COUNTER-PARTIES TO CONTRACTS OR AGREEMENTS PROVIDING THE INDEMNIFICATION BY AND OF THE DEBTORS, TO THE EXTENT OF AVAILABLE COVERAGE.

### iv. Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT: (1) HAVE BEEN RELEASED PURSUANT TO ARTICLE XI.B HEREOF, (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE XI.C HEREOF, (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE XI.D HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE XI.D), ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE

CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES RELEASED OR SETTLED PURSUANT TO THE PLAN.

## G. Administrative Claims

7.      Except as otherwise provided in Article II.A or in Article VII.C.2 of the Plan, requests for payment of Administrative Claims that were not required to be previously filed pursuant to the Initial Administrative Claims Bar Date Order must be filed and served on the Debtors no later than the first business day that is 45 days following the Effective Date (the "Administrative Claims Bar Date"). Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the foregoing sentence and do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Post-Consummation Trust, and the Post-Consummation Trust Assets and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be Filed and served on the Post-Consummation Trust and the requesting party by the later of: (i) 180 days after the Effective Date; or (ii) 180 days after the Filing of the applicable request for payment of such Administrative Claims.

8.      Requests for payment of Administrative Claims, together with accompanying documentation, must be filed with the Bankruptcy Court and delivered so as to be received no later than the Administrative Claims Bar Date to: (a) BMC Group, Inc., Attn: PHH Liquidation

Trust Claims Processing, P.O. Box 3020, Chanhassen, MN, 55317-3020, if by first class mail, or (b) BMC Group, Inc., Attn: PHH Liquidation Trust Claims Processing, 18750 Lake Drive East, Chanhassen, MN, 55317, if by hand delivery or overnight mail.

## H.     Professional Fees

9.     Retained Professionals or other entities asserting a Fee Claim before the Effective Date must file and serve on the Debtors and such other entities who are designated by the Bankruptcy Rules, this Confirmation Order, and the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to any Fee Claim must be filed and served on the Post-Consummation Trust and the requesting party by the later of: (a) 45 days after the Effective Date: or (b) 30 days after the filing of the applicable request for payment of the Fee Claim. To the extent necessary, this Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding payment of Fee Claims, including the Administrative Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 149].

## I.     Release of Liens, Claims and Equity Interests

10.     Except as expressly provided in the Plan or the Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan or its consummation, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII of the Plan, all Claims, Equity Interests, mortgages, deeds of trust, liens, and encumbrances or other security interests against the property of any Estate are fully released and discharged.

## J.     Post-Consummation Trust

11.     The provisions of the Plan related to the Post-Consummation Trust, including Article VIII, are hereby approved and incorporated by reference herein.

- 28 -

## K. Post Consummation Trust Agreement

12.     The Post-Consummation Trust Agreement is hereby approved and incorporated by reference herein. On the Effective Date, and in compliance with the provisions of the Plan and the Post-Consummation Trust Agreement, the Post-Consummation Trust Administrator will be appointed; thereafter, any successor Post-Consummation Trust Administrator shall be appointed and serve in accordance with the Post-Consummation Trust Agreement.

## L. Exemptions from Taxation

13.     Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or in connection with the Plan shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles or similar tax, real estate tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the appropriate state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. All transactions specifically provided for by the Plan, or consummated by the Debtors and approved by the Bankruptcy Court, including, without limitation: (i) the transfer of Assets to the Post-Consummation Trust; (ii) the assumptions, assignments, and sales by the Debtors of Executory Contracts and Unexpired Leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code; and (iii) settlements pursuant to Bankruptcy Rule 9019(a) under the Plan shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any stamp tax or similar tax. This Court retains jurisdiction to enforce the foregoing authorization.

**M. Documentation**

14. The Debtors and the Post-Consummation Trust, as applicable, are authorized to execute and deliver all documents, schedules, exhibits, and other agreements related to the Plan, including without limitation, the Post-Consummation Trust Agreement.

**N. Rule 9019 Settlement**

15. The provisions of the Plan constitute a good faith compromise of all Claims or controversies relating to the contractual and legal rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such an Allowed Claim. The entry of this Confirmation Order constitutes this Court's approval of the compromise or settlement of all such Claims or controversies, and this Court's finding that such compromise or settlement is in the best interests of the Debtors, their estates, and Holders of Claims, and is fair, equitable, and reasonable. This Court has found that the settlements embodied in the Plan will save the Debtors and their estates the costs and expenses of prosecuting various disputes, the outcome of which likely would consume substantial resources of the Debtors' estates and require substantial time to adjudicate. This Court also has found that such settlements have facilitated the creation and implementation of the Plan and benefit the creditors and members of the Debtors.

**O. Substantive Consolidation**

16. Pursuant to Article V.B of the Plan, on the Effective Date, the Estates and all of the debts of all of the Debtors are substantively consolidated for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes. Substantive consolidation does not: (i) alter the state of incorporation of any Debtor for purposes of determining applicable law of any of the Causes of Action; (ii) alter or impair the legal and equitable rights of the Post-Consummation Trust Administrator to enforce any of the Causes of

Action; or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

17. On and after the Effective Date, all Assets and liabilities of the Debtors shall be treated under the Post-Consummation Trust as though they were merged into the estate of PHH Liquidation Trust (f/k/a Palm Harbor Homes, Inc.), or, after the Effective Date, PHH Co. Inc., for purposes of treatment of and distributions on Claims. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

**P.     Preservation of Rights of Action**

18. Pursuant to Article VIII.G of the Plan, except as noted in the Plan or Confirmation Order and other than any releases granted in the Plan under Article XI, by this Confirmation Order, and by Final Order of the Bankruptcy Court, the Debtors and/or the Post-Consummation Trust shall have the right to prosecute any and all Causes of Action, including without limitation avoidance or recovery actions under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors, and the proceeds of such actions shall be retained by the Post-Consummation Trust. The Debtors and the Post-Consummation Trust may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Consummation Trust. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors

or the Post-Consummation Trust, as applicable, will not pursue any and all available Causes of Action against them. All rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, are expressly reserved by the Debtors or the Post-Consummation Trust, as applicable. Unless any Causes of Action against any Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or in a Final Order of the Bankruptcy Court, all Causes of Action have been reserved by the Debtors and Post-Consummation Trust for later adjudication, and, therefore no preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the entry of this Confirmation Order, the Plan, or the Effective Date. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Post-Consummation Trust. The Post-Consummation Trust, through the Post-Consummation Trust Administrator, shall retain and may exclusively enforce any and all such Causes of Action. The Debtors and the Post-Consummation Trust, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## Q.     Executory Contracts and Unexpired Leases

19.     The provisions contained in Article VI of the Plan, including, without limitation, the provisions regarding the assumption, the assumption and assignment, and rejection of the Debtors' Executory Contracts, are hereby approved pursuant to sections 365 and 1123(b) of the Bankruptcy Code and found to be fair and reasonable. Pursuant to the provisions of section 365 and 1127 of the Bankruptcy Code, each Executory Contract or Unexpired Lease shall be deemed

automatically rejected as of the Effective Date unless such Executory Contact or Unexpired Lease: (a) has previously been assumed by the Debtors by Final Order of the Bankruptcy Court; (b) is a Retained Contract; (c) is not an Assigned Contract and has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order became a Final Order after the Effective Date; (d) is the subject of a motion to assume or reject as of the effective Date; and (e) is a D&O Liability Insurance Policy (provided that such D&O Liability Insurance Policies shall be treated a set forth in Article VI.C of the Plan).

### R.    Rejection Claims Bar Date

20.    All Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases pursuant to the Plan must be filed within 30 days after the Effective Date. Any claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely filed will be forever barred for assertion against the Debtors, their Estates and property or the Post-Consummation Trust, unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.

### S.    Resolution of Contingent or Disputed Claims

21.    Except as otherwise set forth in this Confirmation Order or the Plan, on and after the Effective Date, the Post-Consummation Trust shall have the exclusive authority to file objections to, and settle, compromise, withdraw, or litigate to judgment objections to any and all Claims consistent with the Plan and the Post-Consummation Trust Agreement. Except as otherwise set forth in the Plan, from and after the Effective Date, the Post-Consummation Trust may settle, compromise or withdraw objections to any disputed Claim, without approval of the Bankruptcy Court or notice to any party, except to extent that notice to the Post-Consummation Trust Oversight Committee and/or the Post-Consummation Trust Oversight Committee's approval are required pursuant to the Plan and the Post-Consummation Trust Agreement.

**T.    Governmental Approvals Not Required**

22.    This Confirmation Order shall constitute all approvals and consents required, if
any, by the laws, rules, or regulations of any state or any other governmental authority with
respect to the implementation or consummation of the Plan and any documents, instruments, or
agreements, and any amendments or modifications thereto, and any other acts referred to in or
contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or
agreements contained therein, and any amendments or modifications of any of the foregoing.

**U.    Return of Deposits**

23.    All utilities, including any Entity that received a deposit or other form of adequate
assurance of performance pursuant to section 366 of the Bankruptcy Code during these Chapter
11 Cases (collectively, the "Deposits"), including the Deposits provided pursuant to the Final
Order (I) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Utility
Services, (II) Deeming Utility Providers Adequately Assured of Payment, and (III) Establishing
Procedures for Resolving Requests for Additional Assurance of Payment [Docket No. 157], shall
return such Deposits by Cash refund to the Post-Consummation Trust within seven (7) days
following the Effective Date.

**V.    Reports**

24.    After the Effective Date, the Debtors shall have no obligation to file with the
Bankruptcy Court or serve on any parties reports that the Debtors were obligated to file under the
Bankruptcy Code or a Bankruptcy Court order, including, without limitation, monthly operating
reports (even for those periods for which a monthly operating report was not filed prior to the
Effective Date), ordinary course professional reports, or monthly or quarterly reports for
Retained Professionals.

### W.    Automatic Stay

25.    Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date of entry of this Confirmation Order, shall remain in full force and effect until the occurrence of the Effective Date.

### X.    Provisions Regarding Distributions

26.    The provisions contained in Article VII of the Plan, including without limitation, the provisions governing distributions, are found to be reasonable and are hereby approved.

### Y.    No Distributions to Classes 5 and 6

27.    Pursuant to Article III of the Plan, Holders of Claims and Equity Interests in Class 5 (Intercompany Claims) and Class 6 (Equity Interests) shall not receive or retain any property or distributions on account of such Claims or Equity Interests under the Plan.

### Z.    Resolution of Reaser Motion for Relief from the Automatic Stay and for Adequate Protection

28.    On or before 15 days after the Effective Date (but not after December 31, 2011), the Debtors shall pay the secured claim of Vernon N. Reaser, Jr. and Gail Reaser (collectively, the "Reasers") in full in cash or certified funds, in the amount of $30,710.70 plus interest after 10/19/2011 at the rate of $4.60 per day. Upon the Reasers' receipt of timely payment in full, the Reasers' Motion for Relief from the Automatic Stay and for Adequate Protection (Docket No. 984) shall be deemed withdrawn with prejudice.

## AA. Procedures for Resolving Disputed Claims and Unresolved Claims.

29.     The provisions contained in Article IX of the Plan, including without limitation, the provisions governing the procedures for resolving Disputed Claims, are found to be reasonable and are hereby approved.

## BB. Resolution of Objections

### A.     The Texas Taxing Authorities' Objection

30.     The following Texas taxing authorities have filed objections to the Plan (collectively, the "Texas Taxing Authorities"): (i) Texas Comptroller of Public Accounts [Docket No. 1014]; (ii) Travis County [Docket No. 950]; and (iii) the Texas Ad Valorem Claimants that informally objected to the Plan. In resolution of the Texas Taxing Authorities' objections, the Proponents agree that notwithstanding anything in the Plan to the contrary: (i) with respect to any tax, interest, or penalty arising after the Petition Date that is entitled to administrative expense status under 11 U.S.C. § 503(b)(1)(B), the Debtors or the Post-Consummation Trust, as applicable, shall pay such Administrative Claims as and when due in the ordinary course of business without the necessity of the Texas Taxing Authorities filing any pleading or proof of claim in these Chapter 11 Cases; and (ii) with respect to any tax, interest, or penalty arising prior to the Petition Date, such claims shall be paid as and when Allowed under the Plan on or as soon as reasonably practicable after the Effective Date, or in accordance with Article VII of the Plan if such claim is a Disputed Claim, as either an Other Secured Claim or a Priority Tax Claim and consistent therewith, such claims shall be entitled to interest as may be provided in various sections of the Bankruptcy Code (11 U.S.C. §§ 506(b), 511, 1129 (as applicable)) and as provided under the Plan.

31.     In addition to the above paragraph, regarding the ad valorem taxes owed to the Allowed Texas Ad Valorem Tax Claimants defined as the "Objecting Texas Tax Authorities" in

paragraph 12 of the Final DIP Order, the liens securing the 2011 taxes asserted by the Texas Ad Valorem Tax Claimants shall remain affixed to that segregated account established pursuant to paragraph 12 of the Final DIP Order or such other account as may be established subsequent to the Effective Date by the Post-Consummation Trust with the same priority and rights as given under the Final DIP Order.

32.     The Texas Ad Valorem Tax Claimants agree to waive accumulated interest for those 2010 taxes paid in February of 2011, and the Debtors shall pay all other delinquent taxes along with 9% total interest if paid no later than December 30, 2011. If not paid as of that date, all remaining accounts shall be entitled to statutory interest as provided by 11 U.S.C. §§ 511, 506(b), 1129 until paid. These claims for delinquent taxes shall remain secured in the proceeds of the sale of their collateral as provided in paragraph 41 of the Final Sale Order.

33.     Notwithstanding anything to the contrary stated herein or in the Plan, Travis County shall retain its tax liens, if any, in estate property and in proceeds of estate property until the tax claims of Travis County are paid in full.

34.     The Plan's third-party non-Debtor limitation of liability, exculpation, injunction, and release provisions shall not apply to the Texas Comptroller of Public Accounts.

**B.      The Internal Revenue Service's Objection**

35.     The Internal Revenue Service (the "IRS") filed an objection to the Plan [Docket No. 1011]. In resolution of the IRS' objection, the Proponents agree that notwithstanding any provision to the contrary in the Plan, this Order, and any implementing Plan documents, nothing shall (1) affect the ability of the Internal Revenue Service (the "IRS") to pursue, to the extent allowed by non-bankruptcy law, any non-debtors for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; or (2) require the IRS to file

an administrative expense claim in order to receive payment for any liability described in

503(b)(1)(B) and 503(b)(1)(C) of the Bankruptcy Code in accordance with section 503(b)(1)(D)

of the Bankruptcy Code. To the extent the Allowed IRS Priority Tax Claims, (including any

penalties, interest, or additions to tax entitled to priority under the Bankruptcy Code) are not paid

in full in cash on the Effective Date, the Allowed IRS Priority Tax Claims shall be paid with

interest from the Effective Date at the rate and method set forth in 26 U.S.C. sections 6621 and

6622. IRS administrative expense claims shall accrue interest and penalties as provided by non-

bankruptcy law until paid in full.

## CC.    **Record Date**

36.    The record date for determining which Holders of Allowed Class 4 General

Unsecured Claims are eligible to receive distributions pursuant to the Plan shall be the Effective

Date (the "Class 4 Distribution Record Date"). On the Class 4 Distribution Record Date, the

Claims Register shall be closed with respect to Class 4 General Unsecured Claims and any party

responsible for making distributions to Holders of Allowed Class 4 General Unsecured Claims

shall be authorized and entitled to recognize only those record Holders listed on the Claims

Register as of the close of business on the Class 4 Distribution Record Date. Notwithstanding

the foregoing, if a Claim is transferred twenty or fewer days before the Class 4 Distribution

Record Date, the Distribution Agent shall make distributions to the transferee only to the extent

practical and in any event only if the relevant transfer form contains an unconditional and

explicit certification and waiver of any objection to the transfer by the transferor.

## DD.    **Binding Effect**

37.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon

the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and

enforceable and deemed binding upon: (a) the Debtors; (b) any and all Holders of Claims and

Holders of Equity Interests (notwithstanding whether any such Holders failed to vote to accept or reject the Plan, voted to reject the Plan, or were deemed to reject the Plan); (c) all Entities that are parties to or are subject to the settlements, compromises, discharges, and the releases and injunctions described in the Plan or herein; (d) any and all Entities acquiring property under the Plan; (e) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors; (f) any Entity making an appearance in these Chapter 11 Cases; (g) any other party in interest; and (h) the Post-Consummation Trust.

38.     The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign of such Entity.

## EE.     Discharge of Debtors' Directors and Officers

39.     Upon the Effective Date, (a) the members of the board of directors or managers, as the case may be, and all officers of each of the Debtors shall be deemed to have resigned; and (b) each of the Debtors shall cause all its Assets and the Assets of its Estate to be transferred to the Post-Consummation Trust.  In connection with the transfer of their Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Post-Consummation Trust will vest in the Post-Consummation Trust and its representatives, and the Debtors and the Post-Consummation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

40.     Upon transfer of the Assets, the Debtors and their officers and directors shall have no further duties or responsibilities in connection with the implementation of the Plan.

**FF.** **Notice of Effective Date**

41.     Within ten business days after the occurrence of the Effective Date, the Post-Consummation Trust shall serve notice of the occurrence of the Effective Date of the Plan, substantially in the form annexed hereto as Exhibit B (the "Effective Date Notice") upon all parties that received notice of the Confirmation Hearing. The form of Effective Date Notice is hereby approved.

**GG.** **References to Plan Provisions**

42.     References to Articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein. The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

**HH.** **Governing Law**

43.     Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**II.** **Authorization to Take Acts Necessary to Implement Plan**

44.     Pursuant to section 1142(b) of the Bankruptcy Code, each of the Debtors and the Post-Consummation Trust hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable, or appropriate to comply with or implement the Plan and any matters under the Plan, and all documents, instruments, and agreements related

thereto, and the obligations thereunder shall constitute legal, valid, binding, and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any members' or board of directors' approval. Each of the Debtors and the Post-Consummation Trust are hereby authorized and empowered to take such actions, to perform all acts, to make, execute, file, and deliver all instruments and documents, and to pay all fees and expenses as set forth in the documents relating to the Plan, and that may be required or necessary for its performance thereunder without the need for any members' or board of directors' approval. On the Effective Date, the Post-Consummation Trust Administrator is authorized and empowered to issue, execute, file, and deliver the agreements, documents, securities, and instruments contemplated by the Plan, in the name of and on behalf of the Post-Consummation Trust. Each of the Debtors and the Post-Consummation Trust and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or members of the Debtors, including the dissolution of the Debtors.

## JJ. Severability

45.     The provisions of the Plan and Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent, except to the extent that any modification does not affect the legal or economic substance of the transactions contemplated by or the provisions of the Plan.

## KK. Effect of Conflict Between Plan and Confirmation Order

46.     If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

## LL. Corporate Name Change

47.     The name of Debtor PHH Liquidation Trust is changed to "PHH Co., Inc."

48.     Henceforth, the case caption in these jointly-administered cases shall be amended

as follows:

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHH Co., Inc., etal.,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

49.     A notation substantially similar to the following notation shall be entered on the

docket each of the Debtors' cases to reflect the change of the name of Debtor PHH Liquidation

Trust:

> An Order has been entered in this case directing changes in the case
> caption to reflect a change in the corporate name of a debtor in these
> jointly-administered chapter 11 cases, and henceforth, the debtor f/k/a
> PHH Liquidation Trust and Palm Harbor Homes, Inc. in Case No. 10-
> 13850 (CSS) shall now be known as "PHH Co., Inc." The docket in Case
> No. 10-13850 (CSS) should still be consulted for all matters affecting this
> case.

## MM.  **Effect of Non Occurrence of Conditions to Consummation**

50.     If the consummation of the Plan does not occur pursuant to Article X.B of the

Plan, then: (i) this Confirmation Order shall be of no further force and effect; (ii) no distributions

under the Plan shall be made; (iii) the Debtors and all Holders of Claims and Equity Interests

shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation

Date as though the Confirmation Date had never occurred; and (iv) all the Debtors' obligations

with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in

the Plan or this Confirmation Order shall be deemed to constitute a waiver or release of any

---

[1]The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, are: PHH Co., Inc. (f/k/a PHH Liquidation Trust and Palm Harbor Homes, Inc.), a Florida Corporation
(6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC
(8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the
Debtors' corporate headquarters and service address is: 15305 Dallas Parkway, Suite 700, Addison, Texas75001.

claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors. Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it upon counsel for the Committee and the United States Trustee for the District of Delaware.

## NN. Reversal

51.    If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and any related documents or any amendments or modifications thereto.

## OO. Applicable Non-Bankruptcy Law

52.    Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

## PP. Effectiveness of Order

53.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d), or any other provision of the Bankruptcy Code or the Bankruptcy Rules, this Confirmation Order shall be effective immediately upon its entry and shall not be stayed. This Confirmation Order is and shall be deemed to be a separate order with respect to each of the Debtors for all purposes. This

Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

**QQ.** **The Record**

54.     The record of the Confirmation Hearing is closed.

**RR.** **Retention of Jurisdiction**

55.     Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in the Plan and this Confirmation Order over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction over those matters set forth in Article XIII of the Plan.

Dated: Wilmington, Delaware
       _____ ___, 2011

_____
United States Bankruptcy Judge