# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PALM HARBOR HOMES, INC., <u>et al.</u>,[1] | ) | Case No. 10-13850 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |

---

## JOINT PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND COMMITTEE FOR PALM HARBOR HOMES, INC. AND ITS RELATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

---

David W. Wirt
Aaron C. Smith
Courtney E. Barr
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago, Illinois 60606-4410
Telephone: (312) 443-0485
Fax: (312) 443-0336

and

Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
POLSINELLI SHUGHART PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Fax: (302) 252-0921

Co-Counsel to the Debtors

Dated August 5, 2011

Laura Davis Jones (Bar No. 2436)
Robert J. Feinstein (NY Bar No. RF-2836)
Shirley S. Cho (CA Bar No. 192616)
James E. O'Neill (Bar No. 4042)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to the Official Committee of
Unsecured Creditors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Palm Harbor Homes, Inc., a Florida corporation (6634); Palm Harbor Albemarle, LLC (1014); Nationwide Homes, Inc. (4881); Palm Harbor Real Estate, LLC (8234); Palm Harbor GenPar, LLC (0198); and Palm Harbor Manufacturing, LP (0199). The location of the Debtors' corporate headquarters and service address is: Alvarez & Marsal, c/o Palm Harbor Winddown; 2100 Ross Avenue, 21st Floor, Dallas, TX 75201.

# TABLE OF CONTENTS

ARTICLE I.     RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ................................................. 1

     A.     Rules of Interpretation, Computation of Time and Governing Law ................. 1
     B.     Defined Terms ................................................................................................ 2

ARTICLE II.     ADMINISTRATIVE CLAIMS, 3.25% CONVERTIBLE SENIOR NOTES INDENTURE TRUSTEE CLAIMS, AND PRIORITY TAX CLAIMS ................................................................................................ 11

     A.     Administrative Claims ................................................................................. 11
     B.     3.25% Convertible Senior Notes Indenture Trustee Claims ....................... 12
     C.     Priority Tax Claims ...................................................................................... 12

ARTICLE III.     CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ................................................................ 12

     A.     Administrative Claims and Priority Tax Claims ......................................... 12
     B.     Summary ...................................................................................................... 12
     C.     Classification and Treatment of Claims and Equity Interests ..................... 13
     D.     Special Provision Governing Unimpaired Claims ...................................... 16

ARTICLE IV.     ACCEPTANCE OR REJECTION OF THE PLAN ....................................... 16

     A.     Presumed Acceptance of Plan ..................................................................... 16
     B.     Voting Classes ............................................................................................. 16
     C.     Acceptance by Impaired Classes of Claims ............................................... 16
     D.     Deemed Rejection of Plan ........................................................................... 16
     E.     Cram Down .................................................................................................. 16

ARTICLE V.     MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 17

     A.     General ......................................................................................................... 17
     B.     Substantive Consolidation ........................................................................... 17
     C.     Post-Consummation Trust ........................................................................... 17
     D.     Further Actions ............................................................................................ 18
     E.     Sources of Cash for Plan Distributions ....................................................... 18
     F.     Release, of Liens, Claims and Equity Interests .......................................... 18
     G.     Exemption from Certain Transfer Taxes ..................................................... 18
     H.     Cancellation of 3.25% Convertible Senior Notes and Equity Interests ........... 19

ARTICLE VI.     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................................................................................... 20

     A.     Assumption and Rejection of Executory Contracts and Unexpired Leases .......................................................................................................... 20
     B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases .......................................................................................................... 20
     C.     Assumption of D&O Insurance Policies ..................................................... 21
     D.     Modifications, Amendments, Supplements, Restatements or Other Agreements .................................................................................................. 21

CHI1 1771246v.7

E.     Reservation of Rights ..................................................................................21

ARTICLE VII.    PROVISIONS GOVERNING DISTRIBUTIONS ..........................................21

A.     Distributions on Account of Claims Allowed as of the Effective Date ...........21
B.     Distributions on Account of Claims Allowed After the Effective Date ..........22
C.     Delivery and Distributions and Undeliverable or Unclaimed
Distributions ...............................................................................................22
D.     Compliance with Tax Requirements/Allocations .............................................25
E.     Timing and Calculation of Amounts to Be Distributed ...................................25
F.     Setoffs ..........................................................................................................26
G.     Surrender of Canceled Instruments or Securities.............................................26

ARTICLE VIII.   THE POST-CONSUMMATION TRUST AND THE POST-
CONSUMMATION TRUST ADMINISTRATOR.........................................27

A.     Establishment of the Post-Consummation Trust...............................................27
B.     Assets to the Post-Consummation Trust ...........................................................27
C.     Distribution; Withholding ..................................................................................28
D.     Duration of the Post-Consummation Trust .......................................................28
E.     Post-Consummation Trust Administrator ..........................................................28
F.     Federal Income Taxation of the Post-Consummation Trust .............................31
G.     Preservation of Rights of Action.......................................................................32
H.     Insurance ............................................................................................................33
I.     Disputed Claims Reserve ...................................................................................33
J.     Exculpation; Indemnification .............................................................................33

ARTICLE IX.    PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS .....................33

A.     Resolution of Contingent or Disputed Claims ..................................................33
B.     Claims Allowance .............................................................................................34
C.     Disallowance of Claims .....................................................................................34
D.     Amendments to Claims ......................................................................................35
E.     Claims Register ..................................................................................................35

ARTICLE X.     CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN .................................................................35

A.     Conditions Precedent to Confirmation...............................................................35
B.     Conditions Precedent to Consummation............................................................35
C.     Waiver of Conditions .........................................................................................36
D.     Effect of Non Occurrence of Conditions to Consummation.............................36

ARTICLE XI.    SETTLEMENT, RELEASE, INJUNCTION AND RELATED
PROVISIONS ...................................................................................................36

A.     Compromise and Settlement .............................................................................36
B.     Debtor Release ...................................................................................................37
C.     Exculpation ........................................................................................................38
D.     Indemnification ..................................................................................................38
E.     Injunction ...........................................................................................................39

ARTICLE XII.    BINDING NATURE OF PLAN ..................................................................40

ARTICLE XIII.   RETENTION OF JURISDICTION ...........................................................40

ARTICLE XIV.    MISCELLANEOUS PROVISIONS ...........................................................42

    A.   Dissolution of the Committee ...........................................................................42
    B.   Payment of Statutory Fees ................................................................................42
    C.   Modification of Plan .........................................................................................42
    D.   Revocation of Plan ............................................................................................42
    E.   Successors and Assigns .....................................................................................42
    F.   Reservation of Rights ........................................................................................43
    G.   Section 1146 Exemption ....................................................................................43
    H.   Further Assurances ............................................................................................43
    I.   Severability .......................................................................................................43
    J.   Service of Documents ........................................................................................43
    K.   Filing of Additional Documents ........................................................................44

CHI1 1771246v.7

**JOINT PLAN OF LIQUIDATION PROPOSED BY DEBTORS AND COMMITTEE FOR PALM HARBOR HOMES, INC. AND ITS RELATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Palm Harbor Homes, Inc. and its related debtors, as debtors and debtors in possession in the above-captioned cases, together with the Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 Cases hereby respectfully propose the following joint plan of liquidation under chapter 11 of the Bankruptcy Code:

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

*A.      Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware, without giving effect to the principles of conflict of laws thereof.

1

*B.     Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.      *"3.25% Convertible Senior Notes"* means the 3.25% Convertible Senior Notes due 2024, issued by Palm Harbor Homes, Inc. pursuant to the 3.25% Convertible Senior Notes Indenture.

2.      *"3.25% Convertible Senior Notes Claim"* means the Claim filed by the 3.25% Convertible Senior Notes Indenture Trustee regarding Claims arising under the 3.25% Convertible Senior Notes Indenture, which has been designated as Claim Number 1151 on the Claims Register.

3.      *"3.25% Convertible Senior Notes Indenture"* means that certain indenture, dated as of May 11, 2004, among Palm Harbor Homes, Inc., as issuer, and American Stock Transfer & Trust Company, as trustee, as the same may have been amended from time to time.

4.      *"3.25% Convertible Senior Notes Indenture Trustee"* means American Stock Transfer & Trust Company.

5.      *"Administrative Claim"* means any Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the respective Estates and operating the businesses of the Debtors; (b) Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§ 1911-30; and (d) Claims arising under section 503(b)(9) of the Bankruptcy Code.

6.      *"Administrative Claims Bar Date"* means, except as otherwise provided herein, (a) July 18, 2011 for those Entities required to File an Administrative Claim pursuant to the Initial Administrative Claims Bar Date Order, and (b) the first Business Day that is 45 days following the Effective Date for all Entities that were not required to File an Administrative Claim pursuant to the Initial Administrative Claims Bar Date Order.

7.      *"Affiliate"* has the meaning set forth at section 101(2) of the Bankruptcy Code.

8.      *"Allowed"* means with respect to Claims: (a) any Claim proof of which is timely Filed by the applicable Claims Bar Date (or for which Claim under the Bankruptcy Code or Final Order of the Bankruptcy Court a Proof of Claim is or shall not be required to be Filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim Allowed pursuant to the Plan; provided, however, that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to any Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, provided further, however, that a Claim may be deemed Allowed at any time in the sole discretion of the Post Consummation Trust Administrator without regard to the passage of the applicable Claims

Bar Date.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Post-Consummation Trust and without further notice to or action, approval or order of the Bankruptcy Court.  An "Allowed" Claim will not include interest on such Claim from and after the Petition Date, other than as permitted under the Bankruptcy Code, for purposes of computing distributions under the Plan.

9.      *"Assets"* means all tangible and intangible asset of every kind and nature of the Debtors and their Estates, and all proceeds thereof, existing as of the Effective Date.

10.     *"Assigned Contracts"* means those Executory Contracts and Unexpired Leases assumed by the Debtors and assigned to the Purchaser pursuant to the Purchase Agreement.

11.     *"Assumed Liabilities"* has the meaning set forth in the Purchase Agreement.

12.     *"Bankruptcy Code"* means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

13.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the order of the United States District Court for the District of Delaware, the United States District Court for the District of Delaware.

14.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

15.     *"Beneficiaries"* means the Holders of Claims that are to be satisfied through post-Effective Date distributions from the Post-Consummation Trust as provided herein.

16.     *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined by Bankruptcy Rule 9006(a)).

17.     *"Cash"* means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and Cash Equivalents.

18.     *"Cash Equivalents"* means equivalents of Cash in the form of readily marketable securities or instruments issued by an Entity, including readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "P2" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one year, at the then generally prevailing rates of interest for like amounts and like periods.

19.     *"Causes of Action"* means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses,

recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, through and including the Effective Date, including Chapter 5 Claims.

20. *"Chapter 5 Claims"* means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including, but not limited to, actions or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552, and 553(b) of the Bankruptcy Code.

21. *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the chapter 11 case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22. *"Claim"* means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

23. *"Claims Bar Date"* means, as applicable, (a) the General Bar Date, (b) the Government Claims Bar Date, (c) the Administrative Claims Bar Date, or (d) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for filing such Claims.

24. *"Claims Objection Bar Date"* means, as applicable: (a) 180 days after the Effective Date; or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court or the relevant parties for objecting to such Claims or as extended by appropriate further order of the Bankruptcy Court.

25. *"Claims Register"* means the official register of Claims maintained by the Voting and Claims Agent.

26. *"Class"* means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

27. *"Collateral"* means any property or interest in property of the estate of any Debtors subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code or applicable law.

28. *"Committee"* means the official committee of unsecured creditors appointed by the United States Trustee in the Chapter 11 Cases on December 14, 2010, pursuant to section 1102 of the Bankruptcy Code, comprising the Committee Members, and as the same may have been reconstituted from time to time.

CHI1 1771246v.7

29.     *"Committee Members"* means the current members of the Committee, namely: (a) American Stock Transfer & Trust Company LLC as 3.25% Convertible Senior Notes Indenture Trustee; (b) AQR Absolute Return Master Account, LP c/o CNH Partners; (c) Greenwood Capital, LP; and (d) Atlantic Service & Supply LLC.

30.     *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article X hereof having been (a) satisfied or (b) waived pursuant to Article X.C hereof.

31.     *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

32.     *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

33.     *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

34.     *"Consummation"* means the occurrence of the Effective Date.

35.     *"Cure Claim"* means a Claim based upon a default by one or more of the Debtors on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under sections 365 or 1123 of the Bankruptcy Code.

36.     *"D&O Liability Insurance Policies"* means, collectively, all insurance policies for directors' and officers' liability maintained by the Debtors as of the Petition Date, including but not limited to the Directors & Officers and Corporate Liability Insurance Policy between Allied World National Assurance Company and the Debtors (Policy No. 0305-4457), the Excess Insurance Policy between Continental Casualty Company and the Debtors (Policy No. 287313860), as the same may have been extended from time to time.

37.     *"Debtor"* means one of the Debtors in its individual capacity as a debtor and as a debtor in possession in these Chapter 11 Cases.

38.     *"Debtor Release"* means the release given by the Debtors to the Debtor Releasees as set forth in Article XI.B hereof.

39.     *"Debtor Releasees"* means (i) the directors and officers of the Debtors as of the Petition Date and through and including the Effective Date, but only in their capacity as directors and officers of the Debtors; (iii) any member of the Committee as of the Petition Date in their capacity as a member of the Committee; and (iii) any of the representatives, agents, officers, directors, employees, advisors, attorneys or other Professionals of the foregoing or of the Debtors, but only in their representative capacity on behalf of the Debtors.

CHI1 1771246v.7

40.     *"Debtors"* means, collectively, Palm Harbor Homes, Inc., Palm Harbor Albemarle, LLC, Nationwide Homes, Inc., Palm Harbor Real Estate, LLC, Palm Harbor GenPar, LLC, and Palm Harbor Manufacturing, LP.

41.     *"Debtors in Possession"* means, collectively, the Debtors, as debtors in possession in these Chapter 11 Cases.

42.     *"Disclosure Statement"* means the Disclosure Statement for the Joint Plan of Liquidation Proposed by Debtors and Committee for Palm Harbor Homes, Inc. and its Related Debtors Under Chapter 11 of the Bankruptcy Code*,* as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

43.     *"Disputed Claim"* means, with respect to any Claim, any Claim that is not yet Allowed, not set forth on the Debtors' Schedules, or is the subject of an objection by the applicable Claims Objection Deadline.

44.     *"Disputed Claims Reserve"* means a reserve for any distributions set aside by the Post-Consummation Trust Administrator subject to approval of the Post-Consummation Trust Oversight Committee on account of contingent or Disputed Claims.

45.     *"Distribution Agent"* means any Entity or Entities chosen by the Post-Consummation Trust Administrator subject to the terms of the Post-Consummation Trust Agreement to make or facilitate distributions provided by the Plan. With respect to distributions made on account of 3.25% Convertible Senior Notes Claims, the Disbursing Agent shall be the 3.25% Convertible Senior Notes Claims Indenture Trustee or agent or designee thereof.

46.     *"DTC"* means the Depository Trust Company.

47.     *"Effective Date"* means the day that is the first Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article X.B hereof have been (i) satisfied, or (ii) waived pursuant to Article X.C hereof.

48.     *"Entity"* means an entity as defined in section 101(15) of the Bankruptcy Code.

49.     *"Equity Interest"* means any share of common stock, preferred stock or other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately prior to the Effective Date, including any Claim subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising therefrom; provided, however, that Equity Interest does not include any Intercompany Interest.

50.     *"Estate"* means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

51.     *"Excluded Assets"* has the meaning set forth in the Purchase Agreement.

52.     *"Exculpation"* means the exculpation provision set forth in Article XI.D hereof.

53.     *"Executory Contract"* means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code that has not previously been rejected by the Debtors in these Chapter 11 Cases.

54.     *"Fee Claim"* means a Claim under sections 328, 330(a), 331, 363 or 503 of the Bankruptcy Code for legal, financial, advisory, accounting and other services and reimbursement of expenses rendered prior to the Effective Date by any Retained Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order.

55.     *"File"* or *"Filed"* means file, filed or filing with the Bankruptcy Court or its authorized designee in these Chapter 11 Cases.

56.     *"Final Order"* means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek *certiorari* or move for a new trial, reargument or rehearing has expired and no appeal or petition for *certiorari* or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which *certiorari* was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

57.     *"General Bar Date"* means April 18, 2011.

58.     *"General Unsecured Claim"* means any unsecured Claim against any Debtor that is not an Administrative Claim, Fee Claim, Priority Tax Claim, Other Priority Claim, 3.25% Convertible Senior Notes Claim, Section 510(b) Claim, or Intercompany Claim.

59.     *"Government Claims Bar Date"* means May 28, 2011.

60.     *"Holder"* means an Entity holding a Claim or an Equity Interest.

61.     *"Impaired"* means any Claim in an Impaired Class.

62.     *"Impaired Class"* means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

63.     *"Indemnification"* means the indemnification provision set forth in Article XI.E hereof

64.     *"Indemnified Parties"* means, collectively, the Debtors and each of their respective current and former officers, directors and employees, each in their respective capacities as such.

CHI1 1771246v.7

65. "*Initial Administrative Claims Bar Date Order*" means the Order Establishing an Administrative Claim Bar Date for Filing Proofs of Administrative Claim and Approving Form, Manner and Sufficiency of Notice Thereof entered by the Court on June 3, 2011 [Docket No. 668].

66. "*Intercompany Claim*" means any Claim of a Debtor against another Debtor.

67. "*Intercompany Interest*" means an equity interest in a Debtor held by another Debtor or an equity interest in a Debtor held by an Affiliate of a Debtor.

68. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

69. "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

70. "*Other Secured Claim*" means any Claim that is secured by a Lien on Collateral to the extent of the value of the Holder of the Claim's interest in such Collateral.

71. "*Palm Harbor Homes, Inc.*" means Debtor Palm Harbor Homes, Inc., a Florida corporation.

72. "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

73. "*Petition Date*" means November 29, 2010, which is the date that the Debtors commenced the Chapter 11 Cases.

74. "*Plan*" means this Joint Plan of Liquidation Proposed by Debtors and Committee For Palm Harbor Homes, Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code dated as of the date hereof, as amended, supplemented or modified from time to time, and including the Plan Supplement, which is incorporated herein by reference.

75. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules and exhibits to be Filed prior to the Confirmation Hearing, as amended, supplemented or modified from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules including the Post-Consummation Trust Agreement.

76. "*Post-Consummation Trust*" means that certain trust to be created on the Effective Date in accordance with the provisions of Article VIII hereof and the Post-Consummation Trust Agreement.

77. "*Post-Consummation Trust Administrator*" means Brian Cejka of Alvarez & Marsal North America, LLC, to be retained as of the Effective Date, as the fiduciary responsible for implementing the applicable provisions of the Plan and administering the Post-Consummation Trust in accordance with the Plan and the Post-Consummation Trust Agreement, and any successor appointed in accordance with the Post-Consummation Trust Agreement, subject to the oversight and direction of the Post-Consummation Trust Oversight Committee. As appropriate, references to the Post-Consummation Trust Administrator shall include any

Distribution Agent appointed pursuant to the terms of this Plan or the Post-Consummation Trust Agreement.

78. *"Post-Consummation Trust Agreement"* means that certain trust agreement in form and substance attached hereto as Exhibit A that, among other things, (a) establishes and governs the Post-Consummation Trust, (b) sets forth the powers, duties and responsibilities of the Post-Consummation Trust Administrator and the Post-Consummation Trust Oversight Committee, and (c) provides for the liquidation and distribution of proceeds of the Post-Consummation Trust Assets.

79. *"Post-Consummation Trust Assets"* means all Assets of the Debtors as of the Effective Date, including but not limited to, the Causes of Action, any Excluded Assets that have not been divested or abandoned by the Debtors as of the Effective Date, and all other property of the Debtors and their Estates, and each of them, which shall be transferred by the Debtors to the Post-Consummation Trust on the Effective Date.

80. *"Post-Consummation Trust Oversight Committee"* means the committee comprised of each of the Committee Members with the supervisory powers set forth in this Plan and the Post-Consummation Trust Agreement over the Post-Consummation Trust.

81. *"Priority Tax Claim"* means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

82. *"Proof of Claim"* means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

83. *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class, provided, however that with respect to Holders of Allowed 3.25% Convertible Senior Notes Claims in Class 3 and Holders of Allowed General Unsecured Claims in Class 4, the term Pro Rata means the proportion that an Allowed Claim in each such Class bears to the aggregate amount of all Allowed Claims in Class 3 and Class 4.

84. *"Proponents"* mean the Debtors and the Committee.

85. *"Purchase Agreement"* means that certain Amended and Restated Asset Purchase Agreement by and among the Debtors and the Purchaser, dated as of March 1, 2011, as approved by the Sale Order.

86. *"Purchaser"* means Palm Harbor Homes, Inc., a Delaware corporation.

87. *"Record Date"* means the close of business on [_____], 2011.

88. *"Retained Contracts"* means those Executory Contracts and Unexpired Leases to be assumed by the Debtors, which Retained Contracts shall be set forth in the Plan Supplement.

89. *"Retained Professional"* means any Entity either (a) employed in these Chapter 11 Cases pursuant to a Final Order in accordance with section 327 of the Bankruptcy Code and

to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

90.     *"Sale Order"* means that certain Order Pursuant to 11 U.S.C. §§ 363 and 365 (A) Authorizing and Approving Asset Purchase Agreement By and Among the Debtors, as Sellers, and Palm Harbor Homes, Inc., a Delaware Corporation, as Purchaser, Free and Clear of All Liens, Claims, Encumbrances and Interests; (B) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith; and (C) Granting Related Relief [Docket No. 354] entered by the Bankruptcy Court on March 4, 2011 that, among other things, approved the Sale Transaction with the Purchaser.

91.     *"Sale Transaction"* means that transaction between the Debtors and the Purchaser as set forth in the Purchase Agreement.

92.     *"Schedules"* mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms as the same may have been amended, modified or supplemented from time to time.

93.     *"Securities Act"* means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as amended, or any similar federal, state or local law.

94.     *"Securities Exchange Act"* means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a-78nn, as amended.

95.     *"Senior Claims"* means and includes any (a) Administrative Claims, (b) Fee Claims, (c) Priority Tax Claims, (d) Other Priority Claims, and (e) Other Secured Claims.

96.     *"Transferred Assets"* shall have the meaning set forth in the Purchase Agreement.

97.     *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

98.     *"Unimpaired"* means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

99.     *"Unimpaired Class"* means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

100.     *"Voting and Claims Agent"* means BMC Group, Inc.

# ARTICLE II.

## ADMINISTRATIVE CLAIMS, 3.25% CONVERTIBLE SENIOR NOTES INDENTURE TRUSTEE CLAIMS, AND PRIORITY TAX CLAIMS

A. *Administrative Claims*

    1.    <u>Administrative Claims</u>

Except as otherwise provided herein, subject to sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Claim, including an Allowed Fee Claim, will be paid the full amount of such Allowed Claim:(a) in Cash on or as soon as reasonably practicable after the Effective Date, or if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (b) upon such other terms as may be agreed upon by such Holder and the Debtors; or (c) as otherwise ordered by the Bankruptcy Court.

Except as otherwise provided in this Article II.A or in Article VII.C.2, unless previously filed, requests for payment of Administrative Claims must be filed and served pursuant to the procedures specified in, as applicable, the Initial Administrative Claims Bar Date Order (for those Entities required to file an Administrative Claim pursuant to the Administrative Claims Bar Date Order) or the Confirmation Order (for those entities not required to file an Administrative Claim pursuant to the Initial Administrative Claim Bar Date Order), and in each case prior to the applicable Administrative Claims Bar Date. Holders of Administrative Claims that are required to by the foregoing sentence and do not File and serve such a request by the applicable Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, their Estates, the Post-Consummation Trust, and the Post-Consummation Trust Assets and such Administrative Claims shall be deemed discharged as of the Effective Date. Objections to such requests must be filed and served on the Post-Consummation Trust and the requesting party by the later of (i) 180 days after the Effective Date and (ii) 180 days after the Filing of the applicable request for payment of such Administrative Claims.

    2.    <u>Fee Claims</u>

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 45 days after the Effective Date. Objections to any Fee Claim must be Filed and served on the Post-Consummation Trust and the requesting party by the later of (x) 45 days after the Effective Date and (y) 30 days after the Filing of the applicable request for payment of the Fee Claim. To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.

*B.      3.25% Convertible Senior Notes Indenture Trustee Claims*

On or prior to the Effective Date, the 3.25% Convertible Senior Notes Indenture Trustee shall be compensated for all of its reasonable and documented fees and expenses (including, without limitation, fees and expenses of its outside counsel) incurred prior to the Effective Date in cash in full, related to its service as the Indenture Trustee under the 3.25% Convertible Senior Notes Indenture. Any such claims shall be Allowed as an Administrative Claim.

*C.      Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Post-Consummation Trust Administrator, subject to the approval of the Post-Consummation Trust Oversight Committee, and such Holder; provided, however, that such parties may further agree to the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Post-Consummation Trust Administrator, subject to the approval of the Post-Consummation Trust Oversight Committee, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.


# ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

*A.      Administrative Claims and Priority Tax Claims*

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Equity Interests set forth in this Article III.

*B.      Summary*

1.      The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code on a substantively consolidated basis. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or an Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

2.    Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | 3.25% Convertible Senior Notes Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Impaired | Deemed to Reject |
| 6 | Equity Interests | Impaired | Deemed to Reject |

C.    *Classification and Treatment of Claims and Equity Interests*

1.    <u>Class 1 - Other Priority Claims</u>

(a)    *Classification:* Class 1 consists of all Other Priority Claims against the Debtors.

(b)    *Treatment:* The legal, equitable and contractual rights of the Holders of Allowed Class 1 Claims are unaltered. Unless otherwise agreed to by Holders of Allowed Class 1 Claims and the Post-Consummation Trust Administrator, subject to the approval of the Post-Consummation Trust Oversight Committee, each Holder of an Allowed Class 1 Claim shall receive, in full and final satisfaction of such Allowed Class 1 Claim, payment of the Allowed Class 1 Claim in full in Cash on or as soon as reasonably practicable after the Effective Date in accordance with Article VII hereof.

(c)    *Voting:* Class 1 is Unimpaired, and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan; <u>provided</u>, <u>however</u>, that all Class 1 Claims shall be subject to Allowance under the provisions of the Plan, including Article IX hereof.

2.    <u>Class 2 - Other Secured Claims</u>

(a)    *Classification:* Class 2 consists of all Other Secured Claims against the Debtors.

(b)    *Treatment:* Each Holder of an Allowed Other Secured Claim shall be placed in a separate subclass, and each subclass will be treated as a separate Class for distribution purposes. Unless otherwise agreed to by Holders of Allowed Class 2 Claims and the Post-Consummation Trust Administrator, subject to the approval of the Post-Consummation Trust Oversight Committee, each Holder of an Allowed Class 2 Claim shall

CHI1 1771246v.7

receive, in full and final satisfaction of such Allowed Class 2 Claim, on or as soon as reasonably practicable after the Effective Date in accordance with Article VII hereof:

(i)     the collateral securing such Allowed Other Secured Claim; or

(ii)    a Cash distribution in an amount equal to the value of such collateral.

(c)    *Voting.* Class 2 is Unimpaired, and Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan; provided, however, that all Class 2 Claims shall be subject to Allowance under the provisions of the Plan, including Article IX hereof.

3.    Class 3 - 3.25% Convertible Senior Notes Claims

(a)    *Classification:* Class 3 consists of all 3.25% Convertible Senior Notes Claims against the Debtors.

(b)    *Treatment:* Holders of Allowed 3.25% Convertible Senior Notes Claims will receive, in full and final satisfaction, settlement, release and discharge of and in exchange for each 3.25% Convertible Senior Notes Claim, their Pro Rata share of the available Cash and/or other consideration, including proceeds of the Post-Consummation Trust Assets. Upon the Effective Date, the 3.25% Convertible Senior Notes Claim shall be an Allowed Claim in the amount of $54,783,174.34. Any Claims filed by beneficiaries of the 3.25% Convertible Senior Notes Indenture other than the 3.25% Convertible Senior Notes Indenture Trustee shall be deemed superseded or amended by the 3.25% Convertible Senior Notes Claim.

(c)    *Voting:* Class 3 is Impaired, and Holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

(d)    *Restrictions on Recovery:* The Post-Consummation Trust shall not make distributions to Holders of Class 3 Claims until such time as all Allowed Senior Claims have been paid in full (or appropriate reserves have been established for the payment of all Allowed Senior Claims in full) or such Allowed Senior Claims have been satisfied in the manner provided for under the Plan by the Post-Consummation Trust.

4.    Class 4 - General Unsecured Claims

(a)    *Classification:* Class 4 consists of all General Unsecured Claims held against the Debtors.

(b)     *Treatment:* Holders of Allowed General Unsecured Claims will receive, in full and final satisfaction, settlement, release and discharge of and in exchange for each Allowed General Unsecured Claims held against the Debtors, their Pro Rata share of the available Cash and/or other consideration, including proceeds of the Post-Consummation Trust Assets.

(c)     *Voting:* Class 4 is Impaired, and Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

(d)     *Restrictions on Recovery:* The Post-Consummation Trust shall not make distributions to Holders of Class 4 Claims until such time as all Allowed Senior Claims have been paid in full (or appropriate reserves have been established for the payment of all Allowed Senior Claims in full) or such Allowed Senior Claims have been satisfied in the manner provided for under the Plan by the Post-Consummation Trust.

5.     <u>Class 5 - Intercompany Claims</u>

(a)     *Classification:* Class 5 consists of all Intercompany Claims.

(b)     *Treatment:* Class 5 Intercompany Claims are extinguished under the Plan, which provides for substantive consolidation of the Debtors, and Holders of Class 5 Intercompany Claims will not receive any distribution on account of such interests.

(c)     *Voting:* Class 5 is Impaired, and Holders of Class 5 Claims are not entitled to receive or retain any property under the Plan on account of Class 5 Claims. Therefore, Holders of Class 5 Claims are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan.

6.     <u>Class 6 - Equity Interests</u>

(a)     *Classification:* Class 6 consists of all Equity Interests in the Debtors.

(b)     *Treatment:* Holders of Class 6 Equity Interests in the Debtors will not receive any distribution on account of such interests.

(c)     *Voting:* Class 6 is Impaired, and Holders of Class 6 Equity Interests are not entitled to receive or retain any property under the Plan on account of Class 6 Equity Interests. Therefore, Holders of Class 6 Equity Interests are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Class 6 Equity Interests are not entitled to vote to accept or reject the Plan.

CHI1 1771246v.7

D.	*Special Provision Governing Unimpaired Claims*

Except as otherwise provided herein, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including all rights with respect to legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.	*Presumed Acceptance of Plan*

Classes 1 and 2 are Unimpaired under the Plan, and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

B.	*Voting Classes*

Classes 3 and 4 are Impaired Under the Plan, and Holders of Class 3 and 4 Claims as of the Record Date shall be entitled to vote to accept or reject the Plan.

C.	*Acceptance by Impaired Classes of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims entitled to vote to accept or reject the Plan has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.	*Deemed Rejection of Plan*

Classes 5 and 6 are Impaired and shall receive no distribution under the Plan on account of their Claims or Interests and are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

E.	*Cram Down*

The Proponents request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Proponents reserve the right to modify the Plan in accordance with Article XIV.D hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE V.

# MEANS FOR IMPLEMENTATION OF THE PLAN

## A. General

The Post-Consumption Trust will satisfy its obligations under the Plan from Cash on hand as of the Effective Date, liquidation of Causes of Action, and other proceeds or consideration from the Post-Consumption Trust Assets.

## B. Substantive Consolidation

The Plan serves as a motion by the Proponents seeking entry, pursuant to section 105 of the Bankruptcy Code, of an order authorizing, on the Effective Date, the substantive consolidation of the Estates and all of the debts of all of the Debtors for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes. Substantive consolidation will not (i) alter the state of incorporation of any Debtor for purposes of determining applicable law of any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Post-Consumption Trust Administrator to enforce any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

If substantive consolidation is ordered as provided herein in the Confirmation Order, then on and after the Effective Date, all Assets and liabilities of the Debtors shall be treated under the Post-Consumption Trust as though they were merged into the estate of Palm Harbor Homes, Inc. for purposes of treatment of and distributions on Claims. All duplicative Claims (identical in both amount and subject matter) Filed against more than one of the Debtors shall automatically be expunged so that only one Claim survives against the consolidated Debtors. All guarantees by any Debtor of the obligations of any other Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and/or several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors. Any alleged defaults under any applicable agreement with the Debtors arising from substantive consolidation under this Plan shall be deemed cured as of the Effective Date.

## C. Post-Consumption Trust

### 1. Establishment of the Post-Consumption Trust

On or prior to the Effective Date, the Debtors, on their own behalf and on behalf of the Beneficiaries, will execute the Post-Consumption Trust Agreement and will take all other steps necessary to establish the Post-Consumption Trust pursuant to the Post-Consumption Trust Agreement.

Upon the Effective Date, (a) the members of the board of directors or managers, as the case may be, and all officers of each of the Debtors shall be deemed to have resigned; and (b) each of the Debtors shall cause all its Assets and the Assets of its Estate to be transferred to the Post-Consumption Trust. In connection with the transfer of their Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or

communications (whether written or oral) transferred to the Post-Consummation Trust will vest in the Post-Consummation Trust and its representatives, and the Debtors and the Post-Consummation Trust are authorized to take all necessary actions to effectuate the transfer of such privileges.

Upon transfer of the Assets, the Debtors and their officers and directors shall have no further duties or responsibilities in connection with the implementation of the Plan.

### 2. Dissolution of the Debtors

On the Effective Date, the Debtors shall be deemed dissolved under applicable State law for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith.

### 3. Appointment of the Post-Consummation Trust Administrator

On the Effective Date and in compliance with the provisions of the Plan, the Post-Consummation Trust Administrator will be appointed in accordance with the Post-Consummation Trust Agreement and the Post-Consummation Trust will be administered by the Post-Consummation Trust Administrator in accordance with the Post-Consummation Trust Agreement.

### D. *Further Actions*

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan will be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors. On and after the Effective Date, the Post-Consummation Trust is authorized and directed to issue, execute and deliver the agreements, documents, and distributions contemplated by the Plan.

### E. *Sources of Cash for Plan Distributions*

All Cash necessary for the Post-Consummation Trust to make payments pursuant hereto shall be obtained from the Post-Consummation Trust Assets.

### F. *Release, of Liens, Claims and Equity Interests*

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all Claims, Equity Interests, mortgages, deeds of trust, liens or other security interests against the property of any Estate shall be fully released and deemed satisfied in exchange for the treatment provided under this Plan.

### G. *Exemption from Certain Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in

the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to: (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; or (3) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including (a) any merger agreements, (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution, (c) deeds, (d) bills of sale, or (e) assignments executed in connection with any transaction occurring under the Plan.

*H.      Cancellation of 3.25% Convertible Senior Notes and Equity Interests*

On the Effective Date, except to the extent otherwise provided herein, all notes, stock, instruments, certificates and other documents evidencing the 3.25% Convertible Senior Notes, the Equity Interests and the Intercompany Interests shall be canceled, and the obligations of the Debtors thereunder or in any way related thereto shall be fully released and cancelled. On the Effective Date, except to the extent otherwise provided herein, any indenture relating to any of the foregoing, including the 3.25% Convertible Senior Notes Indenture, shall be deemed to be canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder shall be fully released and cancelled. Notwithstanding the foregoing provisions of this Article V.H. and anything else contained in the Plan, the 3.25% Convertible Senior Notes Indenture shall continue in effect solely for the purposes of and to the extent necessary to allow the 3.25% Convertible Senior Notes Indenture Trustee to make distributions under the Plan to Holders of Allowed 3.25% Convertible Senior Notes Claims. For the avoidance of doubt, nothing herein shall waive, release, or impair any rights, claims or interests, if any, that the 3.25% Convertible Senior Notes Indenture Trustee may have under the 3.25% Convertible Senior Notes Indenture or otherwise to the recovery and/or reimbursement of its fees, costs and expenses (including the fees, costs and expenses of counsel and financial advisors), to the extent unpaid by the Post-Consummation Trust Administrator under Article VII.C.2, from any distribution hereunder, whether such rights, claims or interests are in the nature of a charging lien or otherwise, all of which rights, claims and interests expressly are preserved subject to satisfaction by the Post-Consummation Trust Administrator under Article VII.C.2. Except as otherwise provided herein, upon cancellation of the 3.25% Convertible Senior Notes Indenture, the 3.25% Convertible Senior Notes Indenture Trustee shall be relieved of any obligations as Indenture Trustee under the 3.25% Convertible Senior Notes Indenture.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption and Rejection of Executory Contracts and Unexpired Leases*

    1.    <u>Rejection of Executory Contracts and Unexpired Leases</u>

Each Executory Contract or Unexpired Lease shall be deemed automatically rejected in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory or Unexpired Lease:

    (a)    has previously been assumed by the Debtors by Final Order of the Bankruptcy Court;

    (b)    is a Retained Contract;

    (c)    is not an Assigned Contract and has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date which order becomes a Final Order after the Effective Date;

    (d)    is the subject of a motion to assume or reject pending as of the Effective Date; and

    (e)    is a D&O Liability Insurance Policy; <u>provided</u> <u>that</u> such Executory Contracts and Unexpired Leases shall be treated as set forth in Article VI.C hereof.

    2.    <u>Assumption of Retained Contracts</u>

Upon the Effective Date, the Debtors shall assume all Retained Contracts identified on the "Schedule of Retained Contracts Assumed By The Debtors" in the Plan Supplement.

B. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

**Notwithstanding anything to the contrary provided herein, all Proofs of Claim arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within 30 days after the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtors, their Estates and property or the Post-Consummation Trust, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article XI.F.All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article XI.F.**

C. *Assumption of D&O Insurance Policies*

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors or the Post-Consummation Trust shall be deemed to have assumed the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code, to the extent prepaid and provided that the Post-Consummation Trust shall have no obligation to fund premiums or any other alleged costs associated with the D&O Liability Insurance Policies. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, upon Confirmation of the Plan, the Debtors or the Post-Consummation Trust shall have no indemnity obligations except to the extent of the coverage and insurance proceeds available under the D&O Liability Insurance Policies, but such limited indemnity obligation will be deemed and treated as an Executory Contract that has been assigned to the Post-Consummation Trust for which no Proof of Claim need be Filed.

D. *Modifications, Amendments, Supplements, Restatements or Other Agreements*

Unless otherwise provided by the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interest.

Amendments, supplements, restatements or other modifications to Executory Contracts or Unexpired Leases executed by the Debtors during the pendency of the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority or amount of any Claim arising in connection therewith.

E. *Reservation of Rights*

Nothing contained in the Plan or Plan Supplement shall constitute an admission by the Debtors that any such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor or the Post-Consummation Trust has any liability thereunder.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A. *Distributions on Account of Claims Allowed as of the Effective Date*

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, and subject to the establishment of appropriate Disputed Claims Reserves, all distributions with respect to Claims that are Allowed Claims as of the Effective Date and that are not Assumed Liabilities shall be made by the Post-Consummation Trust as set forth herein. As described in Article VIII, the Post-Consummation Trust shall make distributions on the Effective Date or as soon as reasonably practicable thereafter to the respective Beneficiaries pursuant to the Plan on account of Allowed Claims.

*B.*     *Distributions on Account of Claims Allowed After the Effective Date*

1.     Payments and Distributions on Disputed Claims

Notwithstanding any provision herein to the contrary, except as otherwise agreed by the Post-Consummation Trust Administrator subject to the consent of the Post-Consummation Trust Oversight Committee, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of any such disputes by settlement or Final Order. Once Allowed, the Holder of such Allowed Claim that was a Disputed Claim will receive such payments and distributions to which that Holder is then entitled under the Plan. If a distribution to such Allowed Claim Holder's applicable Class has already occurred, then the Post-Consummation Trust Administrator shall make any necessary catch-up payments to the Holder of such Allowed Claim within a reasonable amount of time after such Disputed Claim becomes an Allowed Claim. In the event Claims require adjudication or other resolution, the Post-Consummation Trust reserves the right to, or shall upon an order of the Bankruptcy Court, establish appropriate reserves for potential payment of any such Claims.

*C.*     *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

1.     Delivery of Distributions in General

Except as otherwise provided herein, the Post-Consummation Trust Administrator shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Post-Consummation Trust's books and records as of the date of any such distribution; provided, however, that if such Holder Files a Proof of Claim, the address identified by the Proof of Claim shall be the address for such distribution, and the manner of delivery for such distributions shall be determined at the discretion of the Post-Consummation Trust, as applicable. Nothing herein shall require or be deemed to require the Post-Consummation Trust to attempt to locate any Holder of an Allowed Claim.

Distributions to Holders of 3.25% Convertible Senior Notes shall be made by the Post-Consummation Trust to the 3.25% Convertible Senior Notes Indenture Trustee, as Distribution Agent for the 3.25% Convertible Senior Notes Claims, which, in turn, shall make such distributions to the applicable Holders either through DTC or, in the case of Claims held directly by the Holder thereof, through the 3.25% Convertible Senior Notes Indenture Trustee subject to its rights, claims and interests, under the 3.25% Convertible Senior Notes Indenture or otherwise to the recovery and/or reimbursement of its fees, costs and expenses (including the fees, costs and expenses of counsel and financial advisors) from any distribution hereunder, whether such rights, claims or interests are in the nature of a charging lien or otherwise. All distributions to Holders of Allowed 3.25% Convertible Senior Notes Claims shall be governed by the Plan and the 3.25% Convertible Senior Notes Indenture. Except as otherwise provided herein, after the Post-Consummation Trust Administrator delivers such distribution to the 3.25% Convertible Senior Notes Indenture Trustee, neither the Post-Consummation Trust nor the Post-Consummation Trust Administrator or its professionals shall be deemed liable for any Claims or Causes of Action by Holders of 3.25% Convertible Senior Notes Claims arising out of or relating to such distribution. Notwithstanding any provisions herein to the contrary, the 3.25% Convertible Senior Notes Indenture shall continue in effect to the extent necessary to (a) allow

the 3.25% Convertible Senior Notes Indenture Trustee to receive and make distributions pursuant to this Plan on account of the 3.25% Convertible Senior Notes Claims, (b) exercise its charging liens against any such distributions and (c) seek compensation and reimbursement for any fees and expenses incurred in making such distributions.  No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

        2.        <u>Distributions by Distribution Agents</u>

The Post-Consummation Trust Administrator shall have the authority, subject to the approval of the Post-Consummation Trust Oversight Committee, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  The Post-Consummation Trust shall pay to the Distribution Agent all reasonable and documented fees and expenses of the Distribution Agent without the need for any approvals, authorizations, actions or consents.  The Distribution Agent shall submit detailed invoices to the Post-Consummation Trust for all fees and expenses for which the Distribution Agent seeks reimbursement and the Post-Consummation Trust shall pay those amounts that it, subject to the approval of the Post-Consummation Trust Oversight Committee, deems reasonable, and shall object in writing to those fees and expenses, if any, that the Post-Consummation Trust deems unreasonable.  Except as otherwise set forth above for the 3.25% Convertible Senior Notes Indenture Trustee, as a condition to serving as a Distribution Agent, a Distribution Agent must (a) affirm its obligation to facilitate the prompt distribution of any documents, (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required hereunder, and (c) waive any right or ability to setoff, deduct from, or assert any lien or encumbrance against the distributions required hereunder that are to be distributed by such Distribution Agent.

After the Effective Date, the 3.25% Convertible Senior Notes Indenture Trustee shall be compensated by the Post-Consummation Trust for its reasonable and documented fees and expenses for making distributions pursuant to the Plan and shall be indemnified by the Post-Consummation Trust for any loss, damage, claim, liability, cost or expense incurred in the absence of any negligence or bad faith on the part of the 3.25% Convertible Senior Notes Indenture Trustee, solely if such loss, damage, claim, liability, cost, or expense arises out of or is in connection with the performance of its duties as Distribution Agent under the Plan, including the reasonable costs and expenses of defending itself against any claim of liability from the Holders of 3.25% Convertible Senior Notes Claims resulting from the performance of its duties as Distribution Agent under the Plan.  Such compensation and reimbursement to the 3.25% Convertible Senior Notes Indenture Trustee made after the Effective Date shall be made by the Post-Consummation Trust Administrator on behalf of the Post-Consummation Trust without the need for filing any application or request with, or approval by, the Bankruptcy Court, but subject only to review for reasonableness by the Post-Consummation Trust Administrator.

In the event the Post-Consummation Trust objects to all or any portion of the fees and expenses to be reimbursed in a Distribution Agent's invoice, including those of the 3.25% Convertible Senior Notes Indenture Trustee, the Post-Consummation Trust and such Distribution Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses.  In the event that the Post-Consummation Trust and such Distribution Agent are unable to resolve any differences regarding disputed fees or

expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

3. <u>Record Date for Distributions</u>

Unless otherwise set forth in the Confirmation Order, the Debtors shall not establish a record date for distributions to Holders of 3.25% Convertible Senior Notes Claims. Distributions to Holders of such Claims held through DTC shall be made by means of book-entry exchange through the facilities of DTC in accordance with the customary practices of DTC, as and to the extent practicable, and the Record Date shall not apply. In connection with such book-entry exchange, the Post-Consummation Trust Administrator will provide information to the 3.25% Convertible Senior Notes Indenture Trustee, which 3.25% Convertible Senior Notes Indenture Trustee shall convey to DTC to effect distributions on a Pro Rata basis as provided under the Plan with respect to such 3.25% Convertible Senior Notes Claims.

4. <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, the Post-Consummation Trust shall not be required to make distributions or payments on account of an Allowed Claim of less than $50.00 and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, with half dollars or less being rounded down.

If, at any time, the Post-Consummation Trust hold only de minimis Assets such that the costs of distribution (after reserving for Post-Consummation Trust expenses) exceeds the distribution amount in the sole discretion of the Post-Consummation Trust Administrator, the Post-Consummation Trust Administrator may, subject to the consent of the Post-Consummation Trust Oversight Committee, distribute remaining Assets to charity.

5. <u>Undeliverable Distributions and Unclaimed Property</u>

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Post-Consummation Trust or their Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Post-Consummation Trust or their Distribution Agent, as applicable, are notified in writing of such Holder's then current address, at which time all currently due missed distributions shall be made to such Holder without interest within a reasonable amount of time at the discretion of the Post-Consummation Administrator. Undeliverable and unclaimed distributions shall remain in the possession of the Post-Consummation Trust; <u>provided that</u> such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the earlier to occur of (x) 30 days after the final distribution; or (ii) 90 days after the distribution is returned as undeliverable or the date of issuance of check (in the case of an unclaimed distribution). After such date, the distribution on account of such claim shall be released and forever barred, and the Cash, including interest earned thereon, if any, shall be distribution in accordance with the terms of the Plan.

CHI1 1771246v.7

*D.     Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Post-Consummation Trust shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Post-Consummation Trust and its Distribution Agents shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Post-Consummation Trust reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances. For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

In connection with the Plan and Distributions made pursuant to the Plan, neither the Post-Consummation Trust Administrator nor any of his representatives shall be obligated for the withholding of any applicable taxes. Rather, it is the Beneficiaries' obligation to pay any taxes that might be due on account of the Distributions.

No holder of an Allowed Class 3 or Class 4 Claim will receive a Distribution to which it may be entitled to under the Plan unless and until such time as such holder has provided the Post-Consummation Trust Administrator with an appropriate tax-payer identification number or other information reasonably requested by the Post-Consummation Trust Administrator. Any holder of an Allowed Claim that does not provide the Post-Consummation Trust Administrator with an appropriate tax payer identification number or other information reasonably requested by the Liquidating Trustee within ninety (90) days after a request in writing shall be deemed to have forfeited its Claim for any Distribution and shall be forever barred and enjoined from asserting any such Claim for any Distribution against the Debtor and its Estate, the Post-Consummation Trust Administrator, the Post Consummation Trust, and their respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash otherwise reserved for such Distribution shall become the property of the Post-Consummation Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan and the Post-Consummation Trust Agreement.

*E.     Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class at that time. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided herein, Holders of

Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.    *Setoffs*

1.    By the Post-Consummation Trust

The Post-Consummation Trust may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Post-Consummation Trust may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Post-Consummation Trust may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Post-Consummation Trust may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, setoff or recoup against such Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Post-Consummation Trust may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post-Consummation Trust of any such claims, equity interests, rights and Causes of Action that the Debtors or the Post-Consummation Trust may possess against any such Holder, except as specifically provided herein.

2.    By Non-Debtors

Unless otherwise stipulated in writing by the Debtors (before the Effective Date) or by the Post-Consummation Trust (after the Effective Date), or asserted pursuant to a timely filed Proof of Claim or as expressly provided for by the terms of the agreement underlying any timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Debtors' Estates (an "Estate Claim") must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such Estate Claim at the time it answers such Estate Claim, or such right of setoff, subrogation or recoupment will be deemed waived and forever barred; *provided, however* that nothing herein shall limit the assertion of such right of setoff, subrogation or recoupment via an amended or supplemental pleading to the extent permitted by Rule 15 of the Federal Rules of Civil Procedure and/or Rule 7015 of the Federal Rules of Bankruptcy Procedure.  Notwithstanding the foregoing, nothing herein shall affect the setoff rights of any taxing authority.

G.    *Surrender of Canceled Instruments or Securities*

On the Effective Date, or as soon thereafter as is reasonably practicable, as a condition precedent to receiving any distribution on account of its Allowed Claim, each record Holder of a 3.25% Convertible Senior Notes Claim shall surrender such 3.25% Convertible Senior Note to the 3.25% Convertible Senior Notes Indenture Trustee, *provided*, *however*, that if a claimant is a

Holder of a 3.25% Convertible Senior Note for which no physical certificate was issued to the Holder but which instead is held in book-entry form pursuant to a global security held by DTC, then the 3.25% Convertible Senior Notes Indenture Trustee may waive the requirement of surrender and the Debtors, Post-Consummation Trust, the Post-Consummation Trust Administrator and the 3.25% Convertible Senior Notes Indenture Trustee shall seek the cooperation of DTC to provide appropriate instructions to the 3.25% Convertible Senior Notes Indenture Trustee. In the 3.25% Convertible Senior Notes Indenture Trustee's sole discretion, if no surrender of a 3.25% Convertible Senior Note occurs and a claimant does not provide an affidavit and indemnification agreement, in form and substance reasonably satisfactory to the 3.25% Convertible Senior Notes Indenture Trustee, that such 3.25% Convertible Senior Note was lost, then no distribution may be made to any such claimant whose Claim is based on a 3.25% Convertible Senior Note.

## ARTICLE VIII.

## THE POST-CONSUMMATION TRUST AND THE POST-CONSUMMATION TRUST ADMINISTRATOR

A.    *Establishment of the Post-Consummation Trust*

The Post-Consummation Trust shall be established and shall become effective on the Effective Date. The Post-Consummation Trust, acting through the Post-Consummation Trust Administrator under the supervision and direction of the Post-Consummation Trust Oversight Committee, shall be authorized to exercise and perform the rights, powers and duties held by the Debtors and their Estates, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estate, including but not limited to the Causes of Action, and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code. The Debtors and the Post-Consummation Trust Administrator will establish the Post-Consummation Trust on behalf of the Beneficiaries pursuant to the Post-Consummation Trust Agreement and this Plan, with the Beneficiaries to be treated as the grantors and deemed owners of the Post-Consummation Trust Assets. The Post-Consummation Trust will accept and hold the Assets as Post-Consummation Trust Assets in the Post-Consummation Trust for the benefit of the Beneficiaries, subject to the Plan and the Post-Consummation Trust Agreement. All Distributions to the Holders of Allowed Claims shall be from the Post-Consummation Trust Assets.

B.    *Assets to the Post-Consummation Trust*

The Post-Consummation Trust shall hold and administer the following Assets and proceeds thereof under the supervision and direction of the Post-Consummation Trust Oversight Committee:

1.    The Assets of the Debtors, including, but not limited to the Causes of Action for liquidation and distribution in accordance with the Plan;

2.      Any Disputed Reserves to be administered in accordance with the Plan and the Post-Consumption Trust Agreement; and

3.      All other all of their rights, title and interests in property of the Debtors and their Estates, and each of the, which shall be transferred by the Debtors to the Post-Consumption Trust on the Effective Date for liquidation and distribution in accordance with the Plan, notwithstanding any prohibition on assignment under non-bankruptcy law.

C.      *Distribution; Withholding*

The Post-Consumption Trust will make distributions to its Beneficiaries as provided by the Plan and pursuant to the Post-Consumption Trust Agreement.  The Post-Consumption Trust may withhold from amounts distributable to any Entity any and all amounts, determined in the Post-Consumption Trust Administrator's sole discretion, for purposes of satisfying applicable law, regulation, rule, ruling, directive or other governmental requirement.

D.      *Duration of the Post-Consumption Trust*

The Post-Consumption Trust will terminate as soon as practicable, but in no event later than the fifth anniversary of the Effective Date; provided that, no more than 30 days prior to such termination, the Bankruptcy Court, upon motion by the Post-Consumption Administrator, may extend the term of the Post-Consumption Trust if such an extension is necessary to liquidate the Post-Consumption Trust Assets or to complete any distribution required by the Plan.  Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained no more than 30 days prior to the expiration of each extended term.

E.      *Post-Consumption Trust Administrator*

1.      Appointment

On the Effective Date, Brian Cejka of Alvarez & Marsal North America, LLC shall be the Post-Consumption Trust Administrator.  Prior to the Effective Date, Mr. Cejka was the Debtors' Chief Restructuring Officer.

The appointment of the Post-Consumption Trust Administrator shall be effective as of the Effective Date.  Successor Post-Consumption Trust Administrator(s) shall be appointed as set forth in the Post-Consumption Trust Agreement.

2.      Term

Unless the Post-Consumption Trust Administrator resigns, is terminated, or dies earlier, the Post-Consumption Trust Administrator's term shall expire upon the termination of the Post-Consumption Trust pursuant to the Post-Consumption Trust Agreement.

3.      Powers and Duties

The Post-Consumption Trust Administrator shall have the rights and powers set forth in this Plan and in the Post-Consumption Trust Agreement including, but not limited to, the

powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108.  The Post-Consummation Trust Administrator shall be governed in all things by the terms of the Post-Consummation Trust Agreement and the Plan.  Without limitation, the Post-Consummation Trust Administrator shall, in accordance with the terms of the Plan and the Post-Consummation Trust Agreement:

    (a)    administer, sell, liquidate, or otherwise dispose of all of the Post-Consummation Trust Assets in accordance with the terms of the Plan and Post-Consummation Trust Agreement;

    (b)    take all actions necessary to wind down the affairs of the Debtors consistent with the Plan and applicable non-bankruptcy law;

    (c)    file final federal, state, foreign and, to the extent applicable, local, tax returns, and, to the extent necessary, pay such Taxes from the Post-Consummation Trust Assets;

    (d)    represent the Debtors' Estates and the Post-Consummation Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Post-Consummation Trust;

    (e)    seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

    (f)    comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

    (g)    comply with all applicable laws and regulations concerning the matters set forth herein;

    (h)    exercise such other powers as may be vested in the Post-Consummation Trust pursuant to the Post-Consummation Trust Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

    (i)    execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Post-Consummation Trust consistent with the Plan and the Post-Consummation Trust Agreement;

    (j)    provide periodic reporting to the Post-Consummation Trust Oversight Committee; and

    (k)    stand in the shoes of the Debtors for all purposes.

The Post-Consummation Trust Administrator shall obtain the approval of the Oversight Committee prior to taking any action regarding any of the following matters:

(a) The commencement of any Cause of Action or Claim Objection by the Post-Consummation Trust;

(b) The settlement, compromise, withdrawal, dismissal or other resolution of any (i) Claims or Objections to Claims by the Liquidating Trust where the amount set forth in the Claim exceeds $20,000 of the amount set forth in the Liquidating Trust's books and records as being owed pursuant to such Claim; and (ii) Cause of Action by the Liquidating Trust if the amount sought to be recovered in the complaint or other document initiating such Cause of Action exceeds $20,000;

(c) The sale, transfer, assignment, or other disposition of any non-Cash Post-Consummation Trust Assets having a valuation in excess of $10,000;

(d) The abandonment of any non-Cash Post-Consummation Trust Assets that have a valuation of at least $20,000;

(e) The borrowing of any funds by the Post-Consummation Trust or pledge of any portion of the Post-Consummation Trust Assets;

(f) The exercise of any right or action set forth in the Plan or the Post-Consummation Trust Agreement that expressly requires approval of the Post-Consummation Trust Oversight Committee;

(g) The amount and timing of distributions from the proceeds of the Post-Consummation Trust Assets;

(h) The employment, retention, or replacement of one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Post-Consummation Trust Administrator under the Plan and this Post-Consummation Trust Agreement if the proposed professional will be paid over $10,000 in the aggregate;

(i) The establishment or setting of the Disputed Reserves or any other reserves in aid of distribution and opening, maintaining and administering bank accounts as necessary to discharge the duties of the Post-Consummation Trust Administrator under the Plan and the Post-Consummation Trust Agreement; or

(j) The payment of costs of the Post-Consummation Trust, including professional fees, costs, and expenses as set forth in the Plan, subject to the approval of the Post-Consummation Trust Oversight Committee if any proposed payment is in excess of $10,000.

In the event that the Post-Consummation Trust Administrator cannot take any action, including, without limitation, the prosecution of any Causes of Action or the objection to any

Claim, by reason of an actual or potential conflict of interest, the Post-Consummation Trust Oversight Committee acting by a majority shall be authorized to take any such action(s) in his place and stead, including without limitation, the retention of professionals (which may include professionals retained by the Post-Consumation Trust Administrator) for such purpose of taking such actions.

4.    Fees and Expenses

Except as otherwise provided in the Plan, compensation of the Post-Consumation Trust Administrator and the costs and expenses of the Post-Consumation Trust Administrator shall be paid from the Post-Consumation Trust Assets subject to approval of the Post-Consumation Trust Oversight Committee.

The Post-Consumation Trust Administrator shall pay, without further order, notice, or application to the Bankruptcy Court, the reasonable fees and expenses of the Post-Consumation Trust professionals, as necessary to discharge the Post-Consumation Trust Administrator's duties under the Plan and the Post-Consumation Trust Agreement, provided, however that for any invoices over $10,000, the Post-Consumation Trust Oversight Committee shall have first approved the payment of such invoices.

6.    Investment Powers

The powers of the Post-Consumation Trust Administrator to invest any Cash that is held by the Post-Consumation Trust or in any of the Reserves created by the Plan, other than those powers reasonably necessary to maintain the value of the assets and to further the Post-Consumation Trust's liquidating purposes, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills.

F.    *Federal Income Taxation of the Post-Consumation Trust*

The Post-Consumation Trust will be established for the primary purpose of liquidating its assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Post-Consumation Trust. The Debtors will have no reversionary or further interest in, or with respect to, the Post-Consumation Trust Assets or the Post-Consumation Trust upon their transfer of the Post-Consumation Trust Assets. For all federal income tax purposes, the Beneficiaries of the Post-Consumation Trust will be treated as grantors and owners thereof and it is intended that the Post-Consumation Trust be classified as a liquidating trust under 26 C.F.R. § 301.7701-4 and that the Post-Consumation Trust is owned by the Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution of an undivided interest in the Post-Consumation Trust Assets and then contributed such interests to the Post-Consumation Trust. Accordingly, the Post-Consumation Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Consumation Trust Assets, make timely distributions to the Beneficiaries pursuant to the Plan, and not unduly prolong its duration. The Post-Consumation Trust will not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or

in the Post-Consummation Trust Agreement. The Post-Consummation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the Post-Consummation Trust.

G.    *Preservation of Rights of Action*

1.    Maintenance of Causes of Action

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Post-Consummation Trust shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Actions, including, but not limited to, those Cause of Action identified in the Plan Supplement, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding filed in one or more of the Chapter 11 Cases.

Except as otherwise provided in the Plan, Purchase Agreement or Confirmation Order, any claims, rights and Causes of Action that the Debtors may hold against any Entity shall vest in the Post-Consummation Trust on the Effective Date and the Post-Consummation Trust shall have the exclusive right and authority to institute, prosecute, abandon, settle or compromise any and all such claims, rights and Causes of Action without the consent or approval of any party and without any further order of the Bankruptcy Court, but subject to the prior consent of the Post-Consummation Trust Oversight Committee if such matter is in excess of $20,000.

2.    Preservation of All Causes of Action Not Expressly Sold, Settled or Released

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is acquired by the Purchaser pursuant to the Purchase Agreement (and is not an Excluded Asset) or is expressly waived, abandoned, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such claim or Cause of Action for later action by the Post-Consummation Trust (including claims and Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan (and for the avoidance of doubt, the Debtor Release) or any other Final Order (including the Confirmation Order). In addition, the Post-Consummation Trust reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a plaintiff, defendant or an interested party, against any Entity, including the plaintiffs or co-defendants in such lawsuits except where such claims or Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).

CHI1 1771246v.7

*H.     Insurance*

The Post-Consummation Trust may maintain customary insurance coverage for the protection of Entities serving as administrators and overseers of the Post-Consummation Trust on and after the Effective Date.

*I.     Disputed Claims Reserve*

The Post-Consummation Trust Administrator will maintain, in accordance with the Post-Consummation Trust Administrator's powers and responsibilities under the Plan and the Post-Consummation Trust Agreement, a Disputed Claims Reserve(s) to the extent necessary in aid of distributions to ensure that all Claims within the same Class receive the same treatment provided for under the Plan. The Post-Consummation Trust Administrator will distribute such amounts as provided herein on account of such Disputed Claims when such Disputed Claims become Allowed Claims.

*J.     Exculpation; Indemnification*

The Post-Consummation Trust Administrator, the Post-Consummation Trust, professionals retained by the Post-Consummation Trust and their representatives will be exculpated and indemnified pursuant to the terms of the Post-Consummation Trust Agreement.

## ARTICLE IX.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

*A.     Resolution of Contingent or Disputed Claims*

1.     Prosecution of Claims Objections

Except as otherwise set forth herein, the Post-Consummation Trust shall have the exclusive authority to File objections to, and settle, compromise, withdraw or litigate to judgment objections to any and all Claims. Except as otherwise set forth herein, from and after the Effective Date, the Post-Consummation Trust may settle, compromise or withdraw objections to any Disputed Claim without approval of the Bankruptcy Court or notice to any party.

2.     Claims Estimation

Subject to Article IX.A.1 hereof, after the Effective Date, the Post-Consummation Trust may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Post-Consummation Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the

pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Post-Consummation Trust may elect to pursue additional objections to the ultimate distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Post-Consummation Trust may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Except as required by section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 20 days after the date on which such Claim is estimated. Each of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

  3.  <u>Deadline to File Objections to Claims</u>

  Any objections to Claims, other than Administrative Claims, shall be Filed no later than the Claims Objection Bar Date.

**B.**  *Claims Allowance*

  Except as expressly provided herein or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no distributions shall be made on account of any Claim that has not been deemed Allowed. Except as expressly provided by the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Post-Consummation Trust will have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date.

**C.**  *Disallowance of Claims*

  EXCEPT AS OTHERWISE AGREED TO BY THE POST-CONSUMMATION TRUST, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

CHI1 1771246v.7

*D.    Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be re-Filed or amended without the prior authorization of the Bankruptcy Court or the Post-Consummation Trust and any such re-Filed or amended Claim shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

*E.    Claims Register*

Any Claim that has been paid or satisfied, Allowed, or disallowed, may be adjusted or expunged on the Claims Register by the Post-Consummation Trust without a Claims objection or without any further notice or action, order, or approval of the Bankruptcy Court.  The Claims Agent shall be authorized to reflect any adjustments to the Claim Register at the direction of the Post-Consummation Trust Administrator.  Beginning on the end of the first full calendar year after the Effective Date, the Post-Consummation Trust shall File a list of all Claims that have been adjusted to the Claims Register during such prior year.

# ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

*A.    Conditions Precedent to Confirmation*

It shall be a condition precedent to Confirmation hereof that:

1.    all provisions, terms and conditions hereof are approved in the Confirmation Order; and

2.    the proposed Confirmation Order shall be in form and substance acceptable to the Proponents; provided that the Proponents may seek an expedited hearing before the Bankruptcy Court to address any objections to such order.

*B.    Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1.    the Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto shall be acceptable to the Proponents;

2.    the Confirmation Order shall have been entered and become a Final Order in form and substance satisfactory to the Proponents.  The Confirmation Order shall provide that, among other things, the Debtors or the Post-Consummation Trust, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including entering into, implementing and consummating the contracts, instruments, releases, leases or other agreements or documents created in connection with or described in the Plan, including the implementation of the Post-Consummation Trust;

3.       all documents and agreements necessary to implement the Plan, including the Post-Consummation Trust Agreement, shall have (a) satisfied (or the Proponents shall have waived) all conditions precedent to such documents and agreements becoming effective pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed; and

4.       all actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

## C.       *Waiver of Conditions*

The conditions precedent to Confirmation of the Plan and to Consummation of the Plan set forth in this Article X may be waived jointly by the Proponents, without notice, leave or order of the Bankruptcy Court or any formal action other than by proceeding to confirm or consummate the Plan.

## D.       *Effect of Non Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by, or Claims against, or Equity Interests in, the Debtors; (2) prejudice in any manner the rights of the Proponents, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Proponents, any Holders or any other Entity in any respect.

# ARTICLE XI.

# SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

## A.       *Compromise and Settlement*

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder takes into account and conforms to the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.  As of the Effective Date, any and all such rights described in the preceding sentence are settled, compromised and released pursuant hereto.  The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their estates and all Holders of Claims, (2) fair, equitable and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  In addition, the allowance, classification and treatment of Allowed Claims take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors, on the one hand, and the Debtor Releasees, on the other hand, and, as of the Effective Date, any and all such Causes of Action are settled, compromised and released pursuant hereto.  The Confirmation Order shall

approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

In accordance with the provisions of this Plan, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Post-Consummation Trust may, in its sole and absolute discretion, compromise and settle Claims against the Debtors and (2) the Post-Consummation Trust may, in its respective sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.     *Debtor Release*

**UPON SIX MONTHS AFTER THE EFFECTIVE DATE, IF THE POST CONFIRMATION TRUST HAS NOT INSTITUTED AN ACTION AGAINST THE DEBTOR RELEASEES, FOR GOOD AND VALUABLE CONSIDERATION (INCLUDING FOR SERVICES PERFORMED BY THE DEBTORS' DIRECTORS AND OFFICERS DURING THESE CHAPTER 11 CASES), THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTORS (IN THEIR INDIVIDUAL CAPACITIES AND AS DEBTORS AND DEBTORS IN POSSESSION) WILL BE DEEMED TO RELEASE FOREVER, WAIVE, AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION, AND LIABILITIES (OTHER THAN THE RIGHTS OF THE DEBTORS TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED HEREUNDER, AND LIABILITIES ARISING AFTER THE EFFECTIVE DATE IN THE ORDINARY COURSE OF BUSINESS) WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE THAT ARE BASED IN WHOLE OR PART ON ANY ACT OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCES IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE DEBTORS, TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE (OR THE DATE OF RESIGNATION OF AN OFFICER OR DIRECTOR, IF EARLIER), THE CHAPTER 11 CASES OF THE DEBTORS, THE NEGOTIATION AND FILING OF THE PLAN, THE DISCLOSURE STATEMENT OR ANY PRIOR PLANS OF REORGANIZATION, THE FILING OF THE CHAPTER 11 CASES RELATING TO THE DEBTORS, THE PURSUIT OF CONFIRMATION OF THE PLAN OR ANY PRIOR PLANS OF REORGANIZATION, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE PLAN THAT COULD HAVE BEEN ASSERTED BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES, AGAINST THE DEBTOR RELEASEES, PROVIDED, HOWEVER, THAT THIS RELEASE SHALL NOT EXTEND TO OR COVER ANY ACTS OR OMISSIONS THAT ARISE FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD. FOR THE AVOIDANCE OF DOUBT, THE RELEASES GRANTED IN THIS ARTICLE XI.B SHALL NOT EXTEND TO OR COVER ANY DIRECTORS OR OFFICERS OF THE DEBTORS WHO WERE NOT DIRECTORS OR OFFICERS OF THE DEBTORS AS OF THE PETITION DATE,**

**OR ANY OF THE DEBTORS' SHAREHOLDERS OR EQUITY INTEREST HOLDERS WHO ARE NOT DEBTOR RELEASEES.**

C.    *Exculpation*

**EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, THE DEBTORS, THE POST-CONSUMMATION TRUST ADMINISTRATOR, THE POST-CONSUMMATION TRUST, THE COMMITTEE, THE MEMBERS OF THE COMMITTEE (SOLELY IN THEIR CAPACITY AS SUCH), AND ANY OF THE FOREGOING PARTIES' RESPECTIVE PRESENT OR FORMER MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, ATTORNEYS, REPRESENTATIVES, FINANCIAL ADVISORS, INVESTMENT BANKERS, AGENTS OR OTHER PROFESSIONALS AND ANY OF SUCH PARTIES' SUCCESSORS AND ASSIGNS, SOLELY IN THEIR CAPACITIES AS SUCH, SHALL NOT HAVE OR INCUR ANY CLAIM, ACTION, PROCEEDING, CAUSE OF ACTION, AVOIDANCE ACTION, SUIT, ACCOUNT, CONTROVERSY, AGREEMENT, PROMISE, RIGHT TO LEGAL REMEDIES, RIGHT TO EQUITABLE REMEDIES, RIGHT TO PAYMENT, OR CLAIM (AS DEFINED IN BANKRUPTCY CODE SECTION 101(5)), WHETHER KNOWN, UNKNOWN, REDUCED TO JUDGMENT, NOT REDUCED TO JUDGMENT, LIQUIDATED, UNLIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED, DISPUTED, UNDISPUTED, SECURED, OR UNSECURED AND WHETHER ASSERTED OR ASSERTABLE DIRECTLY OR DERIVATIVELY, IN LAW, EQUITY, OR OTHERWISE TO ONE ANOTHER OR TO ANY CLAIMHOLDER OR INTEREST HOLDER, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE AGENTS, EMPLOYEES, REPRESENTATIVES, ADVISORS, ATTORNEYS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION ORIGINATING OR OCCURRING ON OR AFTER THE PETITION DATE THROUGH AND INCLUDING THE EFFECTIVE DATE (OR THE DATE OF RESIGNATION OF AN OFFICER OR DIRECTOR, IF EARLIER) IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE DEBTORS, THE CHAPTER 11 CASES OF THE DEBTORS, THE NEGOTIATION AND FILING OF THE PLAN, THE DISCLOSURE STATEMENT OR ANY PRIOR PLANS OF REORGANIZATION, THE FILING OF THE CHAPTER 11 CASES OF THE DEBTORS, THE PURSUIT OF CONFIRMATION OF THE PLAN OR ANY PRIOR PLANS OF REORGANIZATION, THE CONSUMMATION OF THE PLAN, THE ADMINISTRATION OF THE PLAN, OR THE PROPERTY TO BE LIQUIDATED AND/OR DISTRIBUTED UNDER THE PLAN.**

D.    *Indemnification*

Except as otherwise provided in this Plan or any contract, instrument, release, or other agreement or document entered into in connection with this Plan, any and all indemnification obligations that the Debtors have pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law shall be rejected as of the Effective Date, to the extent executory. Nothing in this Plan shall be deemed to release the Debtors' insurers from any claims that might be asserted by counter-

parties to contracts or agreements providing the indemnification by and of the Debtors, to the extent of available coverage.

*E.     Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT: (1) HAVE BEEN RELEASED PURSUANT TO ARTICLE XI.B HEREOF, (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE XI.C HEREOF, (3) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE XI.D HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN ARTICLE XI.D), ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF

PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED (INCLUDING THE POST-CONSUMMATION TRUST) (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, DISCHARGED OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION OR LIABILITIES RELEASED OR SETTLED PURSUANT TO THE PLAN.

## ARTICLE XII.

## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS, NOTWITHSTANDING WHETHER ANY SUCH HOLDERS DID NOT VOTE TO ACCEPT OR REJECT THE PLAN, VOTED TO REJECT THE PLAN OR WERE DEEMED TO REJECT THE PLAN.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

4. resolve any issues related to the Chapter 11 Cases (including any matters adjudicated in the Chapter 11 Cases);

5. ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

CHI1 1771246v.7

6.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Post-Consummation Trust after the Effective Date; provided that the Post-Consummation Trust shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, the Post-Consummation Trust and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement, the Post-Consummation Trust Agreement, or the Disclosure Statement;

8.     resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan, the Sale Order, the Sale Transaction or the Post-Consummation Trust;

9.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

10.     enforce Article XI.A, Article XI.B, Article XI.C, and Article XI.D;

11.     enforce the injunction set forth in Article XI.E hereof;

12.     resolve any cases, controversies, suits or disputes with respect to any Debtor Release, Exculpation, Indemnification or other provisions contained in Article XI hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.     enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan, the Sale Transaction or the Disclosure Statement; and

15.     enter an order concluding the Chapter 11 Cases.

# ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### A.  *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve, and the Committee Members shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; provided, however, that the Committee and their respective Retained Professionals shall be retained with respect to applications Filed pursuant to sections 330 and 331 of the Bankruptcy Code.  This provision shall not impair the rights of Committee Members under section 503(b)(3)(F) of the Bankruptcy Code.

### B.  *Payment of Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon as reasonably practicable thereafter.

### C.  *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (1) the Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (2) after the entry of the Confirmation Order, the Proponents or the Post-Consummation Trust, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### D.  *Revocation of Plan*

The Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Proponents revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity, (b) prejudice in any manner the rights of the Proponents, or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Proponents.

### E.  *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

CHI1 1771246v.7

*F.*     *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the Filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

*G.*     *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax, document recording tax, conveyance fee, intangibles or similar tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

*H.*     *Further Assurances*

The Debtors, the Committee or the Post-Consummation Trust, as applicable, and all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

*I.*     *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to the Debtors; provided further that the Proponents may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing.  Notwithstanding any such order by the Bankruptcy Court providing for such alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

*J.*     *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by overnight mail to:

Alvarez & Marsal North America, LLC
c/o Palm Harbor Winddown
2100 Ross Avenue, 21st Floor
Dallas TX 75201

with copies to:

David W. Wirt
Aaron C. Smith
Courtney E. Barr
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago IL 60606-4410

Any pleading, notice or other document required by the Plan to be served on or delivered to the Committee shall be sent by overnight mail to:

Laura Davis Jones
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705

### K.     *Filing of Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

Dated:  August 5, 2011                          Respectfully Submitted,

Palm Harbors Homes, Inc.,                       The Official Committee of Unsecured
Palm Harbor Albemarle, LLC,                     Creditors
Nationwide Homes, Inc.,
Palm Harbor Real Estate, LLC,
Palm Harbor GenPar, LLC, and
Palm Harbor Manufacturing, LP


| /s/ Brian E. Cejka | /s/ Todd Pulvino |
|---|---|
| Name: Brian E. Cejka | Todd Pulvino, |
| Title: Their Chief Restructuring Officer | Solely In His Capacity As Chair Of The Committee, And Not in any Individual Capacity |

# EXHIBIT A

# POST-CONSUMMATION TRUST AGREEMENT

This Post-Consummation Trust Agreement (the "Agreement") is made as of _____, 2011 by and among Palm Harbor Homes, Inc., Palm Harbor Albemarle, LLC, Nationwide Homes, Inc., Palm Harbor Real Estate, LLC, Palm Harbor GenPar, LLC, and Palm Harbor Manufacturing, LP (each a "Debtor" and, collectively, the "Debtors"), and Brian Cejka, as the post-consummation trust administrator (the "Post-Consummation Trust Administrator") and executed in connection with the Joint Plan of Liquidation proposed by the Debtors and Committee Regarding Palm Harbor Homes, Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code dated [_____,] 2011 (as the same has been or may be amended, the "Plan")[1] filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

## RECITALS

WHEREAS, on November 29, 2010, each of the Debtors filed voluntary Chapter 11 petitions with the Bankruptcy Court; and

WHEREAS, on March 4, 2011, the Bankruptcy Court approved the sale of substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "Sale") to Palm Harbor Homes, Inc., a Delaware corporation (the "Purchaser"); and

WHEREAS, the Sale has closed; and

WHEREAS, on [_____], 2011, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"); and

WHEREAS, the Plan's Effective Date occurred on [_____], 2011; and

WHEREAS, the Plan contemplates, on the Effective Date, (a) the creation of the Post-Consummation Trust (the "Liquidating Trust") and the creation of the beneficial interests in the Liquidating Trust for holders of Allowed Claims entitled to distributions from the Liquidating Trust as provided for in Plan, and (b) the Liquidating Trust will be vested with all of the Debtors' right, title and interest in all of the Post-Consummation Trust Assets, including without limitation, all of the Debtors' Assets, the right to prosecute, settle, withdraw or resolve in any manner any claims and rights that the Debtors may hold against any Entity to be liquidated and distributed to the Beneficiaries, as set forth in the Plan; and

WHEREAS, on or soon after the Effective Date, each of the Debtors shall cause all of its Assets and the Assets of their Estates to be transferred to the Liquidating Trust; and

WHEREAS, the Plan contemplates that, pursuant to Treasury Regulation Section 301.7701-4(d), the Liquidating Trust shall be created for the primary purpose of: (a) administering the Post-Consummation Trust Assets; (b) resolving all Disputed Claims; (c) pursuing any claims and rights that the Debtors or their Estates may hold against any Entity;

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Plan.

(d) making all distributions to the Beneficiaries provided for under the Plan, and (e) liquidating the Post-Consummation Trust Assets in an expeditious but orderly manner for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trust and the Plan; and

WHEREAS, the Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended (the "IRC"), with the Beneficiaries to be treated as the grantors of the Liquidating Trust and deemed to be the owners of the Post-Consummation Trust Assets (subject to the rights of creditors of the Liquidating Trust), and consequently, the transfer of the Post-Consummation Trust Assets to the Liquidating Trust shall be treated as a deemed transfer of those assets from the Debtors and the Estates to the Beneficiaries followed by a deemed transfer by such Beneficiaries to the Liquidating Trust for federal income tax purposes.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

**1.1.    Creation and Purpose of the Liquidating Trust**.  The Debtors and the Post-Consummation Trust Administrator hereby create the Liquidating Trust for the primary purpose of liquidating and distributing the Post-Consummation Trust Assets to the Beneficiaries in accordance with the Plan, the Confirmation Order, and applicable tax statutes, rules and regulations, and in an expeditious but orderly manner, with no objective to continue or engage in the conduct of a trade or business. In particular, the Post-Consummation Trust Administrator shall (a) make continuing efforts to collect and reduce the Post-Consummation Trust Assets to Cash, (b) make timely distributions and not unduly prolong the duration of the Liquidating Trust.

**1.2.    Declaration of Trust.** In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Post-Consummation Trust Administrator have executed this Agreement and, effective on the Plan's Effective Date, hereby irrevocably transfer to the Liquidating Trust, all of the rights, title and interests of the Debtors in and to the Post-Consummation Trust Assets, to have and to hold unto the Liquidating Trust and its successors and assigns forever, under and subject to the terms of the Plan and the Confirmation Order for the benefit of the Beneficiaries and their successors and assigns as provided for in this Agreement, and in the Plan and Confirmation Order.

**1.3.    Vesting of Post-Consummation Trust Assets.**  Pursuant to the terms of the Plan, on the Effective Date, all Assets of the Estates, i.e., the Post-Consummation Trust Assets, shall be vested in the Liquidating Trust, which also shall be authorized to obtain, liquidate, and collect all of the Post-Consummation Trust Assets of the Estates not in its possession. Subject to the provisions of the Plan, all such Post Consummation Trust Assets shall be delivered to the

Liquidating Trust free and clear of interests, Claims, Liens, or other encumbrances of any kind. Except as set forth in the last sentence of this Section 1.3, the Post-Consummation Trust Administrator shall have no duty to arrange for any of the transfers contemplated hereunder and shall be conclusively entitled to rely on the legality and validity of such transfers. Moreover, on the Effective Date, all privileges with respect to any Assets of the Estates, including the attorney/client privilege, to which the Debtors are entitled shall be automatically vested in, and available for assertion by or waiver on behalf of the Liquidating Trust. To the extent any of the foregoing does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Agreement, the Debtors shall, on the Effective Date or such later date as may be requested by the Post-Consummation Trust Administrator, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing.

**1.4. Funding of the Trust.** The Liquidating Trust shall be funded, on the Effective Date, with the Post-Consummation Trust Assets, as provided for in the Plan and in the Confirmation Order.

**1.5. Acceptance by Post-Consummation Trust Administrator**. The Post-Consummation Trust Administrator hereby accepts the trust imposed upon him by this Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Liquidating Trust, the Post-Consummation Trust Administrator hereby accepts the transfer of the Post-Consummation Trust Assets (other than the Assets and those assets not otherwise abandoned pursuant to the terms of the Plan).

**1.6. Name of the Liquidating Trust**. The Liquidating Trust established hereby shall be known as the "Palm Harbor Liquidating Trust".

**1.7. Post-Consummation Trust Oversight Committee**. Pursuant to the Plan and this Agreement, the Liquidating Trust shall establish the Post-Consummation Trust Oversight Committee (the "Oversight Committee"). The Oversight Committee shall have those duties and powers as provided for in this Agreement, Plan, and the Oversight Committee Bylaws, if any, governing the Oversight Committee.

**1.8. No Reversion to the Debtors**. Except as expressly provided in the Plan or under this Liquidation Trust Agreement, in no event shall any part of the Post-Consummation Trust Assets revert to or be distributed to the Debtors.

## ARTICLE II
## THE POST-CONSUMMATION TRUST ADMINSTRATOR

**2.1. Appointment.** The Post-Consummation Trust Administrator shall be appointed to assume his responsibilities on the Effective Date. The Post-Consummation Trust Administrator's appointment shall continue until the earlier of (a) the termination of the Liquidating Trust, or (b) the Post-Consummation Trust Administrator's resignation, removal, death, or disability (meaning herein, incapacity resulting in the inability to perform services for three consecutive months or in the aggregate of 180 days during any 12 month period).

**2.2.** **General Powers.** Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, the Post-Consummation Trust Administrator may control and exercise authority over the Post-Consummation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the business of the Liquidating Trust, subject to the supervision of the Oversight Committee. Regarding all matters identified in Section 3.3 hereof, the Post-Consummation Trust Administrator, shall follow the direction of the Oversight Committee. No Person dealing with the Liquidating Trust shall be obligated to inquire into the Post-Consummation Trust Administrator's authority in connection with the acquisition, management, or disposition of Post-Consummation Trust Assets; provided, however, the members of the Oversight Committee are entitled to make such inquires in connection with the exercise of their rights or powers pursuant to Section 3.3 of this Agreement. The Post-Consummation Administrator shall administer the Liquidating Trust, and its assets, and make Distributions from the proceeds of the Liquidating Trust in accordance with the Plan and this Agreement. Subject to the rights and powers of the Oversight Committee set forth in Section 3.3, the Post-Consummation Administrator shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

    1.    administer, sell, liquidate, or otherwise dispose of all of the Post-Consummation Trust Assets in accordance with the terms of the Plan and this Agreement;

    2.    take all actions necessary to wind down the affairs of the Debtors consistent with the Plan and applicable non-bankruptcy law;

    3.    file final federal, state, foreign and, to the extent applicable, local, tax returns, and, to the extent necessary, pay such Taxes from the Post-Consummation Trust Assets;

    4.    represent the Debtors' Estates and the Liquidating Trust before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust;

    5.    seek the examination of any entity under and subject to the provisions of Bankruptcy Rule 2004;

    6.    comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

    7.    comply with all applicable laws and regulations concerning the matters set forth herein;

    8.    exercise such other powers as may be vested in the Liquidating Trust pursuant to the this Agreement, the Plan, or other Final Orders of the Bankruptcy Court;

9.	execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of the Liquidating Trust consistent with the Plan and this Agreement;

10.	provide periodic reporting to the Post-Consummation Trust Oversight Committee; and

11.	stand in the shoes of the Debtors for all purposes.

**2.3.	Limitations on the Post-Consummation Trust Administrator**. Notwithstanding anything under applicable law, this Agreement or the Plan to the contrary, the Post-Consummation Trust Administrator's discretion and authority to retain and compensate professionals, prosecute and settle Claims, objections to Claims, or Causes of Actions, make distributions, or take other conduct requiring the approval of the Oversight Committee as set forth in this Agreement, shall be subject to the limitations contained in Section 3.3 below. Further, the Post-Consummation Trust Administrator shall not do or undertake any of the following:

(a)	Take or fail to take, any action that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(b)	Receive transfers of any listed stocks or securities, any readily-marketable assets or any operating assets of a going business, except as is absolutely necessary or required under the Plan or the Confirmation Order; provided, however, that in no event shall the Post-Consummation Trust Administrator receive any such investment that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(c)	Exercise any investment power other than the power to invest in demand and time deposits in banks or savings institutions, temporary investments such as short term certificates of deposit or Treasury bills, money market mutual funds that are registered with the Securities and Exchange Commission under the Investment Company Act of 1940, as amended, and operated in accordance with Rule 2a-7 and that at the time of such investment are rated Aaa by Moody's and/or AAAm by S&P, including such funds for which the Post-Consummation Trust Administrator or an affiliate provides investment advice or other services, or other investments that a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) may be permitted to hold, pursuant to the Treasury Regulations or any modification in the IRS guidelines, whether set forth in IRS rulings, revenue procedures, other IRS pronouncements or otherwise.

(d)	Receive or retain any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or fifty percent (50%) or more of the stock of a corporation with operating assets, except as is absolutely necessary or required under the Plan or the Confirmation Order; provided, however, that in no event shall the Post-Consummation Trust Administrator receive or retain any such asset or interest that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

**2.4.    Compensation of Post-Consummation Trust Administrator and its Professionals**

(a)    The Post-Consummation Trust Administrator shall be entitled to receive reasonable compensation in connection with its performance of its duties at an hourly rate of $675, plus the reimbursement of reasonable out-of-pocket expenses. Any successor to the Post-Consummation Trust Administrator shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein and shall be approved by the Oversight Committee, plus the reimbursement of reasonable out-of-pocket expenses.

(b)    On or before the last day of each month following the month for which compensation or reimbursement is sought, the Post-Consummation Trust Administrator and each of its professionals (unless any such professionals, the Post-Consummation Trust Administrator, and the Oversight Committee, agree to different treatment) seeking compensation shall serve a monthly statement on the Post-Consummation Trust Administrator and the Oversight Committee. The Post-Consummation Trust Administrator and the Oversight Committee will have ten (10) days from the date such statement is received to review the statement and object to such statement by serving an objection on the Post-Consummation Trust Administrator, the Oversight Committee, and the party seeking compensation setting forth the precise nature of the objection and the amount at issue.  At the expiration of the ten (10) day period, the Post-Consummation Trust Administrator shall pay from Post-Consummation Trust Assets 100% of the amounts requested, except for the portion of such fees and disbursements to which any objection has been made.  The parties shall attempt to consensually resolve objections, if any, to any monthly statement.  If the parties are unable to reach a consensual resolution of any such objection, the party who received an objection to its fees and costs may seek payment of such fees and costs by filing a motion with the Bankruptcy Court and providing notice to the Post-Consummation Trust Administrator.  If the Post-Consummation Trust Administrator or any professional fails to submit a monthly statement, it shall be ineligible to receive payment of fees and expenses therefore as provided in this Agreement until the monthly statement is submitted.

**2.5.    General Duties, Obligations, Rights and Benefits of the Post-Consummation Trust Administrator.**  The Post-Consummation Trust Administrator shall have all duties, obligations, rights and benefits assumed by, assigned to, or vested in the Liquidating Trust  under the Plan, the Confirmation Order, this Agreement and any other agreement entered into pursuant to or in connection with the Plan.  Such duties, obligations, rights and benefits include, without limitation, all duties, obligations, rights, and benefits relating to the collection and liquidation of the Post-Consummation Trust Assets, administration of Claims, satisfaction of claims of creditors, distributions to Beneficiaries, administration of the Liquidating Trust  and any other duties, obligations, rights and benefits reasonably necessary to accomplish the purpose of the Liquidating Trust  under the Plan, the Confirmation Order, this  Agreement and any other agreement entered into pursuant to or in connection with the Plan.  Without limiting the duties, obligations, rights and benefits of the Post-Consummation Trust Administrator under this Section or any other provision of this Agreement, the Post-Consummation Trust Administrator shall have all duties, obligations, rights, and benefits assigned to the Post-Consummation Trust Administrator under the Confirmation Order.

**2.6. INTENTIONALLY OMITTED**.

**2.7. Replacement of the Post-Consummation Trust Administrator**. The Post-Consummation Trust Administrator may resign at any time upon thirty (30) days' written notice delivered to the Oversight Committee. The Post-Consummation Trust Administrator may be removed by unanimous vote of the Oversight Committee. In the event of the resignation or removal of the Post-Consummation Trust Administrator, the Oversight Committee, shall, by majority vote, designate a person to serve as successor Post-Consummation Trust Administrator. Upon its appointment, the successor Post-Consummation Trust Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor and all responsibilities of the predecessor Post-Consummation Trust Administrator relating to the Liquidating Trust shall be terminated. In the event the Post-Consummation Trust Administrator's appointment terminates by reason of termination (except for termination with cause), death or disability (as defined above), such Post-Consummation Trust Administrator shall be immediately compensated for all reasonable fees and expenses accrued through the effective date of termination, whether or not previously invoiced. The provisions of Article V shall survive the resignation or removal of any Post-Consummation Trust Administrator.

**2.8. Liquidating Trust Continuance.** The death, disability, resignation, or removal of the Post-Consummation Trust Administrator shall not terminate the Liquidating Trust or revoke any existing agency created by the Post-Consummation Trust Administrator pursuant to this Agreement or invalidate any action theretofore taken by the Post-Consummation Trust Administrator, and the successor Post-Consummation Trust Administrator agrees that the provisions of this Agreement shall be binding upon and inure to the benefit of the successor Post-Consummation Trust Administrator and all its successors or assigns.

## ARTICLE III
## POST-CONSUMMATION TRUST OVERSIGHT COMMITTEE

**3.1. Oversight Committee.** As of the Effective Date, the Oversight Committee shall be comprised of (a) American Stock Transfer & Trust Company LLC as 3.25% Convertible Senior Notes Indenture Trustee; (b) AQR Absolute Return Master Account, LP c/o CNH Partners; (c) Greenwood Capital, LP and Greenwood Investors LP; and (d) Atlantic Service & Supply LLC (each, a "Member", and, collectively, the "Members"). Should any of the Members resign from or otherwise cease to serve on the Oversight Committee, replacements, if any, may be selected by the remaining Members acting by majority vote, upon notice to the Bankruptcy Court. Except as otherwise expressly provided herein, a majority vote of the Members shall constitute an act or decision of the Oversight Committee. A Person shall not be disqualified from serving as a Member as a consequence of that Person's employment or affiliation with an Entity engaged in the trading of Claims against or Interest in a Debtor, provided that an internal "ethical wall" has been created prohibiting such Person from discussing or sharing any information about the Debtors with others employed by or affiliated with the Entity engaged in such trading activities.

**3.2. Reports to Oversight Committee.** Notwithstanding any other provision of this Agreement, the Post-Consummation Trust Administrator shall report to the Oversight Committee, on a regular basis as may be requested by the Oversight Committee, not less than

monthly or the first year following the Effective Date and thereafter no less than four times per year, which reports shall include such matters and information as reasonably requested by the Oversight Committee. The Oversight Committee shall keep all such information strictly confidential, except to the extent the Oversight Committee deems it reasonably necessary to disclose such information to the Bankruptcy Court (in which case, a good faith effort shall be made to file such information under seal).

**3.3.    Actions Requiring Approval of the Oversight Committee**.    The Post-Consummation Trust Administrator shall obtain the approval of the Oversight Committee (by at least a majority vote) prior to taking any action regarding any of the following matters:

(a)    The commencement of any Cause of Action or Claim Objection by the Liquidating Trust;

(b)    The settlement, compromise, withdrawal, dismissal or other resolution of any (i) Claims or Objections to Claims by the Liquidating Trust where the amount set forth in the Claim exceeds $20,000 of the amount set forth in the Liquidating Trust's books and records as being owed pursuant to such claim; and (ii) Cause of Action by the Liquidating Trust if the amount sought to be recovered in the complaint or other document initiating such Cause of Action exceeds $20,000;

(c)    The sale, transfer, assignment, or other disposition of any non-Cash Post-Consummation Trust Assets having a valuation in excess of $10,000;

(d)    The abandonment of any non-Cash Post-Consummation Trust Assets that have a valuation of at least $20,000;

(e)    The borrowing of any funds by the Liquidating Trust or pledge of any portion of the Post-Consummation Trust Assets;

(f)    The exercise of any right or action set forth in this Agreement that expressly requires approval of the Oversight Committee, unless the applicable provision expressly requires unanimous approval of the Oversight Committee for the exercise of any such right or action, or as required under Section 2.7 of this Agreement;

(g)    The amount and timing of distributions from the proceeds of the Post-Consummation Trust Assets;

(h)    The employment, retention, or replacement of one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of the Post-Consummation Trust Administrator under the Plan and this Agreement if the proposed professional will be paid over $10,000 in the aggregate;

(i)    The establishment or setting of the Disputed Reserves or any other reserves in aid of distribution and opening, maintaining and administering bank accounts as necessary to discharge the duties of the Post-Consummation Trust Administrator under the Plan and this Agreement; or

(j)     The payment of costs of the Liquidating Trust, including professional fees, costs, and expenses as set forth in the Plan, subject to the approval of the Post-Consummation Trust Oversight Committee if any proposed payment is in excess of $10,000.

In the event that the Post-Consummation Trust Administrator cannot take any action, including, without limitation, the prosecution of any Causes of Action or the objection to any Claim, by reason of an actual or potential conflict of interest, the Oversight Committee acting by a majority shall be authorized to take any such action(s) in his place and stead, including without limitation, the retention of professionals (which may include professionals retained by the Post-Consummation Trust Administrator) for such purpose of taking such actions.

**3.4.     Investments and Bond.** The Oversight Committee may authorize the Liquidating Trust  to invest the Post-Consummation Trust Assets in prudent investments other than those described in Section 345 of the Bankruptcy Code. The Oversight Committee may, at its discretion, require a fidelity bond from the Post-Consummation Trust Administrator in such reasonable amount as may be agreed to by majority vote of the Oversight Committee, but any costs associated with any such fidelity bond shall be payable exclusively from the Post-Consummation Trust Assets.

**3.5.     Compensation of Oversight Committee**.  Each active Member shall be entitled to receive $2,500 per meeting attended and reimbursement of reasonable out-of-pocket expenses incurred in such Member's duty on behalf of the Oversight Committee.

## ARTICLE IV
## RESOLUTION AND RECONCILIATION OF GENERAL UNSECURED CLAIMS

**4.1.     The Liquidating Trust's Exclusive Authority to Reconcile General Unsecured Claims.** Pursuant to Article IX(A)1 of the Plan and subject to Section 3.3 herein, the Liquidating Trust shall have exclusive authority to File objections to, and settle, compromise, withdraw or litigate to judgment objections to any and all General Unsecured Claims after the Effective Date.

## ARTICLE V
## LIABILITY OF POST-CONSUMMATION TRUST ADMINISTRATOR AND THE OVERSIGHT COMMITTEE

**5.1.     Standard of Care; Exculpation.** Neither the Post-Consummation Trust Administrator, the Members of the Oversight Committee, nor any director, officer, affiliate, employee, employer, professional, agent or representative of the Post-Consummation Trust Administrator or any Member of the Oversight Committee (the "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses") whether or not in connection with litigation in which

any Exculpated Party is a party, or enforcing this Agreement (including these exculpation provisions), as and when imposed on the Post-Consummation Trust Administrator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Post-Consummation Trust Administrator's or the Oversight Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; provided, however, that the foregoing limitation shall not apply to any Losses suffered or incurred by any holder of a Claim or Interest or Beneficiary that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence or willful misconduct of such Exculpated Party. Every act taken or omitted, power exercised or obligation assumed by the Liquidating Trust or any Exculpated Party pursuant to the provisions of this Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Liquidating Trust or any Exculpated Party acting for and on behalf of the Liquidating Trust and not otherwise; provided, however, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons' actions or inactions. Except as provided in the first proviso of the first sentence of this Section 5.1, every Person, firm, corporation, or other Entity contracting or otherwise dealing with or having any relationship with the Liquidating Trust or any Exculpated Party shall have recourse only to the Post-Consummation Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships and the Liquidating Trust and the Exculpated Parties shall not be individually liable therefore. In no event shall the Post-Consummation Trust Administrator or any Exculpated Party be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Post-Consummation Trust Administrator or any Exculpated Party has been informed of the likelihood of such loss or damages and regardless of the form of action. Notwithstanding anything to the contrary herein, in no event shall the liability of the Post-Consummation Trust Administrator or any Exculpated Party under this Liquidating Trust Agreement exceed the total amount of fees paid to the Post-Consummation Trust Administrator or any Exculpated Party under this Agreement.

**5.2. Indemnification**.

(a) Except as otherwise set forth in the Plan or Confirmation Order, the Post-Consummation Trust Administrator, the Members of the Oversight Committee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the Post-Consummation Trust Administrator or the Members of the Oversight Committee (each, an "Indemnified Party" and collectively, the "Indemnified Parties") shall be defended, held harmless and indemnified from time to time by the Liquidating Trust against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others in investigating, preparing, or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Agreement (including these indemnity provisions), as and when imposed on the Post-Consummation Trust Administrator, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Post-Consummation Trust Administrator's or the Oversight Committee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Agreement, the Plan, or the Confirmation

Order or as may arise by reason of any action, omission, or error of an Indemnified Party; provided, however, such indemnity shall not apply to any such Losses to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party. Satisfaction of any obligation of the Liquidating Trust arising pursuant to the terms of this Section shall be payable only from the Post-Consummation Trust Assets, shall be advanced prior to the conclusion of such matter and such right to payment shall be prior and superior to any other rights to receive a distribution of the Post-Consummation Trust Assets.

(b)    Subject to the availability of Post-Consummation Trust Assets, the Liquidating Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis. Each Indemnified Party hereby undertakes, and the Liquidating Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Liquidating Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Agreement.

**5.3.    No Liability for Acts of Successor/Predecessor Post-Consummation Trust Administrators**. Upon the appointment of a successor Post-Consummation Trust Administrator and the delivery of the Post-Consummation Trust Assets to the successor Post-Consummation Trust Administrator, the predecessor Post-Consummation Trust Administrator and any director, officer, affiliate, employee, employer, professional, agent or representative of the predecessor Post-Consummation Trust Administrator shall have no further liability or responsibility with respect thereto. A successor Post-Consummation Trust Administrator shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Post-Consummation Trust Administrator shall be in any way liable for the acts or omissions of any predecessor Post-Consummation Trust Administrator unless a successor Post-Consummation Trust Administrator expressly assumes such responsibility. A predecessor Post-Consummation Trust Administrator shall have no liability for the acts or omissions of any immediate or subsequent successor Post-Consummation Trust Administrator for any events or occurrences subsequent to the cessation of its role as Post-Consummation Trust Administrator.

**5.4.    Reliance by Post-Consummation Trust Administrator and the Oversight Committee on Documents or Advice of Counsel.** Except as otherwise provided in this Agreement, the Post-Consummation Trust Administrator, the Oversight Committee, any director, officer, affiliate, employee, employer, professional, agent or representative of the Post-Consummation Trust Administrator, and the Members of the Oversight Committee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Post-Consummation Trust Administrator and/or the Oversight Committee to be genuine and to have been presented by an authorized party. Neither the Post-Consummation Trust Administrator nor the Oversight Committee, shall be liable for any action taken or suffered by the Post-Consummation Trust Administrator or the Oversight Committee, as applicable, in reasonable reliance upon the advice of counsel or other professionals engaged by the Post-Consummation Trust Administrator. The Post-Consummation Trust Administrator and the Oversight Committee, as applicable, shall be fully indemnified by the Liquidating Trust for or in

respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

**5.5.** **Insurance.** The Post-Consummation Trust Administrator, upon the approval of the Oversight Committee, may purchase, using Post-Consummation Trust Assets, and carry all insurance policies and pay all insurance premiums and costs the Oversight Committee (if any) and the Post-Consummation Trust Administrator deem reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud or willful misconduct, with respect to the implementation and administration of the Plan or this Agreement.

**5.6.** The provisions of this Article V shall survive the termination of this Agreement and the death, resignation, removal, liquidation, dissolution, or replacement of the Post-Consummation Trust Administrator or the dissolution of the Oversight Committee.

## ARTICLE VI
## GENERAL PROVISIONS CONCERNING ADMINISTRATION OF THE LIQUIDATING TRUST

**6.1.** **Liquidating Trust Reserve.** The Liquidating Trust may, at its discretion, establish the Liquidating Trust Reserve as set forth in Section 9.2 of this Agreement.

**6.2.** **Register of Beneficiaries.** The Liquidating Trust shall maintain at all times a register of the names, distribution addresses, amounts of Allowed Claims, and the ratable interests in the Liquidating Trust of the Beneficiaries (the "Register"). The initial Register shall be delivered to the Post-Consummation Trust Administrator by the Debtors and shall be based on the list of holders of Claims maintained by BMC Group, Inc. as of the Effective Date and prepared in accordance with the provisions of the Plan and the Confirmation Order. All references in this Agreement to holders of beneficial interests in the Liquidating Trust shall be read to mean holders of record as set forth in the Register maintained by the Post-Consummation Trust Administrator and shall exclude any beneficial owner not recorded on such Register. The Post-Consummation Trust Administrator shall cause the Register to be kept at its office or at such other place or places as may be designated by the Post-Consummation Trust Administrator from time to time.

(a) **Books and Records.** On the Effective Date, the Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the books and records of the Debtors. The Liquidating Trust shall have the responsibility of storing and maintaining books and records transferred hereunder until the Chapter 11 Cases are closed, after which time such books and records may, to the extent not prohibited by applicable law, be abandoned or destroyed without further Bankruptcy Court order. For the purpose of this Section 6.2, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtors maintained by or in possession of third parties and all of the claims and rights of the Debtors in and to their books and records, wherever located.

(b)     The Post-Consumption Trust Administrator also shall maintain in respect of the Liquidating Trust  and the Beneficiaries, books and records relating to the Post-Consumption Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Liquidating  Trust  in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Agreement is intended to require the Liquidating  Trust  to file any accounting or seek approval of any court with respect to the administration of the Liquidating  Trust, or as a condition for making any payment or distribution out of the Post-Consumption Trust Assets. The Oversight Committee shall have the right to inspect the books and records of the Liquidating  Trust  at any time upon reasonable notice to the Post-Consumption Trust Administrator. Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Post-Consumption Trust Administrator to inspect the Liquidating Trust's books and records, including the Register, provided such Beneficiary shall have entered into a confidentiality agreement in form and substance reasonably satisfactory to the Post-Consumption Trust Administrator. Satisfaction of the foregoing condition notwithstanding, if (a) the Post-Consumption Trust Administrator and the Oversight Committee, determine in good faith that the inspection of the Liquidating Trust's books and records, including the Register, by any Beneficiary, would be detrimental to the Liquidating Trust  or (b) such Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Liquidating Trust, the Liquidating  Trust  may deny such request for inspection. The Bankruptcy Court shall resolve any dispute between any Beneficiary and the Post-Consumption Trust Administrator under this Section 6.2.

**6.3.     Interim Reports to Beneficiaries.** The Liquidating Trust shall file with the Bankruptcy Court semi-annual reports (which reports may be the post-confirmation quarterly reports required by the Office of the United States Trustee) regarding the liquidation or other administration of the Post-Consumption Trust Assets and will make such reports available to any Beneficiary upon such Beneficiary's written request.

**6.4.     Final Accounting of Post-Consumption Trust Administrator**. The Post-Consumption Trust Administrator (or any such successor Post-Consumption Trust Administrator) shall within ninety (90) days after the termination of the Liquidating Trust  or the death, dissolution, resignation or removal of the Post-Consumption Trust Administrator, render an accounting containing at least the following information:

(a)     A description of the value of the Post-Consumption Trust Assets.

(b)     A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidating Trust  and the Post-Consumption Trust Assets during the Post-Consumption Trust Administrator's term of service, including their source and nature.

(c)     The ending balance of all Post-Consumption Trust Assets as of the date of the accounting, including the Cash balance on hand and the name(s) and location(s) of the depository or depositories where the Cash is kept.

(d) All known liabilities of the Liquidating Trust.

(e) All pending actions.

**6.5. Filing of Accounting.** The final accounting described in Section 6.4 shall be filed with the Bankruptcy Court and all Beneficiaries shall have notice that the final accounting has been filed and an opportunity to have a hearing on the approval of the accounting and the discharge and release of the Post-Consummation Trust Administrator.

## ARTICLE VII
## BENEFICIAL INTERESTS AND BENEFICIARIES

**7.1. Trust Beneficial Interests.** Each holder of an Allowed Claim entitled to distributions from the Post-Consummation Trust shall be entitled to receive beneficial interests in accordance with the treatment of such Claim under the Plan, and shall be entitled to distributions as set forth in the Plan; provided however, that the Post-Consummation Trust shall have no obligations to make distributions to holders of Allowed Claims that do not timely respond to requests for tax identification information as set forth in the Plan.

**7.2. Interest Beneficial Only.** Ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary to any title in or to the Post-Consummation Trust Assets or to any right to call for a partition or division of the Post-Consummation Trust Assets or to require an accounting.

**7.3. Evidence of Beneficial Interest.** Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security or receipt or in any other manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Post-Consummation Trust Administrator, which may be the Register.

**7.4. Exemption from Registration.** The parties hereto intend that the rights of the holders of the beneficial interests arising under this Agreement shall not be "securities" under applicable laws, but none of the parties hereto represents or warrants that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities laws. If such rights constitute securities, the parties hereto intend for the exemption from registration provided by Section 1145 of the Bankruptcy Code and by other applicable law to apply to their issuance under the Plan.

**7.5. Transfers of Beneficial Interests.** Beneficial interests in the Liquidating Trust shall be nontransferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims occurring after the Effective Date. Only those holders of Claims of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized for all purposes hereunder.

**7.6. Absolute Owners.** The Post-Consummation Trust Administrator may deem and treat the Beneficiary reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

**7.7. Change of Address.** A Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court or by written notice under penalty of perjury (copy served on the Post-Consummation Trust Administrator) identifying such alternative distribution address. Absent such notice, the Post-Consummation Trust Administrator shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Post-Consummation Trust Administrator.

**7.8. Effect of Death, Dissolution, Incapacity or Bankruptcy of Beneficiary**. The death, dissolution, incapacity or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate Liquidating Trust during the term of the Liquidating Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Post-Consummation Trust Assets or for a partition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Agreement or in the Liquidating Trust.

**7.9. Standing.** Except as expressly provided in this Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Post-Consummation Trust Administrator to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than against the Post-Consummation Trust Administrator to the extent provided in this Agreement) upon or with respect to the Post-Consummation Trust Assets.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.1. Incorporation of Plan Provisions.** As of the Effective Date, the Liquidating Trust shall assume responsibility for all Claims matters established by the Plan. In accordance with the Plan, the Liquidating Trust shall establish Disputed Claims Reserves pending resolution, as set forth in the Plan, of all contested matters and adversary proceedings concerning Disputed Claims.

**8.2. Disputed Claims Reserve**.

(a) **Establishment of Disputed Claims Reserve.** On the initial distribution date (or on any other date on which distributions are made by the Post-Consummation Trust Administrator), and in connection with making all distributions required to be made on any such date under the Plan, the Post-Consummation Trust Administrator shall establish a separate Disputed Claims Reserve on account of distributions of Cash as necessary pursuant to the Plan.

(b) **Amounts to Be Reserved.** The Post-Consummation Trust Administrator shall reserve the ratable proportion of all Cash, or other property allocated for distribution on account of each Disputed Claim based upon the asserted amount of each such Disputed Claim, or such lesser amount as may be estimated by the Bankruptcy Court in accordance with the Plan. All Cash or other property allocable to Disputed Claims hereunder shall be distributed by the Post-Consummation Trust Administrator to the relevant Disputed Claims Reserve on the initial distribution date (or such other date on which distributions are made pursuant to the Plan and this Agreement).

(c)     **Distribution.** Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed by the Post-Consummation Trust Administrator from the Disputed Claims Reserve.  If a distribution to such Holder of such Allowed Claim's applicable class has already occurred, then the Post-Consummation Trust Administrator shall make any necessary catch-up payments to the Holder of such Allowed Claim within a reasonable amount of time after such Disputed Claim becomes an Allowed Claim. Distributions to each holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the Holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan.

(d)     **Termination of Disputed Reserves.** Each Disputed Reserve shall be closed and extinguished by the Post-Consummation Trust Administrator when all distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and this Agreement have been made. Upon closure of a Disputed Reserve, all Cash and other property held in that Disputed Reserve shall revest in the Liquidating Trust as a part of the general Post-Consummation Trust Assets and such Cash and property shall be used to pay the fees and expenses of the Liquidating Trust in accordance with this Agreement, and thereafter distributed on a pro rata basis to holders of Allowed Claims entitled to distributions from the Liquidating Trust.

(e)     **Transmittal of Distributions and Notices.** Any property or notice which a person is or becomes entitled to receive pursuant to the Plan and this Agreement may be delivered by regular mail, postage prepaid, in an envelope addressed to that person's address listed in the Register. Property distributed in accordance with this subsection shall be deemed delivered to such person regardless of whether such property is actually received by that person. Notice given in accordance with this subsection shall be effective only upon receipt.

## ARTICLE IX
## DISTRIBUTIONS

**9.1.     Distributions to Beneficiaries from Post-Consummation Trust Assets**. All payments to be made by the Liquidating  Trust  to any Beneficiary shall be made only in accordance with the Plan, the Confirmation Order and this Agreement and from the Post-Consummation Trust Assets (or from the income and proceeds realized from the Post-Consummation Trust Assets) net of the Liquidating Trust  Reserve (defined below), Disputed Reserves, and other reserves established by the Post-Consummation Trust Administrator, if any, and only to the extent that the Liquidating  Trust  has sufficient Post-Consummation Trust Assets (or income and proceeds realized from the Post-Consummation Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Agreement.

**9.2.     Distributions; Withholding.** The Post-Consummation Trust Administrator shall make the initial distribution to holders of Allowed Claims entitled to distributions from the Liquidating Trust as provided in the Plan and, following the initial distribution the Post-Consummation Trust Administrator shall make distributions to holders of Allowed Claims (including distributions of all net Cash (including net Cash proceeds)) on such dates as it chooses

in its sole discretion; provided, however, that the Liquidating Trust may retain and supplement from time to time a reserve (the "Liquidating Trust Reserve") in such amount (a) as is reasonably necessary to meet contingent liabilities and to maintain the value of the Post-Consummation Trust Assets during the term of the Liquidating Trust; (b) to pay reasonable administrative expenses including, without limitation, the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Post-Consummation Trust Administrator and the Oversight Committee, in connection with the performance of their duties in connection with this Agreement; and (c) to satisfy all other liabilities and claims of creditors of the Liquidating Trust incurred or assumed in respect of the Liquidating Trust (or to which the Post-Consummation Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order and this Agreement. All such distributions shall be made as provided, and subject to any withholding or reserve, in this Agreement, the Plan or the Confirmation Order. Additionally, the Post-Consummation Trust Administrator may withhold from amounts distributable to any Beneficiary any and all amounts, determined in the Post-Consummation Trust Administrator's discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. In addition, all distributions under this Agreement shall be net of the actual and reasonable costs of making such distributions. Prior to the making of any distributions contemplated hereunder to holders of Allowed Claims entitled to distributions from the Liquidating Trust, the Post-Consummation Trust Administrator shall obtain the prior consent of the Oversight Committee, with no less than ten (10) day's written notice of any such proposed distribution, which notice shall include a summary of the aggregate amounts to be distributed, and additional information regarding the calculation of the aggregate distribution amounts for each Class of Allowed Claims entitled to distributions from the Liquidating Trust as may be requested by the Oversight Committee.

**9.3.    No Distribution Pending Allowance.** No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, except for distributions into a Disputed Claims Reserve in accordance with the Plan, Confirmation Order, and this Agreement.

**9.4.    Distributions after Allowance.** Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan, Confirmation Order, and this Agreement.

**9.5.    Non-Cash Property.** Subject to Sections 2.3 and 3.3 hereof, any non-Cash property of the Liquidating Trust may be sold, transferred or abandoned by the Post-Consummation Trust Administrator. Notice of such sale, transfer, or abandonment shall be provided to the holders, if any, of Secured Claims holding liens on such non-Cash property. If, in the Post-Consummation Trust Administrator's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Post-Consummation Trust Administrator believes, in good faith, such property has no value to the Liquidating Trust, the Post-Consummation Trust Administrator shall have the right, subject to the approval of the Oversight Committee, to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Post-Consummation Trust Administrator Committee. Except in the case of fraud, willful misconduct, or gross negligence, no party in interest shall have a cause of action against the Post-Consummation Trust Administrator or any director,

officer, employee, consultant, or professional of the Post-Consummation Trust Administrator, the Oversight Committee, or of any of its Members or professionals, arising from or related to the disposition of non-Cash property in accordance with this Section.

**9.6.     Undeliverable Distributions.** If any distribution is returned as undeliverable, the Liquidating Trust may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the distribution was made as the Liquidating Trust deems appropriate, but no distribution to any holder shall be made unless and until the Liquidating Trust has determined the then-current address of the holder, at which time the distribution to such holder shall be made to the holder without interest. Amounts in respect of any undeliverable distributions made by the Liquidating Trust shall be returned to, and held in trust by, the Liquidating Trust until the distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code ("Unclaimed Property").

**9.7.     Unclaimed Property.** Except with respect to property not distributed because it is being held in a Disputed Reserve, distributions that are not claimed by the earlier to occur of (x) 30 days after the final distribution; or (ii) 90 days after the distribution is returned as undeliverable or the date of issuance of check (in the case of an unclaimed distribution) (the "Unclaimed Property Date"), shall be deemed to be Unclaimed Property and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those distributions are made shall be automatically canceled. After the expiration of Unclaimed Property Date, the claim of any Person or Entity to those distributions shall be discharged and forever barred. Nothing contained in the Plan or this Agreement shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim entitled to distributions from the Liquidating Trust. All funds or other property that vests or revests in the Liquidating Trust and pursuant to this Section 9.7 shall be distributed by the Post-Consummation Trust Administrator to the other holders of Allowed Claims in accordance with the provisions of the Plan and this Agreement. A Claim, and the Unclaimed Property distributed on account of such Claim, shall not escheat to any federal, state, or local government or other entity by reason of the failure of its holder to claim a distribution in respect of such Claim.

**9.8.     Time Bar to Cash Payments by Check.** Checks issued by the Liquidating Trust on account of Allowed Claims shall be null and void if not negotiated within 180 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void and pursuant to this Section shall be made directly to the Post-Consummation Trust Administrator by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become property of the Liquidating Trust as Unclaimed Property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as Unclaimed Property.

**9.9.     Withholding Taxes and Expenses of Distribution**. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All holders of Claims shall be required to provide the Post-Consummation Trust Administrator with any information necessary to effect the

withholding of such taxes. In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions.

**9.10. Distributions on Non-Business Days.** Any payment or distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

**9.11. No Distribution in Excess of Allowed Amount of Claim.** Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

**9.12. Setoff and Recoupment.** As set forth in Article VII.F of the Plan, the Liquidating Trust may, but shall not be required to, setoff against, or recoup from, any Claim and the distribution to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any of the Debtors, the Estates or the Liquidating Trust may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates or the Liquidating Trust of any claim, defense, right of setoff, or recoupment that any of them may have against the holder of any Claim.

**ARTICLE X**
**TAXES**

**10.1. Income Tax Status.** Consistent with Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidating Trust shall be treated as a Liquidating Trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to IRC Sections 671-677. As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidating Trust. Any items of income, deduction, credit, and loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Beneficiaries.

**10.2. Tax Returns.** In accordance with IRC Section 6012 and Treasury Regulation Section 1.671-4(a), the Liquidating Trust shall cause to be prepared and filed with the IRS annual tax returns on Form 1041. In addition, the Liquidating Trust shall cause to be prepared and filed in a timely manner such other tax returns, including any state and local tax returns, as are required by applicable law and pay any taxes shown as due thereon out of the Post-Consummation Trust Assets (or the income or proceeds thereof). Within a reasonable time following the end of the taxable year, the Liquidating Trust shall send to each Beneficiary a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit and will instruct each such Beneficiary to report such items on their federal income tax returns. The Liquidating Trust may provide each Beneficiary with a copy of the Form 1041 for the Liquidating Trust (without attaching any other Beneficiary's Schedule K-1 or other applicable information form) along with such Beneficiary's Schedule K-1 or other applicable information form in order to satisfy the foregoing requirement. The Liquidating Trust shall allocate the taxable income, gain, loss, deduction, or credit of the Liquidating Trust with respect to each Beneficiary.

**10.3. Withholding of Taxes and Reporting Related to Liquidating Trust Operations.** The Liquidating Trust shall comply with all withholding and reporting

requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements. To the extent that the operation of the Liquidating Trust or the liquidation of the Post-Consummation Trust Assets creates a tax liability, the Liquidating Trust shall promptly pay such tax liability out of the Post-Consummation Trust Assets (or the income or proceeds thereof) and any such payment shall be considered a cost and expense of the operation of the Liquidating Trust payable without Bankruptcy Court order. The Liquidating Trust may reserve a sum, the amount of which shall be determined by the Liquidating Trust with the approval of the Oversight Committee, sufficient to pay the accrued or potential tax liability arising out of the operations of the Liquidating Trust or the operation of the Post-Consummation Trust Assets. Upon the approval of the Oversight Committee, the Post-Consummation Trust Administrator, on behalf of the Liquidating Trust, may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Beneficiaries shall be required to provide any information necessary to effect the withholding of such taxes.

**10.4.    Valuations.** As soon as possible after the Effective Date, the Post-Consummation Trust Administrator and the Oversight Committee, shall work together to make a good faith determination of the value of all of the Post-Consummation Trust Assets. The Post-Consummation Trust Administrator shall establish appropriate means to apprise the Oversight Committee and the Beneficiaries of such valuation and such valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust, the Beneficiaries, and the Oversight Committee) for all federal income tax purposes.

**10.5.    Treatment of Disputed Reserves.** Notwithstanding any other provision of this Agreement to the contrary, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trust shall (i) treat any Post-Consummation Trust Assets allocable to, or retained on account of, a Disputed Claims Reserve in accordance with Section 8.2 of this Agreement as held by one or more discrete trusts for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the IRC (sections 641 et seq.), (ii) treat as taxable income or loss of each Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (iii) treat as a distribution from the Disputed Claims Reserve any increased amounts distributed by the Liquidating Trust as a result of any Disputed Claims resolved earlier in the taxable year, to the extent such distributions relate to taxable income or loss of the Disputed Claims Reserve determined in accordance with the provisions hereof, and (iv) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes. All Beneficiaries shall report, for income tax purposes, consistent with the foregoing. In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed

Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Post-Consummation Trust Administrator as a result of the resolutions of such Disputed Claims.

**10.6. Expedited Determination of Taxes.** The Liquidating Trust may request an expedited determination of taxes of the Liquidating Trust, including the Disputed Reserves, under section 505(b) of the Bankruptcy Code for all returns filed for the Liquidating Trust for all taxable periods through the termination of the Liquidating Trust.

## ARTICLE XI
## TERMINATION OF LIQUIDATING TRUST

**11.1. Termination of Liquidating Trust.** The Post-Consummation Trust Administrator and the Oversight Committee shall be discharged and the Liquidating Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Post-Consummation Trust Assets have been liquidated, (c) all duties and obligations of the Post-Consummation Trust Administrator hereunder have been fulfilled, (d) all distributions required to be made by the Post-Consummation Trust Administrator under the Plan and this Agreement have been made, and (e) all of the Chapter 11 Cases have been closed; provided, however, that in no event shall the Liquidating Trust be terminated later than the term of the Liquidating Trust under Section 11.2 of this Agreement, as such term may be extended pursuant to Section 11.2.

**11.2. Maximum Term.** The term of the Liquidating Trust shall end no later than the fifth (5th) anniversary of the Effective Date (the "Initial Liquidating Trust Term"); provided, however, that the Post-Consummation Trust Administer may petition the Bankruptcy Court so that, not more than 30 days prior to such termination, the Bankruptcy Court extends the term of the Liquidating Trust (each, a "Supplemental Liquidating Trust Term") because such extension is necessary to liquidate the Post-Consummation Trust Assets or to complete any distribution required by the Plan. Multiple extensions may be obtained by the Post-Consummation Administrator so long as Bankruptcy Court Approval is obtained no more than 30 days prior to the expiration of each extended term. Notwithstanding anything to the contrary in this Section 11.2, however, the Supplemental Liquidation Term may not exceed five (5) years without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a Liquidating Trust for federal income tax purposes. In addition, the provisions of this Section 11.2 shall be without prejudice to the right of any party in interest under Section 1109 of the Bankruptcy Code to petition the Bankruptcy Court, for cause shown, to shorten the Supplemental Liquidating Trust Term.

**11.3. Events Upon Termination.** At the conclusion of the term of the Liquidating Trust, the Post-Consummation Trust Administrator shall distribute the remaining Post-Consummation Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, the Confirmation Order, and this Agreement.

**11.4. Winding Up, Discharge, and Release of the Post-Consummation Trust Administrator.** For the purposes of winding up the affairs of the Liquidating Trust at the conclusion of its term, the Post-Consummation Trust Administrator shall continue to act as Post-Consummation Trust Administrator until its duties under this Agreement have been fully

discharged or its role as Post-Consummation Trust Administrator is otherwise terminated under this Agreement and the Plan. Upon a motion by the Post-Consummation Trust Administrator, the Bankruptcy Court may enter an order relieving the Post-Consummation Trust Administrator, its agents and employees of any further duties, discharging, and releasing the Post-Consummation Trust Administrator and releasing its bond, if any.

**ARTICLE XII**
**MISCELLANEOUS PROVISIONS**

**12.1.　Amendments**. The Post-Consummation Trust Administrator may, with the approval of a majority of the Members of the Oversight Committee, amend this Agreement in any way that is not inconsistent with the Plan or the Confirmation Order.

**12.2.　Waiver.** No failure by the Liquidating Trust, the Post-Consummation Trust Administrator, or the Oversight Committee, to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

**12.3.　Advice of Counsel.** The Post-Consummation Trust Administrator and the Oversight Committee (acting pursuant to Section 3.3) may consult with counsel with respect to any and all of its rights and duties hereunder, and the advice of counsel shall be full and complete authorization and protection from liability in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

**12.4.　Cumulative Rights and Remedies.** The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**12.5.　No Bond Required. [?]** [Delaware Requires] Notwithstanding any state law to the contrary, the Post-Consummation Trust Administrator (including any successor Post-Consummation Trust Administrator) shall be exempt from giving any bond or other security in any jurisdiction other than as provided under Section 3.4 of this Agreement.

**12.6.　Irrevocability.** This Agreement and the Liquidating Trust  created hereunder shall be irrevocable, except as otherwise expressly provided in this Agreement.

**12.7.　Tax Identification Numbers.** The Post-Consummation Trust Administrator may require any Beneficiary to furnish to the Post-Consummation Trust Administrator its social security number or employer or taxpayer identification number as assigned by the IRS and the Post-Consummation Trust Administrator may condition any Distribution to any Beneficiary upon the receipt of such identification number.

**12.8.　Relationship to the Plan.** The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, shall control.

**12.9. Division of Liquidating Trust.** Under no circumstances shall the Post-Consummation Trust Administrator have the right or power to divide the Liquidating Trust unless authorized to do so by the Oversight Committee and the Bankruptcy Court.

**12.10. Applicable Law.** This Liquidating Trust shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

**12.11. Retention of Jurisdiction.** Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Liquidating Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Post-Consummation Trust Administrator or any Member of the Oversight Committee, if established pursuant to Section 1.7 hereof, or any professional retained by the Post-Consummation Trust Administrator or the Oversight Committee, in each case in its capacity as such. Each party to this Liquidating Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Liquidating Trust Agreement or of any other agreement or document delivered in connection with this Liquidating Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Liquidating Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Liquidating Trust Agreement.

**12.12. Severability**. In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstance, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.13. Limitation of Benefits.** Except as otherwise specifically provided in this Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**12.14. Notices.** All notices, requests, demands, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or by facsimile with an electromagnetic report of delivery or if sent by overnight mail, registered mail, certified mail, or regular mail, with postage prepaid, to the following addresses:

If to the Post-Consummation Trust Administrator:

Brian Cejka
Avarez & Marsal Holdings, LLC
Trammell Crow Center
2100 Ross Avenue, 21st Floor
Dallas TX 75201
(214) 438-8446
Bcejka@alvarezandmarsal.com

If to the Oversight Committee:

Steven Tannenbaum, President
Greenwood Investments, Inc., General Partner
Greenwood Capital LP
Greenwood Investors LP
222 Berkeley Street, 17th Floor
Boston, MA 02116
(617) 236-4240
tannenbaum@greendwoodcap.com

If to a Beneficiary:

To the name and distribution address set forth in the Register with respect to such Beneficiary.

The parties may designate in writing from time to time other and additional places to which notices may be sent.

**12.15. Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**12.16. Integration.** This Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties thereto, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan and in the Confirmation Order. This Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. Except as otherwise provided in this Agreement, the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**12.17. Interpretation.** The enumeration and Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any other provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include

partnerships, associations, and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular Section or subsection hereof unless the context requires otherwise. Any reference to the "Post-Consummation Trust Administrator" shall be deemed to include a reference to the "Liquidating Trust " and any reference to the "Liquidating Trust " shall be deemed to include a reference to the "Post-Consummation Trust Administrator" except for the references in Sections 5.1 and 5.2, and such other provisions in which the context otherwise requires.

**12.18.** Counterparts. This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Agreement by facsimile or email in pdf format shall be equally effective as delivery of a manually executed counterpart

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**DEBTORS:**

Palm Harbor Homes, Inc.
Palm Harbor Albemarle, LLC
Nationwide Homes, Inc. (4881)
Palm Harbor Real Estate, LLC
Palm Harbor GenPar, LLC
Palm Harbor Manufacturing, LP


By:_____
Name: Brian Cejka_____
Title: Chief Restructuring Officer_____

**POST-CONSUMMATION TRUST ADMINISTRATOR:**

By: _____
Name: Brian Cejka_____